**E-FILED**
Monday, 06 December, 2004  12:51:57 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

MORGAN STANLEY DW INC.,

Plaintiff,

v.

STEPHEN L. PATTON,
CHRISTOPHER H. NOONAN,
THOMAS A. NOONAN and
TIMOTHY R. HUSEMAN,

Defendants.

No.
04-3263

| Hertz, Schram & Saretsky, P.C.<br>Attorneys for Plaintiff<br>By:   Gary M. Saretsky<br>        Miles D. Hart<br>        Eric A. Michaels<br>1760 S. Telegraph Rd., Suite 300<br>Bloomfield Hills, MI 48302-0183<br>(248) 335-5000 | Carlilie Patchen & Murphy<br>Attorneys for Defendants<br>By:   Dennis Concilla<br>366 East Broad Street<br>Columbus, OH 43215<br>(614) 228-6135<br><br>Brown, Hay & Stephens, LLP<br>Attorneys for Defendants<br>By:   Scott C. Hemholz<br>205 S. Fifth St., Suite 700<br>Springfield, IL 62701<br>(217) 544-8491 |

## VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF

Now comes plaintiff, Morgan Stanley DW Inc. ("Morgan Stanley"), by and through its attorneys, Hertz, Schram & Saretsky, P.C., and for its verified complaint for injunctive relief and for (i) breach of contract; (ii) conversion of customer lists and confidential business information; (iii) breach of fiduciary duty; (iv) unfair competition; and (v) violations of the Illinois Trade Secrets Act, 765 ILCS 1065/1 et. seq., against defendants Stephen L. Patton ("Patton"), Christopher H. Noonan ("C. Noonan"), Thomas H.

Noonan ("T. Noonan") and Timothy R. Huseman ("Huseman") (collectively "Defendants"), states as follows:

## I. PARTIES

1.    Morgan Stanley is a Delaware corporation maintaining its principal place of business in New York, New York and transacting business in this judicial district at its branch office located in Springfield, Illinois. Morgan Stanley is a citizen of the States of New York and Delaware.

2.    Defendants are former key employees of Morgan Stanley's Springfield, Illinois branch office.

## II. JURISDICTION AND VENUE

3.    Jurisdiction is premised upon diversity of citizenship, 28 U.S.C. §1332 and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interest and costs.

4.    Immediate injunctive relief is sought pursuant to Federal Rule of Civil Procedure 65(a).

5.    Venue is proper pursuant to 28 U.S.C. §1391(a), as this is the district in which the conduct complained of arose.

## III. THE FACTS

6.    Morgan Stanley is engaged in the business of providing financial services to the public.

7.    Patton, C. Noonan and T. Noonan commenced their employment with Morgan Stanley in October, 1994. Huseman commenced his employment with Morgan

2

Stanley in October 2001. Defendants were employed to provide financial services to Morgan Stanley customers. Exhibits "1" - "3".

8.    Jeffrey Prince ("Prince") was the Morgan Stanley Area Manager responsible for supervision of Morgan Stanley's Springfield, Illinois office where Defendants worked. Prince's signature is affixed to this Verified Complaint.

9.    On December 1, 2004, Defendants and their sales assistants (Mary Ann Schroeder and Tara House) unexpectedly resigned their positions at Morgan Stanley and immediately joined Morgan Stanley's competitor, Citigroup Global Markers, Inc. f/k/a Salomon Smith Barney ("Citigroup"). Exhibit "4".

10.    Just one month earlier, two other Morgan Stanley brokers (one being the branch manager), Gary E. Lowery ("Lowery") and Darin J. Muller ("Muller"), unexpectedly resigned from the same Springfield, Illinois Morgan Stanley branch office to join Citigroup.[1]

11.    Defendants absconded with Morgan Stanley customer documents and information, joined the new competing Citigroup office in Springfield, Illinois and solicited Morgan Stanley customers to transfer their accounts to their new employer, Citigroup, perhaps even before resigning.[2]

12.    As a condition of their employment with Morgan Stanley, however, Defendants agreed to abide by certain terms and conditions of employment. Defendants executed employment agreements with Morgan Stanley (collectively "Agreements").

---

1 Lowery and Muller stipulated to an order which was entered by this court on November 23, 2004 (Exhibit "5").
2 Significantly, defendants' resignation letters, which are virtually identical, proclaim that they "have not taken any copies or originals of Morgan Stanley's proprietary documents." Impliedly, defendants admit that they took documents of some sort. They also impliedly admit that they took customer information, perhaps in electronic form.

