E-FILED
Monday, 06 December, 2004 01:07:56 PM
Clerk, U.S. District Court, ILCD

<u>Exemplar</u>

**[Please delete all instructions appearing in BOLD as well as the clarifying footnotes prior to execution][1]**

## JOINT PRODUCTION AGREEMENT
### (Joint Production Asset Addendum)

WHEREAS, this Agreement is being entered into on _Aug 1    03_ (commencement date) solely for the convenience of _Stephen Patton_ ("Joint Producer 'A'") and _Darin Mueller_ ("Joint Producer 'B'")[2][3] (herein collectively the "Joint Producers") to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc.   d/b/a _Morgan Stanley's_ ("Morgan Stanley) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree as follows:

Commencing _Aug 1    03_ the Joint Producers will enter into a joint production arrangement (the "Joint Production Arrangement") under the following terms and conditions.

A joint account number (the "Joint Account Number") will be set up for the Joint Production Arrangement. All client accounts to be handled under the Joint Account Number are set forth on the attached Addendum and will be deemed joint production assets (the "Joint Production Assets"). See Joint Production Asset Addendum attached hereto as Exhibit "A".

The Joint Producers agree to use their best efforts in furtherance of the Joint Production Arrangement. As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:  [Please select only one]:

(a)    Joint Producer A _50_% and Joint Producer B _50_%; or

(b)    Joint Producer A will pay to Joint Producer B on a monthly basis the fixed amount of $_____ to be charged against Joint Producer A's monthly Joint Production commission distribution. [This selection is to be used in the instance that one Joint Producer is on salary and not receiving commissions, such as an FA Trainee. Keep in mind that Joint Production Agreements may be used only with Financial Advisors.]

---

[1]    This is an "exemplar" and is not to be used as a form.  After you have decided on the terms of the Joint Production Agreement (the "JPA"), please delete the instructive heading and the footnote designations.  You may also eliminate the selections which you are not using.

[2]    JPAs may be comprised of any number of FAs.  Add Joint Producers C, D and E as needed.  <u>Under no circumstances may a JPA include a Registered or Non-Registered Sales Assistant.  In addition, no JPA may contain Joint Producers from more than one branch without prior written approval of the Compliance Department and of each affected Branch Manager and Regional Director.</u>

[3]    Each Joint Producer must sign his/her own Joint Production Acknowledgement.  Thus, if there are 3 Joint Producers, there will be 3 separate Acknowledgements.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective current Regional Director.

The Joint Production Arrangement may be terminated at any time by any Joint Producer without notice. In the event of termination of the Joint Production Arrangement no commissions will be divided after the date of termination and the Joint Production Arrangement Assets will be divided as follows:

[Select only one, check the appropriate box and delete the selections not used. Include percentages (%) as indicated.]

(a) __ % to Joint Producer A; and __ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement [  ].

or

(b) (i) client accounts opened prior to commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement; and

(ii) all client accounts opened after commencement of the Joint Production Arrangement (except for the derivative accounts referenced in (b) (i) above will be divided _____ % to Joint Producer A, and ___ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement[  ].

or

(c) 100% to the Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion [  ].

In the event there is any disagreement with respect to such termination of the Joint Production Arrangement or division of the Joint Production Assets, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Joint Producers will continue to share in commissions during periods of short term disability covered under the Morgan Stanley Short Term Disability Plan. However, in the event of death or total permanent disability (as that term is defined in the Morgan Stanley Long Term Disability Plan) or termination of employment for any reason from Morgan Stanley by any Joint Producer, the Joint Production Arrangement Assets will be divided as follows:

[Select only one of the following (delete the ones not used) and include percentages]

(a) Revert ___% to the remaining or surviving joint producer {This is the most common option];

or

(b) ___% to Joint Producer A and ___% to Joint Producer B [Use only if there are more than 2 JPs in the JPA] ;

or

(c) Revert 100% to the then Branch Manager of the last branch office to which all· Joint Producers were jointly assigned for distribution in accordance with management discretion;

or

(d) _ % to the remaining or surviving Joint Producer and __ % to the then Branch Manager of the last branch officer to which all Joint Producers were jointly assigned for distribution in accordance with management discretion.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Any controversy or claim relating to the enforceability of this Agreement will be settled through the CARE Program and its process. Should this matter be brought to mediation or arbitration and any provision(s) of this Agreement, for any reason, be adjudged void, invalid, or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect. This Agreement may be modified only by a writing signed by all Joint Producers and with the approval and authorization of Morgan Stanley.