3

Exhibits "1" - "3".

13.     In pertinent part, the terms, conditions and provisions of the Agreements provide that Morgan Stanley:

       (a)     employ Defendants in sales capacities for sales positions;

       (b)     pay Defendants while employed in said sales capacities;

       (c)     provide Defendants with opportunities, support services, and facilities; and

       (d)     provide other good and valuable consideration.

14.     Morgan Stanley also compensated Defendants at all times throughout their employment with Morgan Stanley.  Morgan Stanley provided Defendants with extensive support services, paid for facilities, computer equipment, market reporting services, and other business expenses, provided Defendants with abundant sales opportunities, registered Defendants with the New York Stock Exchange, National Association of Securities Dealers, the American Stock Exchange, and the Illinois state securities commission, and provided Defendants with all Morgan Stanley benefits, systems, and support at all times.

15.     Additionally, Morgan Stanley provided Defendants with office facilities, secretarial services, clearing services, operational systems, product inventory, sales assistants, research, the benefit of Morgan Stanley advertising, goodwill and name recognition, access and use of experts in asset management, tax, estate planning and insurance, and with promotional, marketing and sales support.

16.     Moreover, Morgan Stanley provided Defendants with customer accounts, customer referrals, reassignments of former and current Morgan Stanley accounts, cus-

4

tomer leads and new accounts generated by Morgan Stanley's national advertising campaign, from local seminars, from mailers, from "walk-in" and "call-in" customers, and from lists purchased and acquired by Morgan Stanley, and access and use of confidential records relating to these accounts.

17.    By virtue of Defendants' employment at Morgan Stanley, Defendants gained access to the books and records of Morgan Stanley, the confidential information contained therein, and especially the identity of Morgan Stanley customers, including their names and addresses, financial statements, investment objectives, assets, net worth, investment histories, and the securities held by these customers in their Morgan Stanley accounts.

18.    Defendants also absconded with a significant amount, measured in terms of banker's boxes filled with files and documents, of Morgan Stanley material including information about individual financial consultants, assets, and clients.

19.    At the time of their resignations, Defendants specifically gathered information and records that collectively revealed the names, addresses and confidential information of at least 1,847 Morgan Stanley accounts representing an astounding **$235,925,709** in assets under Morgan Stanley management.  These accounts collectively generated approximately **$1,911,952 in annualized commission** revenues for Morgan Stanley in the past twelve months alone.

20.    In consideration of the foregoing benefits and opportunities provided by Morgan Stanley, Defendants agreed as follows[3]:

---

[3] For ease and brevity, only Patton's Agreement is quoted herein.  The other Defendants' Agreements are virtually identical in the subject terms.  Please note, all references to "Dean Witter" are references to Mor-

5

## 1.    CUSTOMER LISTS AND OTHER CONFIDENTIAL INFORMATION

1.1 All records and documents concerning the business and affairs of Dean Witter (hereinafter "Company Records"), and the right to use Company Records, are, and will always be the confidential and exclusive property of Dean Witter. Company Records include, but are not limited to, Dean Witter books and records; holding book or customer book pages; the names, addresses, telephone numbers, and assets and obligations carried in the accounts [commonly called "positions"] of Dean Witter's customers; computer software or hardware for use in computer or word processing equipment; all advanced training material forwarded to the Employee during his employment including but not limited to books, papers, records, videotapes and recordings; and documents or computer programs prepared or generated by the employee by the use of Company Records. Company Records include the originals and all copies thereof. The Employee's use of Company Records will stop immediately upon the first of the following events to occur: the Employee's (1) voluntary or involuntary resignation, (2) retirement, (3) release, (4) discharge, (5) suspension, or (6) acceptance of other employment.

1.2 The Employee, during the course of his employment with Dean Witter, will not remove Company Records from the premises of Dean Witter in either original or copied form, except in the ordinary course of conducting business for, and subject to approval by, Dean Witter. The Employee will immediately deliver to Dean Witter, upon acceptance of other employment, at the time of termination of employment, or at any other time upon Dean Witter's request, any Company Records in the Employee's possession or control.

1.3 The Employee will not at any time assert any claim of ownership or other property interest in any Company Records. The Employee will permit Dean Witter to inspect any materials to be removed from Dean Witter offices when he accepts other employment or when his employment with Dean Witter is terminated.

gan Stanley as this was Plaintiff's predecessor. T. Noonan's contract could not be located and the only copy may have been destroyed in the attacks upon the World Trade Center in September 2001.