This Agreement is subordinate to any agreement between any Joint Producer and Morgan Stanley, and the Agreement may exist only so long as it is acceptable to Morgan Stanley and in accord with its policies and procedures. Morgan Stanley may terminate the Joint Production Arrangement at any time and without notice. Nothing in this Agreement shall be construed to amend or modify any policy or procedure of Morgan Stanley or any management directive currently existing or as may exist in the future, or any rule or regulation of any regulatory or securities organization or agency. Nor shall this Agreement be construed to amend or modify the Joint Production Arrangement Acknowledgments.

This Agreement shall be construed in accordance with the laws of the State of _____ [Use State Where Branch Is Located].

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of the Agreement.

8/7/03
DATE

8/5/03
DATE

Joint Producer A

Joint Producer B

Reviewed For Morgan Stanley DW Inc.

BY: _____
Branch Manager

Date: 8/4/03

4.

### JOINT PRODUCTION ASSET ADDENDUM
Attached as Exhibit A to the Joint Production Agreement

For purposes of the Joint Production Agreement dated $8/1$; ____ , 200$3$ between _Steve Patton_ (Joint Producer A), and _Darin_ (Joint Producer B) [4], Joint Production Assets shall include the following:    _Muller_

**Please select one or more as appropriate:**

(a)    All client accounts opened by any Joint Producer prior to and after commencement of the Joint Production Agreement. [  ],

(b)    All client accounts opened by any Joint Producer after commencement of the Joint Production Agreement [  ] ,

(c)    All client accounts opened by Joint Producer ____ **prior** to commencement of the Joint Production Agreement. [  ],

(d)    All client accounts opened by Joint Producer __ **after** commencement of the Joint Production Agreement [  ] ,

(e)    All client accounts selected by each individual Joint Producer in his or her sole discretion for transfer from time to time into the Joint Production Number. [  ].,

(f)    All client accounts derived from and opened as a result of other Joint Production Assets. [  ];

(f)    All client accounts opened as the result of joint marketing efforts. [  ];

(g)    All _____ client accounts opened by the Partners. [  ]

(h)    All client accounts specifically identified on this list below. {add pages if needed} [  ]

Joint Producer A _Steve_

Joint Producer B _Darin_

$8/7/03$
Date

$8/5/03$
Date

217 228 9934    P.89

Exemplar
[Please delete all instructions appearing in BOLD as well as the clarifying footnotes prior to execution][1]

## JOINT PRODUCTION AGREEMENT
### (Joint Production Asset Addendum)

**WHEREAS**, this Agreement is being entered into on _2·4    ,04_ (commencement date) solely for the convenience of _Leso, Houck_ ("Joint Producer 'A'") and _Lim Harris_ ("Joint Producer 'B'")[2] [3] (herein collectively the "Joint Producers") to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc. d/b/a _Morgan Stanley's_ ("Morgan Stanley) ownership of client accounts and documents, and confidential company records and information.

**NOW, THEREFORE**, the Joint Producers agree as follows:

Commencing _____, ____, the Joint Producers will enter into a joint production arrangement (the "Joint Production Arrangement") under the following terms and conditions.

A joint account number (the "Joint Account Number") will be set up for the Joint Production Arrangement. All client accounts to be handled under the Joint Account Number are set forth on the attached Addendum and will be deemed joint production assets (the "Joint Production Assets"). See Joint Production Asset Addendum attached hereto as Exhibit "A".

The Joint Producers agree to use their best efforts in furtherance of the Joint Production Arrangement. As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows: **[Please select only one]**:

(a)    Joint Producer A _60_% and Joint Producer B _40_%; or

(b)    Joint Producer A will pay to Joint Producer B on a monthly basis the fixed amount of $_____ to be charged against Joint Producer A's monthly Joint Production commission distribution. **[This selection is to be used in the instance that one Joint Producer is on salary and not receiving commissions, such as an FA Trainee. Keep in mind that Joint Production Agreements may be used only with Financial Advisors.]**

---

[1]    This is an "exemplar" and is not to be used as a form. After you have decided on the terms of the Joint Production Agreement (the "JPA"), please delete the instructive heading and the footnote designations. You may also eliminate the selections which you are not using.