> 1.4 The Employee will not disclose to any person or entity the contents, in whole or in part, of Company Records, except in the ordinary course of conducting business for Dean Witter.
>
> 1.5 Both during and subsequent to the course of his employment with Dean Witter, the Employee will not divulge to any person any information received during the course of his employment concerning the business of the firm and its financial affairs.

Exhibit "1". Emphasis added.

21.    The Agreements further provide that Defendants will not solicit the clients

they serviced at Morgan Stanley for a period of one year after their termination from

Morgan Stanley:

**2.    UNFAIR COMPETITION.**

> 2.1 For a period of one year following termination of employment for any reason, and within a radius of one- hundred (100) miles from the Dean Witter office to which the Employee was last assigned, the Employee will not solicit or attempt to solicit, directly or indirectly, any of Dean Witter's customers who were served by or whose names became known to the Employee while in the employ of Dean Witter with respect to securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.
>
> 2.2 For a period of one year following termination of employment for any reason, the Employee will not, directly or indirectly, recruit or solicit any employee of Dean Witter for employment with any other organization which does business in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

Exhibit "1". Emphasis added.

22.    In addition, Defendants expressly agreed to the issuance of a temporary

7

restraining order and a preliminary injunction in the event they breached the terms of

their Agreements:

### 3.    RIGHT TO INJUNCTION.

In the event the Employee breaches any of the promises
concerning "Customer Lists And Other Confidential Infor-
mation" or "Unfair Competition" contained in paragraphs 1
and 2 of this Agreement, the Employee acknowledges that
Dean Witter's remedy at law for damages will be inade-
quate and that Dean Witter will be entitled to an injunction
to prevent the Employee's prospective or continuing breach
and to maintain the status quo pending arbitration as pro-
vided in paragraph 7 of this Agreement. Dean Witter's ap-
plication to a court of law for an injunction will not constitute
a waiver by Dean Witter of its right to arbitration as pro-
vided in paragraph 7 of this Agreement.    The Employee
further agrees that any court of law which issues an injunc-
tion shall refer any claim for damages to arbitration as pro-
vided in paragraph 7 of this Agreement.

Exhibit "1".  Emphasis added.

23.    Admittedly, Patton's and C. Noonan's Agreements contain a "carve-out,"

excepting customers they serviced prior to joining Morgan Stanley in 1994. Exhibits "1"

and "2".  Morgan Stanley does not seek to enforce the contractual provisions related to

these clients.

24.    Huseman's contract does not contain any "carve-out."  Exhibit "3".

25.    Defendants also executed Joint Production Agreements and Acknowl-

edgments and the Morgan Stanley Code of Conduct which reinforce the restrictions and

confidentiality provisions related to any other customers they were assigned, developed

or whose names became known to them while at Morgan Stanley. It is the customers

who were developed over the years at the time and expense of Morgan Stanley and

other Morgan Stanley brokers, which Defendants are precluded from soliciting.

8

26.   Upon information and belief, Defendants have breached their Agreements

in this regard.

27.   More specifically, in an effort to increase their production and commission

payouts, Defendants signed the Joint Production Agreements, forming partnerships be-

tween themselves and other brokers.  Collectively attached as Exhibit "6".

28.   The Joint Production Acknowledgments reaffirm Defendants' promises  to

keep all customer and business records and information confidential and that these re-

cords were the property of Morgan Stanley[4]:

> I, Steve Patton, acknowledge that by signing below, that
> any joint production agreement (the "Agreement") between
> me, David Lisnek and David Willenberg is being entered
> into solely to better service clients and to share in commis-
> sions generated by such clients' accounts and nothing in
> such Agreement is intended to affect, change, modify or
> otherwise alter in anyway Morgan Stanley DW Inc. d/b/a
> Morgan Stanley's ("Morgan Stanley") ownership of client
> accounts and documents, and confidential and company
> records and information. I understand and agree that cus-
> tomer accounts and client information of whatever kind
> and in whatever form are Morgan Stanley assets and do
> not belong to the partners, individually or jointly or to the
> joint production unit.

Collectively Exhibit "7".  Emphasis added.

29.   Consequently, Defendants agreed several times, in writing, that (1) infor-

mation obtained regarding customer accounts they serviced was confidential, (2) they

would not solicit clients for a period of one year following termination, and (3) they

would stipulate to the entry of injunctive relief in the event they breached their Agree-

ments.