[2]    JPAs may be comprised of any number of FAs. Add Joint Producers C, D and E as needed. Under no circumstances may a JPA include a Registered or Non-Registered Sales Assistant. In addition, no JPA may contain Joint Producers from more than one branch without prior written approval of the Compliance Department and of each affected Branch Manager and Regional Director.

[3]    Each Joint Producer must sign his/her own Joint Production Acknowledgement. Thus, if there are 3 Joint Producers, there will be 3 separate Acknowledgements.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective current Regional Director.

The Joint Production Arrangement may be terminated at any time by any Joint Producer without notice. In the event of termination of the Joint Production Arrangement no commissions will be divided after the date of termination and the Joint Production Arrangement Assets will be divided as follows:

**[Select only one, check the appropriate box and delete the selections not used. Include percentages (%) as indicated.]**

(a) __ % to Joint Producer A; and __ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement [ ].

or

(b) (i) client accounts opened prior to commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement; and

(ii) all client accounts opened after commencement of the Joint Production Arrangement (except for the derivative accounts referenced in (b) (i) above will be divided ____ % to Joint Producer A, and ___ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement[ ].

or

(c) 100% to the Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion [ ].

In the event there is any disagreement with respect to such termination of the Joint Production Arrangement or division of the Joint Production Assets, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Joint Producers will continue to share in commissions during periods of short term disability covered under the Morgan Stanley Short Term Disability Plan. However, in the event of death or total permanent disability (as that term is defined in the Morgan Stanley Long Term Disability Plan) or termination of employment for any reason from Morgan Stanley by any Joint Producer, the Joint Production Arrangement Assets will be divided as follows:

[Select only one of the following (delete the ones not used) and include percentages]

(a) Revert __ % to the remaining or surviving joint producer {This is the most common option];

or.

(b) ___% to Joint Producer A and ___% to Joint Producer B [Use only if there are more than 2 JPs in the JPA] ;

2

or

(c) Revert 100% to the then Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion;

or

(d) _ % to the remaining or surviving Joint Producer and __ % to the then Branch Manager of the last branch officer to which all Joint Producers were jointly assigned for distribution in accordance with management discretion.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Any controversy or claim relating to the enforceability of this Agreement will be settled through the CARE Program and its process. Should this matter be brought to mediation or arbitration and any provision(s) of this Agreement, for any reason, be adjudged void, invalid, or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect. This Agreement may be modified only by a writing signed by all Joint Producers and with the approval and authorization of Morgan Stanley.

This Agreement is subordinate to any agreement between any Joint Producer and Morgan Stanley, and the Agreement may exist only so long as it is acceptable to Morgan Stanley and in accord with its policies and procedures. Morgan Stanley may terminate the Joint Production Arrangement at any time and without notice. Nothing in this Agreement shall be construed to amend or modify any policy or procedure of Morgan Stanley or any management directive currently existing or as may exist in the future, or any rule or regulation of any regulatory or securities organization or agency. Nor shall this Agreement be construed to amend or modify the Joint Production Arrangement Acknowledgments.

This Agreement shall be construed in accordance with the laws of the State of
_____ [Use State Where Branch Is Located].

By signing below each Joint Producer acknowledges that he/she understands and agrees
to all of the terms and conditions of the Agreement.

2-13-04
DATE

2-11-04
DATE

Joint Producer A, Larry

Joint Producer B  Tim

Reviewed For Morgan Stanley DW Inc.