---

[4]   For ease and brevity, only Patton's Joint Production Acknowledgment is quoted herein.

9

30. Defendants also expressly agreed as a condition of employment that the merits of any claims and controversies arising under their Agreements, while subject to injunctive relief in a court of law as set forth above, would be ultimately resolved by arbitration according to the rules of the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., as Morgan Stanley shall elect, such claims being referred thereto by the court issuing injunctive relief. Exhibits "1" - "3".

31. Morgan Stanley also distributed copies of the Morgan Stanley Code of Conduct 2001 ("Handbook") to all account executives, including Defendants. Defendants acknowledged receipt of the Handbook and agreed to be bound by the Code of Conduct contained in the Handbook.[5] Exhibit "8".

32. The Code of Conduct contains the following restrictions on the use and/or disclosure of Morgan Stanley's confidential information:[6]

> Handling proprietary and confidential information in a professional manner protects the Firm's reputation for integrity, promotes the Firm's relationships with its clients, safeguards the Firm's assets and ensures compliance with the complex regulations governing the financial services industry. As an employee of the Firm, you must prevent the improper disclosure of all proprietary and confidential information.

Code of Conduct, p. 25.

33. The Code of Conduct specifically defines both proprietary and confidential information:

---

[5] Defendants (and all Morgan Stanley employees) electronically acknowledge the Code of Conduct on a yearly basis.

[6] Morgan Stanley quotes from the 2001 Code of Conduct.

Definition of Proprietary Information

"Proprietary information" is Firm information not known to the public that may have intrinsic value or that may provide the Firm with a competitive advantage. <u>Proprietary information includes</u>, but is not limited to, computer programs and other systems information; algorithms; business, product or marketing plans; sales forecasts; manuals; <u>client lists</u>; intellectual property; and business practices.

\*          \*          \*

Definition of Confidential Information

"Confidential information" is information that is not generally known to the public about MSDW, its clients, its counterparties or other parties with which the Firm has a relationship. Like proprietary information, confidential information may be present in various media and forms.

Examples of confidential information concerning the Firm and its employees, clients and counterparties include, but are not limited to:

- personal information;
- financial information;
- securities trades or holdings;

\*          \*          \*

- identities of clients or counterparties of MSDW;

\*          \*          \*

- programs and materials on the Firm's information systems.

Code of Conduct, p. 25.

34.     The Code of Conduct also contains the following additional restrictions on

the use and/or disclosure of Morgan Stanley's confidential business information:

11

Using Proprietary or Confidential Information

Use proprietary or confidential information solely to perform your duties for MSDW.

Post-Employment Use of Proprietary or Confidential Information

You may not disclose proprietary or confidential informa-tion, including intellectual property, of the Firm or its em-ployees, clients or counterparties when seeking employ-ment outside of MSDW or after termination.  You may not take such proprietary or confidential information when leav-ing MSDW or use or disclose such information for your personal benefit or for the benefit of your new employer or prospective new employer.  You may not permit its disclo-sure or use by any third party.

*                  *                  *

This policy does not restrict you from obtaining employment in any capacity elsewhere, provided you do not use or dis-close proprietary or confidential information.

Code of Conduct pp. 26-28.

35.    The Code of Conduct contains no "carve-outs," obligating Defendants to keep customer information confidential and precluding the removal of such information from the firm.

36.    Defendants unexpectedly resigned from Morgan Stanley on December 1, 2004.  Exhibit "4".

37.    Morgan Stanley has learned that Defendants negotiated and accepted new positions with a Morgan Stanley competitor, Citigroup, removed documents and information and have been soliciting and pursuing clients they serviced at Morgan Stanley to move their accounts to Citigroup.  Exhibit "10".  In other words, despite the clear terms of their Agreements, fiduciary obligations and Code of Conduct Acknowl-edgments, Defendants are deliberately in breach.

12

38.    Defendants implemented a scheme to join Citigroup and its competing Citigroup office in Springfield, Illinois. There is evidence that this scheme has been in the works for quite some time. For example, Morgan Stanley is in possession (and has had possession since November 2, 2004) of Citigroup business cards bearing the names and titles of these Defendants. Exhibit "9".

39.    Defendants have also violated the terms of their Agreements and Code of Conduct by absconding with Morgan Stanley confidential Company Records and customer information in direct violation of their Agreements.    In fact, several Morgan Stanley employees personally witnessed Defendants removing boxes of documents from Morgan Stanley's Springfield branch office on November 2, 2004. See Affidavit(s) attached as Exhibit "10".