BY:
Branch Manager

Date: _____

                                                                                    4

# JOINT PRODUCTION ASSET ADDENDUM
## Attached as Exhibit A to the Joint Production Agreement

For purposes of the Joint Production Agreement dated ____, _____, 200_, between _____ (Joint Producer A), and ____.____ (Joint Producer B) [4], Joint Production Assets shall include the following:

**Please select one or more as appropriate:**

(a)   All client accounts opened by any Joint Producer prior to and after commencement of the Joint Production Agreement. [  ],

(b)   All client accounts opened by any Joint Producer after commencement of the Joint Production Agreement [  ],

(c)   All client accounts opened by Joint Producer ___ **prior** to commencement of the Joint Production Agreement. [  ],

(d)   All client accounts opened by Joint Producer __ **after** commencement of the Joint Production Agreement [  ],

(e)   All client accounts selected by each individual Joint Producer in his or her sole discretion for transfer from time to time into the Joint Production Number. [  ],

(f)   All client accounts derived from and opened as a result of other Joint Production Assets. [  ];

(f)   All client accounts opened as the result of joint marketing efforts. [  ];

(g)   All _____ client accounts opened by the Partners. [  ]

(h)   All client accounts specifically identified on this list below. {add pages if needed} [  ]


_____
Joint Producer A  *Le.m*

_____
Joint Producer B  *Ti m*

*2-13-0Y*
Date

*2-11-0Y*
Date

---

[4] See Footnote 2 of the Joint Production Agreement.

<u>Exemplar</u>
[Please delete all instructions appearing in BOLD as well as the clarifying footnotes prior to execution][1]

## JOINT PRODUCTION AGREEMENT
### (Joint Production Asset Addendum)

        **WHEREAS**, this Agreement is being entered into on /‑/2 , O9 (commencement date) solely for the convenience of *Steve Petton* ("Joint Producer 'A'") and *David Lisnek*("Joint Producer 'B'")[2] [3] (herein collectively the "Joint Producers") to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc.  d/b/a *Morgan Stanley's* ("Morgan Stanley) ownership of client accounts and documents, and confidential company records and information.

*David Willsburg*

        **NOW, THEREFORE**, the Joint Producers agree as follows:

        Commencing /‑/2 , O9 the Joint Producers will enter into a joint production arrangement (the "Joint Production Arrangement") under the following terms and conditions.

        A joint account number (the "Joint Account Number") will be set up for the Joint Production Arrangement.  All client accounts to be handled under the Joint Account Number are set forth on the attached Addendum and will be deemed joint production assets (the "Joint Production Assets").  See Joint Production Asset Addendum attached hereto as Exhibit "A".

        The Joint Producers agree to use their best efforts in furtherance of the Joint Production Arrangement.  As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows:  [Please select only one]:

(a)    Joint Producer A 64% and Joint Producer B 35%; or < 1 %

(b)    Joint Producer A will pay to Joint Producer B on a monthly basis the fixed amount of $_____ to be charged against Joint Producer A's monthly Joint Production commission distribution.  [This selection is to be used in the instance that one Joint Producer is on salary and not receiving commissions, such as an FA Trainee.  Keep in mind that Joint Production Agreements may be used only with Financial Advisors.]

---

[1]    This is an "exemplar" and is not to be used as a form.  After you have decided on the terms of the Joint Production Agreement (the "JPA"), please delete the instructive heading and the footnote designations.  You may also eliminate the selections which you are not using.

[2]    JPAs may be comprised of any number of FAs.  Add Joint Producers C, D and E as needed.  <u>Under no circumstances may a JPA include a Registered or Non-Registered Sales Assistant.  In addition, no JPA may contain Joint Producers from more than one branch without prior written approval of the Compliance Department and of each affected Branch Manager and Regional Director.</u>

[3]    Each Joint Producer must sign his/her own Joint Production Acknowledgement.  Thus, if there are 3 Joint Producers, there will be 3 separate Acknowledgements.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective current Regional Director.

The Joint Production Arrangement may be terminated at any time by any Joint Producer without notice. In the event of termination of the Joint Production Arrangement no commissions will be divided after the date of termination and the Joint Production Arrangement Assets will be divided as follows:

[Select only one, check the appropriate box and delete the selections not used. Include percentages (%) as indicated.]

(a) __ % to Joint Producer A; and __ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement [ ].

or

(b) (i) client accounts opened prior to commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement; and

(ii) all client accounts opened after commencement of the Joint Production Arrangement (except for the derivative accounts referenced in (b) (i) above will be divided ____ % to Joint Producer A, and ___ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement[ ].

or

(c) 100% to the Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion [ ].