40.    One such witness, Larry Hardy ("Hardy"), saw several Defendants (and even Huseman's wife) putting papers and files from their offices into boxes and other containers and loading them into their cars. Exhibit "10".

41.    After Defendants' resignations, Hardy spoke with several Morgan Stanley customers who informed him that Defendants had notified them of their impending resignations and solicited them to transfer their accounts to Citigroup long before Defendants resigned; some even signed paperwork authorizing the transfer of their accounts to Citigroup before Defendants' resignations. Exhibit "10". Hardy also learned from these customers that Defendants were making misrepresentations to these customers, such as the Morgan Stanley office was closing and their accounts must be moved to Citigroup. Exhibit "10".

42.    By virtue of their words and conduct, Defendants have wrongfully con-

13

verted Morgan Stanley records, including the names, addresses and account informa-

tion of innumerable Morgan Stanley clients for the purpose of solicitation.

43.     In further violation of their Agreements, Defendants solicited several Mor-

gan Stanley sales assistants to leave Morgan Stanley for employment with Citigroup.

These sales assistants resigned on December 1, 2004 and followed Defendants to

Citigroup.

44.     Defendants have prepared to engage in, have engaged in, and continue

to engage in, inter alia, the following acts:

> (a)     removing and converting for personal use
> Morgan Stanley's documents and/or the in-
> formation contained in confidential Morgan
> Stanley business records, specifically includ-
> ing the names, addresses, telephone num-
> bers, and other confidential financial and
> personal information of the customers they
> and others serviced/service at Morgan
> Stanley beyond that permitted by their
> Agreements and sharing that information with
> Citigroup;
>
> (b)     removing and secreting confidential Morgan
> Stanley information regarding its customers
> and client assets;
>
> (c)     transmitting verbally, in writing, or in any
> other manner, the clients' names, addresses,
> and other information contained in the re-
> cords of Morgan Stanley beyond that permit-
> ted by their Agreements as described in sub-
> paragraph (a) above;
>
> (d)     soliciting Morgan Stanley's clients to termi-
> nate their relationship with Morgan Stanley
> and transfer their accounts elsewhere be-
> yond that permitted by their Agreements;
>
> (e)     soliciting Morgan Stanley employees to re-

14

sign from Morgan Stanley and join a compet-
ing firm; and

(f) other such acts contrary to the terms, condi-
tions, and provisions of the Agreements.

45. Defendants' conduct represents an improper attempt to obtain and to

convert to personal use and gain Morgan Stanley's (1) records, (2) property, (3) cus-

tomer names, addresses and confidential information, (4) marketing and promotional

techniques, and (5) goodwill generated, directly or indirectly, by Defendants' association

with Morgan Stanley, and to do so by means of, inter alia, soliciting clients of Morgan

Stanley serviced by Defendants and/or whose names became known to Defendants

while in the employ of Morgan Stanley beyond that permitted by their Agreements.

46. Morgan Stanley, upon information and belief, states:

(a) Defendants have possession, custody, or control of Morgan
Stanley records, documents, confidential customer informa-
tion, proprietary information, lists of Morgan Stanley cus-
tomer accounts and account information for customers pro-
vided to Defendants by Morgan Stanley beyond that permit-
ted by their Agreements;

(b) Defendants have used, and will continue to use, this infor-
mation to solicit Morgan Stanley accounts and to divert the
business of Morgan Stanley customers from Morgan
Stanley beyond that permitted by their Agreements; and

(c) Defendants will otherwise continue to engage in acts con-
stituting breaches of the terms of their Agreements, and
other tortious conduct, including breaches of fiduciary du-
ties, and unfair competition.

## COUNT I

## INJUNCTIVE RELIEF

47. Morgan Stanley reasserts paragraph 1 through 46 of the complaint as if

15

fully restated herein.

48.    Defendants have agreed that money damages are inadequate and that

Morgan Stanley is entitled to injunctive relief. In addition, Morgan Stanley has demon-

strated a likelihood of success on the merits and that a balancing of the equities favors

the issuance of an injunction against Defendants.

49.    Unless Defendants are preliminarily and permanently enjoined from the

foregoing conduct, Morgan Stanley will be irreparably harmed by:

- (a)    Disclosure of customer lists and other confidential information which are solely the property of Morgan Stanley and its clients;

- (b)    Loss of confidentiality of client records and financial dealings, loss of confidence and trust of clients, and loss of business reputation;

- (c)    Loss of personnel, damage to office stability, and a threat to the enforcement of reasonable contracts; and

- (d)    Incalculable financial loss.