In the event there is any disagreement with respect to such termination of the Joint Production Arrangement or division of the Joint Production Assets, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Joint Producers will continue to share in commissions during periods of short term disability covered under the Morgan Stanley Short Term Disability Plan. However, in the event of death or total permanent disability (as that term is defined in the Morgan Stanley Long Term Disability Plan) or termination of employment for any reason from Morgan Stanley by any Joint Producer, the Joint Production Arrangement Assets will be divided as follows:

[Select only one of the following (delete the ones not used) and include percentages]

(a) Revert ___% to the remaining or surviving joint producer {This is the most common option];
or.
(b) ___% to Joint Producer A and ___% to Joint Producer B [Use only if there are more than 2 JPs in the JPA] ;

2

or

(c) Revert 100% to the then Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion;

or

(d) _ % to the remaining or surviving Joint Producer and __ % to the then Branch Manager of the last branch officer to which all Joint Producers were jointly assigned for distribution in accordance with management discretion.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Any controversy or claim relating to the enforceability of this Agreement will be settled through the CARE Program and its process. Should this matter be brought to mediation or arbitration and any provision(s) of this Agreement, for any reason, be adjudged void, invalid, or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect. This Agreement may be modified only by a writing signed by all Joint Producers and with the approval and authorization of Morgan Stanley.

This Agreement is subordinate to any agreement between any Joint Producer and Morgan Stanley, and the Agreement may exist only so long as it is acceptable to Morgan Stanley and in accord with its policies and procedures. Morgan Stanley may terminate the Joint Production Arrangement at any time and without notice. Nothing in this Agreement shall be construed to amend or modify any policy or procedure of Morgan Stanley or any management directive currently existing or as may exist in the future, or any rule or regulation of any regulatory or securities organization or agency. Nor shall this Agreement be construed to amend or modify the Joint Production Arrangement Acknowledgments.

3

This Agreement shall be construed in accordance with the laws of the State of
_____ [Use State Where Branch Is Located].

By signing below each Joint Producer acknowledges that he/she understands and agrees
to all of the terms and conditions of the Agreement.

SIGN HERE

_____                           _____
DATE                                                 Joint Producer A  $50$

2/3/04
_____                           _____
DATE                                                 Joint Producer B  $50$

2/3/04
Date

Reviewed For Morgan Stanley DW Inc.

BY: _____                           Date: _____
    Branch Manager

4

## JOINT PRODUCTION ASSET ADDENDUM
### Attached as Exhibit A to the Joint Production Agreement

For purposes of the Joint Production Agreement dated ____, _____, 200_, between _____ (Joint Producer A), and ____.____ (Joint Producer B) [4], Joint Production Assets shall include the following:

**Please select one or more as appropriate:**

(a)    All client accounts opened by any Joint Producer prior to and after commencement of the Joint Production Agreement. [ ],

(b)    All client accounts opened by any Joint Producer after commencement of the Joint Production Agreement [ ],

(c)    All client accounts opened by Joint Producer ___ **prior** to commencement of the Joint Production Agreement. [ ],

(d)    All client accounts opened by Joint Producer __ **after** commencement of the Joint Production Agreement [ ],

(e)    All client accounts selected by each individual Joint Producer in his or her sole discretion for transfer from time to time into the Joint Production Number. [ ],

(f)    All client accounts derived from and opened as a result of other Joint Production Assets. [ ];

(f)    All client accounts opened as the result of joint marketing efforts. [ ];

(g)    All _____ client accounts opened by the Partners. [ ]

(h)    All client accounts specifically identified on this list below. {add pages if needed} [ ]


Joint Producer A    _Stor_            Date    _____

Joint Producer B    _David L_         Date    _2/3/04_

_____   _C David_         _Date_

---

217 228 9934    P.10

*Will Villalaps*
*C*

Exemplar
[Please delete all instructions appearing in BOLD as well as the clarifying footnotes prior to execution][1]

## JOINT PRODUCTION AGREEMENT
(Joint Production Asset Addendum)

WHEREAS, this Agreement is being entered into on _1-12_, _04_ (commencement date) solely for the convenience of _Steve Patton_ ("Joint Producer 'A'") and _David Lisnek_ ("Joint Producer 'B'")[2] [3] (herein collectively the "Joint Producers") to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc. d/b/a *Morgan Stanley's* ("Morgan Stanley") ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree as follows:

Commencing _1-12_, _04_ the Joint Producers will enter into a joint production arrangement (the "Joint Production Arrangement") under the following terms and conditions.