50.    Morgan Stanley has no adequate remedy at law.

Wherefore, Morgan Stanley respectfully requests that:

- (1)    Defendants be immediately enjoined and restrained, directly and indirectly, and whether alone or in concert with others, including any officer, agent, employee, and/or representative of Defendants' new employer, Citigroup, until hearing and thereafter until further order of this Court and/or the arbitrators from doing any of the following:

  - (a)    soliciting any business from any Morgan Stanley client and/or customer whom Defendants served or whose name became known to Defendants while in the employ of Morgan Stanley beyond that permitted by their Agreements;

  - (b)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the

16

records of Morgan Stanley, including, but not limited to, the names, addresses, and financial information of Morgan Stanley clients beyond that permitted by their Agreements; and

(c)     soliciting any Morgan Stanley employees beyond that permitted by their Agreements.

(2)    Defendants immediately return to Morgan Stanley all originals, copies or other reproductions, or derivatives, in any form whatsoever, including but not limited to information electronically stored, of any record of Morgan Stanley, and that Morgan Stanley be permitted to review, purge or destroy any computerized record of Morgan Stanley information that is within Defendants' possession, custody or control.

## COUNT II

## BREACH OF CONTRACT

51.    Morgan Stanley reasserts paragraph 1 through 50 of the complaint as if fully restated herein.

52.    Defendants have violated the confidentiality and unfair competition provisions of the Agreements/Code of Conduct.

53.    Defendants are continuing to violate their contractual obligations.

54.    As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and incalculable financial loss.

## COUNT III

## TORT-CONVERSION

55.    Morgan Stanley reasserts paragraph 1 through 54 of the complaint as if fully restated herein.

56.    The foregoing conduct of Defendants constitutes a conversion of Morgan

17

Stanley's proprietary information and trade secrets.

57.    As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and incalculable financial loss.

## COUNT IV

## BREACH OF FIDUCIARY DUTY

58.    Morgan Stanley reasserts paragraph 1 through 57 of the complaint as if fully restated herein.

59.    Defendants have violated the common law fiduciary duty of loyalty, and the fiduciary duties arising under their agreements, Code of Conduct and relationship with Morgan Stanley in that, while employed by Morgan Stanley, Defendants secretly planned to leave the employ of Morgan Stanley and schemed to deprive Morgan Stanley of its records and trade secrets all in an attempt to solicit Morgan Stanley customers and employees.

60.    As a consequence of the foregoing, Morgan Stanley has suffered and will continue to suffer irreparable harm and currently incalculable financial loss.

## COUNT V

## UNFAIR COMPETITION

61.    Morgan Stanley reasserts paragraph 1 through 60 of the complaint as if fully restated herein.

62.    The foregoing conduct of Defendants constitutes an unfair method of competition.

63.    As a consequence of the foregoing, Morgan Stanley has suffered and will

18

continue to suffer irreparable harm and currently incalculable financial loss.

## COUNT VI

## VIOLATION OF ILLINOIS TRADE SECRETS ACT

64.    Morgan Stanley reasserts paragraph 1 through 63 of the statement of claim as if fully restated herein.

65.    The foregoing conduct constitutes a violation of Illinois' Trade Secrets Act, 765 ILCS 1065/1 et. seq.

66.    As a consequence, Morgan Stanley has suffered and will continue to suffer irreparable harm and currently incalculable financial loss.

Wherefore, Morgan Stanley requests entry of a temporary restraining order and/or preliminary injunctive relief pending arbitration to be held pursuant to section 10335 of the National Association of Securities Dealers Code of Arbitration Procedure, and any other relief this Court deems Morgan Stanley is entitled to receive.

Respectfully submitted,

Hertz, Schram & Saretsky, P.C.
Attorneys for Plaintiff

By: _____
Gary M. Saretsky
Miles D. Hart
Eric A. Michaels
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302-0183
Dated:    December 3, 2004          (248) 335-5000

19

## **VERIFICATION OF COMPLAINT**

I, Jeffrey Prince, verify that the foregoing complaint is true and accurate to the

best of my knowledge, information and belief.

Morgan Stanley DW Inc.

By:_____

Jeffrey Prince

Its: Area Director

Dated: December 3, 2004

S:\Staff\Martin, Denise\Miles\Morgan Stanley\Lowery\Vrfclcmplnt.Doc

20