A joint account number (the "Joint Account Number") will be set up for the Joint Production Arrangement. All client accounts to be handled under the Joint Account Number are set forth on the attached Addendum and will be deemed joint production assets (the "Joint Production Assets"). See Joint Production Asset Addendum attached hereto as Exhibit "A".

The Joint Producers agree to use their best efforts in furtherance of the Joint Production Arrangement. As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows: [Please select only one]:

(a)    Joint Producer A _1_% and Joint Producer B _1_%; or _98_%

(b)    Joint Producer A will pay to Joint Producer B on a monthly basis the fixed amount of $_____ to be charged against Joint Producer A's monthly Joint Production commission distribution. [This selection is to be used in the instance that one Joint Producer is on salary and not receiving commissions, such as an FA Trainee. Keep in mind that Joint Production Agreements may be used only with Financial Advisors.]

---

[1]    This is an "exemplar" and is not to be used as a form. After you have decided on the terms of the Joint Production Agreement (the "JPA"), please delete the instructive heading and the footnote designations. You may also eliminate the selections which you are not using.

[2]    JPAs may be comprised of any number of FAs. Add Joint Producers C, D and E as needed. Under no circumstances may a JPA include a Registered or Non-Registered Sales Assistant. In addition, no JPA may contain Joint Producers from more than one branch without prior written approval of the Compliance Department and of each affected Branch Manager and Regional Director.

[3]    Each Joint Producer must sign his/her own Joint Production Acknowledgement. Thus, if there are 3 Joint Producers, there will be 3 separate Acknowledgements.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective current Regional Director.

The Joint Production Arrangement may be terminated at any time by any Joint Producer without notice. In the event of termination of the Joint Production Arrangement no commissions will be divided after the date of termination and the Joint Production Arrangement Assets will be divided as follows:

[Select only one, check the appropriate box and delete the selections not used. Include percentages (%) as indicated.]

(a) ___ % to Joint Producer A; and ___ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement [ ].

or

(b) (i) client accounts opened prior to commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement; and

(ii) all client accounts opened after commencement of the Joint Production Arrangement (except for the derivative accounts referenced in (b) (i) above will be divided ____ % to Joint Producer A, and ___ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement[ ].

or

(c) 100% to the Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion [ ].

In the event there is any disagreement with respect to such termination of the Joint Production Arrangement or division of the Joint Production Assets, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Joint Producers will continue to share in commissions during periods of short term disability covered under the Morgan Stanley Short Term Disability Plan. However, in the event of death or total permanent disability (as that term is defined in the Morgan Stanley Long Term Disability Plan) or termination of employment for any reason from Morgan Stanley by any Joint Producer, the Joint Production Arrangement Assets will be divided as follows:

[Select only one of the following (delete the ones not used) and include percentages]

(a) Revert ___% to the remaining or surviving joint producer {This is the most common option];
or.
(b) ___% to Joint Producer A and ___% to Joint Producer B [Use only if there are more than 2 JPs in the JPA] ;

2

or

(c) Revert 100% to the then Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion;

or

(d) _ % to the remaining or surviving Joint Producer and __ % to the then Branch Manager of the last branch officer to which all Joint Producers were jointly assigned for distribution in accordance with management discretion.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Any controversy or claim relating to the enforceability of this Agreement will be settled through the CARE Program and its process. Should this matter be brought to mediation or arbitration and any provision(s) of this Agreement, for any reason, be adjudged void, invalid, or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect. This Agreement may be modified only by a writing signed by all Joint Producers and with the approval and authorization of Morgan Stanley.

This Agreement is subordinate to any agreement between any Joint Producer and Morgan Stanley, and the Agreement may exist only so long as it is acceptable to Morgan Stanley and in accord with its policies and procedures. Morgan Stanley may terminate the Joint Production Arrangement at any time and without notice. Nothing in this Agreement shall be construed to amend or modify any policy or procedure of Morgan Stanley or any management directive currently existing or as may exist in the future, or any rule or regulation of any regulatory or securities organization or agency. Nor shall this Agreement be construed to amend or modify the Joint Production Arrangement Acknowledgments.

3

This Agreement shall be construed in accordance with the laws of the State of
_____ [Use State Where Branch Is Located].

By signing below each Joint Producer acknowledges that he/she understands and agrees
to all of the terms and conditions of the Agreement.

_____
DATE

2/2/04
_____
DATE

**SIGN HERE** ➡

_____ _S P_
Joint Producer A

_____ _D L_
Joint Producer B

Reviewed For Morgan Stanley DW Inc.

BY: _____
Branch Manager

Date: 2/4/04

4

<u>Exemplar</u>
[Please delete all instructions appearing in BOLD as well as the clarifying footnotes prior to execution][1]

## JOINT PRODUCTION AGREEMENT
(Joint Production Asset Addendum)

WHEREAS, this Agreement is being entered into on _3·30___, _04_ (commencement date) solely for the convenience of _Steve Peton_ ("Joint Producer 'A'") and _David Willenb?_ "Joint Producer 'B'")[2] [3] (herein collectively the "Joint Producers") to better service clients and to share in commissions generated by customer accounts, and nothing in this Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc.  d/b/a *Morgan Stanley's* ("Morgan Stanley) ownership of client accounts and documents, and confidential company records and information.

NOW, THEREFORE, the Joint Producers agree as follows:

Commencing _____, _____, the Joint Producers will enter into a joint production arrangement (the "Joint Production Arrangement") under the following terms and conditions.

A joint account number (the "Joint Account Number") will be set up for the Joint Production Arrangement. All client accounts to be handled under the Joint Account Number are set forth on the attached Addendum and will be deemed joint production assets (the "Joint Production Assets"). See Joint Production Asset Addendum attached hereto as Exhibit "A".

The Joint Producers agree to use their best efforts in furtherance of the Joint Production Arrangement. As between the Joint Producers, all gross commissions generated under the Joint Account Number will be split between the Joint Producers as follows: [Please select only one]:

(a)    Joint Producer A ___% and Joint Producer B ___%; or

(b)    Joint Producer A will pay to Joint Producer B on a monthly basis the fixed amount of $_____ to be charged against Joint Producer A's monthly Joint Production commission distribution. [This selection is to be used in the instance that one Joint Producer is on salary and not receiving commissions, such as an FA Trainee. Keep in mind that Joint Production Agreements may be used only with Financial Advisors.]

---

[1]    This is an "exemplar" and is not to be used as a form. After you have decided on the terms of the Joint Production Agreement (the "JPA"), please delete the instructive heading and the footnote designations. You may also eliminate the selections which you are not using.

[2]    JPAs may be comprised of any number of FAs. Add Joint Producers C, D and E as needed. Under no circumstances may a JPA include a Registered or Non-Registered Sales Assistant. In addition, no JPA may contain Joint Producers from more than one branch without prior written approval of the Compliance Department and of each affected Branch Manager and Regional Director.

[3]    Each Joint Producer must sign his/her own Joint Production Acknowledgement. Thus, if there are 3 Joint Producers, there will be 3 separate Acknowledgements.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective current Regional Director.

The Joint Production Arrangement may be terminated at any time by any Joint Producer without notice. In the event of termination of the Joint Production Arrangement no commissions will be divided after the date of termination and the Joint Production Arrangement Assets will be divided as follows:

[Select only one, check the appropriate box and delete the selections not used. Include percentages (%) as indicated.]

(a) 77% to Joint Producer A; and ⌐ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement [ ].

or

(b) (i) client accounts opened prior to commencement of the Joint Production Arrangement (and all derivative accounts opened at anytime) will revert to the Joint Producer who brought the client account to the Joint Production Arrangement; and

(ii) all client accounts opened after commencement of the Joint Production Arrangement (except for the derivative accounts referenced in (b) (i) above will be divided ____ % to Joint Producer A, and ___ % to Joint Producer B on a capital asset basis as of the date of termination of the Joint Production Arrangement[ ].

or

(c) 100% to the Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion [ ].

In the event there is any disagreement with respect to such termination of the Joint Production Arrangement or division of the Joint Production Assets, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Joint Producers will continue to share in commissions during periods of short term disability covered under the Morgan Stanley Short Term Disability Plan. However, in the event of death or total permanent disability (as that term is defined in the Morgan Stanley Long Term Disability Plan) or termination of employment for any reason from Morgan Stanley by any Joint Producer, the Joint Production Arrangement Assets will be divided as follows:

[Select only one of the following (delete the ones not used) and include percentages]

(a) Revert ____% to the remaining or surviving joint producer {This is the most common option];
or.
(b) ___% to Joint Producer A and ___% to Joint Producer B [Use only if there are more than 2 JPs in the JPA] :

2

or

(c) Revert 100% to the then Branch Manager of the last branch office to which all Joint Producers were jointly assigned for distribution in accordance with management discretion;

or

(d) _ % to the remaining or surviving Joint Producer and __ % to the then Branch Manager of the last branch officer to which all Joint Producers were jointly assigned for distribution in accordance with management discretion.

In the event there is any disagreement with respect to such division, such dispute will be determined by the then Branch Manager of the last Morgan Stanley branch office to which all Joint Producers were jointly assigned along with the respective Regional Director.

Any controversy or claim relating to the enforceability of this Agreement will be settled through the CARE Program and its process. Should this matter be brought to mediation or arbitration and any provision(s) of this Agreement, for any reason, be adjudged void, invalid, or unenforceable by an arbitrator or arbitration panel, a regulatory body or a court of law, the remainder of the Agreement will still continue and remain in full force and effect. This Agreement may be modified only by a writing signed by all Joint Producers and with the approval and authorization of Morgan Stanley.

This Agreement is subordinate to any agreement between any Joint Producer and Morgan Stanley, and the Agreement may exist only so long as it is acceptable to Morgan Stanley and in accord with its policies and procedures. Morgan Stanley may terminate the Joint Production Arrangement at any time and without notice. Nothing in this Agreement shall be construed to amend or modify any policy or procedure of Morgan Stanley or any management directive currently existing or as may exist in the future, or any rule or regulation of any regulatory or securities organization or agency. Nor shall this Agreement be construed to amend or modify the Joint Production Arrangement Acknowledgments.

This Agreement shall be construed in accordance with the laws of the State of _____ [Use State Where Branch Is Located].

By signing below each Joint Producer acknowledges that he/she understands and agrees to all of the terms and conditions of the Agreement.

4-7-04
DATE

4-7-04
DATE

Joint Producer A

Joint Producer B

Reviewed For Morgan Stanley DW Inc.

BY: _____
Branch Manager

Date: 7/4/07

4

## JOINT PRODUCTION ASSET ADDENDUM
### Attached as Exhibit A to the Joint Production Agreement

For purposes of the Joint Production Agreement dated ____, ____, 200_, between _____ (Joint Producer A), and _____ (Joint Producer B) [4], Joint Production Assets shall include the following:

**Please select one or more as appropriate:**

(a)    All client accounts opened by any Joint Producer prior to and after commencement of the Joint Production Agreement. [   ],

(b)    All client accounts opened by any Joint Producer after commencement of the Joint Production Agreement [   ] ,

(c)    All client accounts opened by Joint Producer ___ prior to commencement of the Joint Production Agreement. [   ],

(d)    All client accounts opened by Joint Producer __ after commencement of the Joint Production Agreement [   ] ,

(e)    All client accounts selected by each individual Joint Producer in his or her sole discretion for transfer from time to time into the Joint Production Number. [   ],

(f)    All client accounts derived from and opened as a result of other Joint Production Assets. [   ];

(f)    All client accounts opened as the result of joint marketing efforts. [   ];

(g)    All _____ client accounts opened by the Partners. [   ]

(h)    All client accounts specifically identified on this list below. {add pages if needed} [   ]

Joint Producer A _____

Joint Producer B _____

4-7-c4
Date

4-7-04
Date

---

[4] See Footnote 2 of the Joint Production Agreement.