E-FILED
Monday, 06 December, 2004 01:45:36 PM
Clerk, U.S. District Court, ILCD

FILED

DEC - 6 2004

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

UNITED STATES DISTRICT COURT FOR THE
CENTRAL DISTRICT OF ILLINOIS

MORGAN STANLEY DW INC.,

Plaintiff,

v.

No. 04-3263

STEPHEN L. PATTON, CHRISTOPHER H.
NOONAN, THOMAS A. NOONAN and
TIMOTHY R. HUSEMAN,

Defendants.

| | |
|---|---|
| Hertz, Schram & Saretsky, P.C.<br>Attorneys for Plaintiff<br>By:   Gary M. Saretsky<br>       Miles D. Hart<br>       Eric A. Michaels<br>1760 S. Telegraph Rd., Suite 300<br>Bloomfield Hills, MI 48302-0183<br>(248) 335-5000 | Carlile Patchen & Murphy<br>Attorneys for Defendants<br>By:   Dennis Concilla<br>       Douglas Jennings<br>366 East Broad Street<br>Columbus, OH 43215<br>(614) 228-6135<br><br>Brown, Hay & Stephens, LLP<br>Attorneys for Defendants<br>By:   Scott C. Hemholz<br>205 S. Fifth St., Suite 700<br>Springfield, IL 62701<br>(217) 544-8491 |

**MEMORANDUM IN SUPPORT OF MORGAN STANLEY'S
MOTION FOR A TEMPORARY RESTRAINING ORDER
AND PRELIMINARY INJUNCTIVE RELIEF**

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

1

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................................ii

QUESTION PRESENTED ......................................................................................... 1

INTRODUCTION ...................................................................................................... 2

FACTUAL BACKGROUND......................................................................................... 2

ARGUMENT ........................................................................................................... 11

    I.       MORGAN STANLEY IS ENTITLED TO INJUNCTIVE RELIEF........... 11

            A.    Morgan Stanley Will Likely Succeed On The Merits Because
                 Defendants Openly Breached Their Agreements With Morgan
                 Stanley. ......................................................................................... 13

                 1.    Defendants' Wrongdoing and Contractual Breaches ....... 14

                 2.    Case Law Supporting Morgan Stanley's Assertions ......... 14

                 3.    Morgan Stanley Maintains a Clear Right to Relief. ........... 15

                 4.    Morgan Stanley's Customer List is Entitled to Trade
                     Secret Status. .................................................................... 17

            B.    Morgan Stanley Has No Adequate Remedy at Law. ................... 19

            C.    The Benefits Of Granting Injunctive Relief Outweigh Denial
                 And Injunctive Relief Serves the Public Interest.......................... 23

    II.     THE ARBITRATION RULES REQUIRE MORGAN STANLEY TO
           SEEK A TRO BEFORE A COURT OF COMPETENT
           JURISDICTION. ................................................................................... 24

CONCLUSION......................................................................................................... 25

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

## **TABLE OF AUTHORITIES**

Cases                                                                                          Page

Abel v. Fox,
274 Ill. App.3d 811, 654 N.E.2d 591 (4th Dist. 1995) .................................................. 15

B.C. Ziegler and Company v. Jeffrey R. Kuklinski,
No. 94CV41 (Washington County Circuit Court, January 21, 1994) .......................... 13

Basicomputer Corporation v. Scott,
973 F.2d 507 (6th Cir. 1992) ...................................................................................... 20

Blumenthal v. Merrill Lynch,
910 F.2d 1049, 1053 (2nd Cir. 1990) ......................................................................... 23

Brunswick Corp. v. Jones,
784 F.2d 271 (7th Cir. 1986) ...................................................................................... 13

Citigroup Global Markets, Inc. v. Charles L. Henderson III, et. al.,
No. 03-2072 (C.D. Ill. April 22, 2003) ........................................................................ 11

Connecticut Resources Recovery Auth. v. Occidental Pet. Corp.,
705 F.2d 31, 35 (2nd Cir. 1983) ................................................................................. 23

Dean Witter Reynolds Inc. v. David Retkowski,
No. 00-C-813 (E.D. Wisc. June 8, 2000) ................................................................... 13

Dean Witter Reynolds, Inc. v. Semersky,
No. 99 C 6302 (N.D. Ill. September 24, 1999) ........................................................... 12

Dean Witter v. Greenbaum,
No. 01 C 477 (N.D. Ill. January 24, 2001) ................................................................. 12

Dean Witter v. Spillane,
No. 00 C 7595 (N.D. Ill. December 6, 2000) ............................................................. 12

Elmer Miller, Inc. v. Landis,
253 Ill. App.3d 129, 625 N.E.2d 338 (1993) .............................................................. 18

FMC v. Varco,
677 F.2d 500, 504 (5th Cir. 1982) .............................................................................. 15

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

ii

Gillespie v. Carbondale and Marion Eye Centers,
351 Ill. App.3d 625, 622 N.E.2d 1267 ........................................................................ 15

IDS Financial Services v. Smithson,
843 F. Supp. 415, 419 (N.D. Ill. 1994) ...................................................................... 16

Merrill Lynch v. Bengry,
No. 01-CV-1146 (Dane County Circuit Court, May 3, 2001) ...................................... 13

Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985)................................. 14, 20, 23

Merrill Lynch v. Brambilia,
No. 92-347-2-MAC(DF), p.10 (M.D. GA., Sept. 11, 1992) ......................................... 20

Merrill Lynch v. Cooper,
No. 91-163L (U.S.D.C., D.R.I. 1991) ......................................................................... 23

Merrill Lynch v. Dutton,
844 F.2d 726 (10th Cir. 1988).................................................................................... 23

Merrill Lynch v. Grall,
836 F. Supp. at 434 ................................................................................................... 23

Merrill Lynch v. Hagerty,
808 F.Supp. 1555 (S.D. Fla. 1992) aff'd., 2 F.3d 405 (11th Cir. 1993) ......... 17, 21, 23

Merrill Lynch v. Hess,
No. 88-0160 (U.S.D.C., M.D. PA., Feb. 19, 1988) ..................................................... 22

Merrill Lynch v. Iorri,
No. 94C7402 (N.D. Ill., Dec. 13, 1994); ..................................................................... 12

Merrill Lynch v. Otzko,
No. 91C3400 (N.D. Ill., June 14, 1991)...................................................................... 12

Merrill Lynch v. Patinkin,
No. 91C2324 (N.D. Ill., Apr. 19, 1991) ...................................................................... 12

Merrill Lynch v. Romano,
No. 91C2432 (N.D. Ill. Apr. 25, 1991) ....................................................................... 12

Merrill Lynch v. Rosenbaum,
No. 90C5031 (N.D. Ill., Sept. 4, 1990) ...................................................................... 12

LAW OFFICES    HERTZ, SCHRAM & SARETSKY, P.C.

Merrill Lynch v. Salvano,
999 F.2d 211 (7th Cir. 1993)....................................................................................... 23

Merrill Lynch v. Stidham,
658 F.2d 1098 (5th Cir. 1981)..................................................................................... 19

Merrill Lynch v. Summers,
No. 91C8231 (N.D. Ill., Dec. 23, 1991) ....................................................................... 12

Merrill Lynch, Pierce Fenner and Smith v. Grall,
836 F. Supp. 428 (W.D. Mich. 1993) ........................................................................... 16

Merrill Lynch, Pierce, Fenner & Smith, Inc.  v. Kramer,
816 F.Supp. 1242 (N.D. Ohio 1992) ............................................................................ 17

Merrill Lynch, Pierce, Fenner & Smith, Inc.  v. Tobias,
No. 90C20210 (N.D. Ill., July 17, 1990) ....................................................................... 12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v.  Curry et al,
No. 00C2351 (N.D. Ill, April 19, 2000) ......................................................................... 12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Cunningham,
736 F. Supp. 887 (N.D. Ill. 1990) ................................................................................ 12

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton,
844 F.2d at 727-728 .................................................................................................. 18

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Feeney,
No. 90-5085 (N.Y. Sup. Ct., Oct. 18, 1990) ................................................................. 17

Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Maniscalco,
No. 98C8185 (N.D. Ill, December 22, 1998)................................................................. 12

Morgan Stanley DW Inc. v. Wutz, et al,
No. 01-C-469 (E.D. Wisc. May 14, 2001) ..................................................................... 13

n Re: Rosenbaum Grain Corp.,
103 F.2d 656 (7th Cir. 1939)....................................................................................... 21

Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
1994 WL 900431 (E.D. Mich., Jan. 11, 1994).............................................................. 17

Ortho Pharm Corp. v. Amgen, Inc.,
887 F.2d 460 (3rd Cir. 1989) ...................................................................................... 23

LAW OFFICES    HERTZ, SCHRAM & SARETSKY, P.C.

Outsource International v. Barton,
192 F.3d 662 (7th Cir. 1999)..................................................................................... 16

PCX Corp. v. Ross,
168 Ill.App.3d 1047, 522 N.E.2d 1333, 1339 (1st Dist. 1988) ................................... 15

Peabody Coalsales v. Tampa Electric,
36 F.3d 46, 48 (8th Cir. 1994).................................................................................... 23

Performance Unlimited v. Questar Pub,
52 F.3d 1373 (6th Cir. 1995)...................................................................................... 23

PMS Distrib. Co. v. Huber,
863 F.2d 639 (9th Cir. 1988)...................................................................................... 23

Prudential Securities v. McDermott,
No. 98C4286 (N.D. Ill, July 14, 1998) ....................................................................... 12

Prudential Securities v. Ramachandraiyer,
No. 98C1467 (N.D. Ill, March 11, 1998)..................................................................... 12

RGI v. Tucker,
858 F.2d 227, 230 (5th Cir. 1988)........................................................................ 18, 23

Roso-Lino Beverage Distrib. v. Coca-Cola Bottling Co.,
749 F.2d 124 (2nd Cir. 1984)...................................................................................... 23

Ruscitto v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,
777 F.Supp. 1349, 1354 (N.D. Tex.), aff'd 948 F.2d 1286 (5th Cir. 1991),
cert.denied, 112 S.Ct. 1994 (1992)............................................................................ 17

Sauer-Getriebe KG v. White Hydraulics,
715 F.2d 348 (7th Cir. 1983)...................................................................................... 24

Sauer-Getriebe KG v. White Hydraulics,
715 F.2d 348 (7th Cir. 1983), cert. denied, 364 U.S. 1070 (1984)............................. 23

Springfield Rare Coin Galleries, Inc. v. Mileham,
250 Ill. App. 3d 922 (Ill. App. Ct. 1993)..................................................................... 16

Stampede Tool Warehouse, Inc. v. May,
272 Ill. App.3d 580, 651 N.E.2d 209 (1995) ............................................................. 18

Teradyne Inc. v. Mostek Corp.,
797 F.2d 43 (1st Cir. 1986)........................................................................................ 23

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

Wells v. Merrill Lynch, Pierce Fenner and Smith,
919 F. Supp. 1047 (E.D. Ky. 1994).......................................................................... 16

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

## OTHER AUTHORITY

Illinois Trade Secrets Act, 765 ILCS 1065/2 ................................................................ 18

National Association of Securities Dealers, Inc.
Code of Arbitration Procedure § 10335 ............................................................... 24, 26

Restatement of the Law of Torts, § 757(b) ................................................................ 17

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

## **QUESTION PRESENTED**

WHETHER INJUNCTIVE RELIEF SHOULD BE GRANTED WHEN DEFENDANTS HAVE VIOLATED NON-SOLICITATION AGREEMENTS AND MISAPPROPRIATED TRADE SECRETS BELONGING TO MORGAN STANLEY, AND WHERE MORGAN STANLEY HAS NO ADEQUATE REMEDY AT LAW?

MORGAN STANLEY ANSWERS "YES".

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

## INTRODUCTION

Morgan Stanley DW Inc. ("Morgan Stanley") seeks a temporary restraining order and/or preliminary injunction because defendants Stephen L. Patton ("Patton"), Christopher H. Noonan ("C. Noonan"), Thomas Noonan ("T. Noonan") and Timothy R. Huseman ("Huseman") (collectively "Defendants") have (1) willfully and flagrantly breached the terms of their Morgan Stanley employment agreements, (2) breached fiduciary and other duties owed to Morgan Stanley and (3) converted and transferred confidential Morgan Stanley customer information to their own use and the use of their new employer.

## FACTUAL BACKGROUND

The accompanying verified complaint (which is incorporated by reference) sets forth the pertinent facts. Essentially, Defendants are securities registered representatives formerly employed in Morgan Stanley's Springfield, Illinois branch office. On December 1, 2004, Defendants and their sales assistants contemporaneously resigned from Morgan Stanley and immediately joined Morgan Stanley's competitor, Citigroup Global Markets, Inc. f/k/a Salomon Smith Barney ("Citigroup"). Exhibit "1".

Defendants' pre- and post-employment conduct is egregious. Contrary to their employment contracts, acknowledged Code of Conduct provisions, Joint Production Agreements and governing law, Defendants conceived and implemented a scheme with Citigroup to resign from Morgan Stanley without notice and immediately begin soliciting Morgan Stanley clients. This scheme was apparently conceived long ago as Morgan Stanley has learned that Citigroup business cards with the names of Defendants on

2

them have already been prepared. Exhibit "2".

Defendants have been soliciting and pursuing clients they were assigned, that were developed and/or whose names became known to them while at Morgan Stanley to move their accounts to Citigroup. By virtue of their words and conduct, Defendants have also removed documents from Morgan Stanley's offices and have used those documents to solicit these customers. In other words, and as described herein in greater detail, despite the clear parameters of their contractual, legal and fiduciary obligations, Defendants are deliberately in breach.

At the onset of their Morgan Stanley employment, Defendants agreed to abide by certain terms and conditions of employment. Defendants each executed employment agreements known as the "Account Executive Employment Agreement" (collectively "Agreements"). Exhibits "3" - "5". Defendants agreed that in the event of a breach, money damages would be inadequate and injunctive relief should be granted. Morgan Stanley merely asks the Court to enforce the governing Agreements, which contain reasonable protective and restrictive covenants, as indicated in the following sections of the Agreements and other Morgan Stanley documents.

In consideration of the foregoing benefits and opportunities provided by Morgan Stanley, Defendants agreed as follows:[1]

## 1.    CUSTOMER LISTS AND OTHER CONFIDENTIAL INFORMATION

1.1 All records and documents concerning the business and affairs of Dean Witter (hereinafter "Company Records"), and the right to use Company Records, are, and will always be the confidential and exclusive property of Dean Witter.

---

[1] For ease and brevity, only Patton's Agreement is quoted herein. The other Defendants' Agreements are virtually identical in the subject terms. Please note, all references to "Dean Witter" are references to Morgan Stanley as this was Plaintiff's predecessor.

3

Company Records include, but are not limited to, Dean Witter books and records; holding book or customer book pages; the names, addresses, telephone numbers, and assets and obligations carried in the accounts [commonly called "positions"] of Dean Witter's customers; computer software or hardware for use in computer or word processing equipment; all advanced training material forwarded to the Employee during his employment including but not limited to books, papers, records, videotapes and recordings; and documents or computer programs prepared or generated by the employee by the use of Company Records. Company Records include the originals and all copies thereof. <u>The Employee's use of Company Records  will stop immediately upon the first of the following events to occur</u>: the Employee's (1) voluntary or involuntary resignation, (2) retirement, (3) release, (4) discharge, (5) suspension, or (6) <u>acceptance of other employment</u>.

1.2 <u>The Employee, during the course of his employment with Dean Witter, will not remove Company Records from the premises of Dean Witter in either original or copied form</u>, except in the ordinary course of conducting business for, and subject to approval by, Dean Witter. The Employee will immediately deliver to Dean Witter, upon acceptance of other employment, at the time of termination of employment, or at any other time upon Dean Witter's request, any Company Records in the Employee's possession or control.

1.3 <u>The Employee will not at any time assert any claim of ownership or other property interest in any Company Records. The Employee will permit Dean Witter to inspect any materials to be removed from Dean Witter offices when he accepts other employment or when his employment with Dean Witter is terminated.</u>

1.4 <u>The Employee will not disclose to any person or entity the contents, in whole or in part, of Company Records, except in the ordinary course of conducting business for Dean Witter.</u>

1.5 <u>Both during and subsequent to the course of his employment with Dean Witter, the Employee will not divulge to any person any information received during the course of his employment concerning the business of the firm and its financial affairs.</u>

4

Exhibit "3". Emphasis added.

Defendants further agreed that they would not solicit the clients they serviced at

Morgan Stanley for a period of one year after their termination from Morgan Stanley:

**2.    UNFAIR COMPETITION**.

2.1 <u>For a period of one year following termination of em-ployment for any reason, and within a radius of one- hun-dred (100) miles from the Dean Witter office to which the Employee was last assigned, the Employee will not solicit or attempt to solicit, directly or indirectly, any of Dean Witter's customers who were served by or whose names became known to the Employee while in the employ of Dean Witter</u> with respect to securities, commodities,  financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its af-filiates is engaged.

2.2 <u>For a period of one year following termination of em-ployment for any reason, the Employee will not, directly or indirectly, recruit or solicit any employee of Dean Witter for employment</u> with any other organization which does busi-ness in securities, commodities, financial futures, insurance, tax advantaged investments, mutual funds or any other line of business in which Dean Witter or any of its affiliates is engaged.

Exhibit "3". Emphasis added.

In addition, <u>Defendants expressly agreed to the issuance of a temporary restrain-</u>

<u>ing order</u> and a preliminary injunction in the event they breached the terms of their

Agreements:

**3.    RIGHT TO INJUNCTION.**

<u>In the event the Employee breaches any of the promises</u> concerning "Customer Lists And Other Confidential Informa-tion" or "Unfair Competition" contained in paragraphs 1 and 2 of this Agreement, <u>the Employee acknowledges that Dean Witter's remedy at law for damages will be inadequate and that Dean Witter will be entitled to an injunction to prevent the Employee's prospective or continuing breach and to</u>

5

> maintain the status quo pending arbitration as provided in
> paragraph 7 of this Agreement. Dean Witter's application to
> a court of law for its right to arbitration as provided in para-
> graph 7 of this an injunction will not constitute a waiver by
> Dean Witter of Agreement. The Employee further agrees
> that any court of law which issues an injunction shall refer
> any claim for damages to arbitration as provided in para-
> graph 7 of this Agreement.

Exhibit "3". Emphasis added.

Admittedly, Patton's and C. Noonan's Agreements contain a "carve-out," except-
ing customers they brought with them when they joined Morgan Stanley. Morgan
Stanley does not seek to enforce the contractual provisions related to these clients.
Upon information and belief, however, Defendants are soliciting customers assigned to
them by Morgan Stanley, developed while at Morgan Stanley and those customers ser-
viced by other Morgan Stanley brokers. This unequivocally violates not only the Agree-
ments quoted above, but also Defendants' other employment–related agreements such
as their Joint Production Agreements and Acknowledgments and Code of Conduct
which do not contain "carve-outs". It is these customers who were developed at the
time and expense of Morgan Stanley and other Morgan Stanley brokers that Defendants
must keep confidential and are precluded from soliciting.

More specifically, in an effort to increase their production and commission pay-
outs, Defendants executed Joint Production Agreements, forming partnerships between
themselves and other brokers. Collectively attached as Exhibit "6". Further, the Joint
Production Acknowledgments reaffirm Defendants promise to keep all customer and
business records and information confidential and that these records were the property
of Morgan Stanley[2]:

---

[2] For ease and brevity, only Patton's Joint Production Acknowledgment is quoted herein. The other

LAW OFFICES   HERTZ, SCHRAM & SARETSKY, P.C.

I, Steve Patton, acknowledge that by signing below, that any joint production agreement (the "Agreement") between me, David Lisnek and David Willenberg is being entered into solely to better service clients and to share in commissions generated by such clients' accounts and nothing in such Agreement is intended to affect, change, modify or otherwise alter in anyway Morgan Stanley DW Inc. d/b/a *Morgan Stanley's* ("Morgan Stanley") ownership of client accounts and documents, and confidential and company records and information. I understand and agree that customer accounts and client information of whatever kind and in whatever form are Morgan Stanley assets and do not belong to the partners, individually or jointly or to the joint production unit.

Exhibit "7". Emphasis added.

Accordingly, Defendants agreed several times in writing that (1) information obtained regarding customer accounts they serviced was confidential, (2) they would not solicit clients for a period of one year following termination, and (3) they would stipulate to the entry of injunctive relief in the event they breached their Agreements.

Defendants also expressly agreed as a condition of employment that the merits of any claims and controversies arising under their Agreements, while subject to injunctive relief in a court of law as set forth above, would be ultimately resolved by arbitration according to the rules of the National Association of Securities Dealers, Inc., or the New York Stock Exchange, Inc., as Morgan Stanley shall elect, such claims being referred thereto by the court issuing injunctive relief. Exhibits "3" - "5".

Morgan Stanley also distributed copies of the Morgan Stanley Code of Conduct 2001 ("Handbook") to all account executives, including Defendants. Defendants acknowledged receipt of the Handbook and agreed to be bound by the Code of Conduct

Defendants' Joint Production Acknowledgments are virtually identical in their terms. Collectively Exhibit "7".

7

3:04-cv-03263-JES-CHE    # 7    Page 16 of 34

contained in the Handbook.[3]  Exhibit "8".

The Code of Conduct contains the following restrictions on the use and/or disclo-

sure of Morgan Stanley's confidential information:[4]

> Handling proprietary and confidential information in a pro-
> fessional manner protects the Firm's reputation for integrity,
> promotes the Firm's relationships with its clients, safeguards
> the Firm's assets and ensures compliance with the complex
> regulations governing the financial services industry. As an
> employee of the Firm, you must prevent the improper dis-
> closure of all proprietary and confidential information.

Code of Conduct, p. 25.

The Code of Conduct specifically defines both proprietary and confidential infor-

mation:

> Definition of Proprietary Information
>
> "Proprietary information" is Firm information not known to
> the public that may have intrinsic value or that may provide
> the Firm with a competitive advantage. Proprietary informa-
> tion includes, but is not limited to, computer programs and
> other systems information; algorithms; business, product or
> marketing plans; sales forecasts; manuals; client lists; intel-
> lectual property; and business practices.
>
> *          *          *
>
> Definition of Confidential Information
>
> "Confidential information" is information that is not generally
> known to the public about MSDW, its clients, its counterpar-
> ties or other parties with which the Firm has a relationship.
> Like proprietary information, confidential information may be
> present in various media and forms.
>
> Examples of confidential information concerning the Firm

---

[3] Defendants (and all Morgan Stanley employees) electronically acknowledge the Code of Conduct on a yearly basis.

[4] Morgan Stanley quotes from the 2001 Code of Conduct.

8

and its employees, clients and counterparties include, but
are not limited to:

- personal information;
- financial information;
- securities trades or holdings;

  *           *           *

- identities of clients or counterparties of MSDW;

  *           *           *

- programs and materials on the Firm's information sys-
  tems.

Code of Conduct, p. 25.

The Code of Conduct also contains the following additional restrictions on the use

and/or disclosure of Morgan Stanley's confidential business information:

Using Proprietary or Confidential Information

Use proprietary or confidential information solely to perform
your duties for MSDW.

Post-Employment Use of Proprietary or Confidential Infor-
mation

You may not disclose proprietary or confidential information,
including intellectual property, of the Firm or its employees,
clients or counterparties when seeking employment outside
of MSDW or after termination. You may not take such pro-
prietary or confidential information when leaving MSDW or
use or disclose such information for your personal benefit or
for the benefit of your new employer or prospective new
employer. You may not permit its disclosure or use by any
third party.

  *           *           *

This policy does not restrict you from obtaining employment
in any capacity elsewhere, provided you do not use or dis-
close proprietary or confidential information.

9

Code of Conduct pp. 26-28.

The Code of Conduct contains no "carve outs". Therefore, Defendants are obligated to keep customer information confidential precluding the removal of such information from the firm.

Defendants resigned from Morgan Stanley on December 1, 2004. Morgan Stanley has learned that Defendants negotiated and accepted new positions with a Morgan Stanley competitor, Citigroup, removed documents and information and have been soliciting and pursuing clients they serviced at Morgan Stanley to move their accounts to Citigroup. In other words, despite the clear terms of their Agreements, fiduciary obligations and Code of Conduct acknowledgement, Defendants are deliberately in breach.

Defendants implemented a scheme to join Citigroup and establish, for the first time, a competing Citigroup office in Springfield, Illinois. There is evidence that the scheme has been in the works for quite some time. For example, Morgan Stanley is in possession of Citigroup business cards bearing the names and titles of these Defendants. Exhibit "2". Defendants also violated the terms of their Agreements and Code of Conduct by absconding with Morgan Stanley confidential company records and customer information in direct violation of their Agreements. In fact, several Morgan Stanley employees personally witnessed Defendants and others removing boxes of documents from Morgan Stanley's Springfield branch office on November 2, 2004. See affidavit attached as Exhibit "9".

One such witness, Larry Hardy ("Hardy"), saw Defendants (and even Huseman's wife) putting papers and files from their offices into boxes and other containers and load-

10

ing them into their cars.  Exhibit "9".

After Defendants' resignations, Hardy spoke with several Morgan Stanley customers who informed him that Defendants had notified them of their pending resignations and solicited them to transfer their accounts to Citigroup long before Defendants resigned; some even signed paperwork authorizing the transfer of their accounts to Citigroup.  Hardy also learned from these customers that Defendants were making misrepresentations to them that the Morgan Stanley office was closing and their accounts must be transferred to Citigroup.  Exhibit "9".  Such malicious conduct must be stopped.

Defendants' various violations of their agreements and Morgan Stanley's Code of Conduct are far too egregious to ignore or explain away.  Defendants are not only soliciting customers developed while at Morgan Stanley through its money and resources, but Defendants are also soliciting clients that were assigned to them or that were serviced jointly with other brokers.  Defendants are not only stealing clients from Morgan Stanley, they are stealing clients away from other Morgan Stanley brokers.  Defendants possess the personal information for not only the clients they serviced, but for untold thousands of other Morgan Stanley clients as well.  Clearly, the court should not countenance such nefarious conduct, should enjoin further solicitation, and order the return of all Morgan Stanley documents and information forthwith.

## ARGUMENT

### I.  MORGAN STANLEY IS ENTITLED TO INJUNCTIVE RELIEF.

Hundreds, if not thousands, of federal and state courts have granted securities firms injunctive relief under virtually identical circumstances.  Notably, Judge Waters of this court recently granted Citigroup injunctive relief against two brokers who left Citi-

11

group for Morgan Stanley. <u>Citigroup Global Markets, Inc. v. Charles L. Henderson III, et. al.</u>, No. 03-2072 (C.D. Ill. April 22, 2003). Moreover, there are a multitude of decisions in the North District of Illinois granting the same such relief including Judge Gottschall in <u>Dean Witter</u> v. <u>Greenbaum</u>, No. 01 C 477 (N.D. Ill. January 24, 2001); Judge Hibbler in <u>Dean Witter</u> v. <u>Spillane</u>, No. 00 C 7595 (N.D. Ill. December 6, 2000); and Judge Rosemond in <u>Dean Witter Reynolds, Inc.</u> v. <u>Semersky</u>, No. 99 C 6302 (N.D. Ill. September 24, 1999). Collectively attached as Exhibit "10". The facts of the cited cases mirror those presented here as they involved the same plaintiff, the virtually identical non-solicitation provisions, and largely the same course of conduct by the defendants. See other Illinois decisions including: <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u> v. <u>Curry et al</u>, No. 00C2351 (N.D. Ill, April 19, 2000); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u> v. <u>Maniscalco</u>, No. 98C8185 (N.D. Ill, December 22, 1998); <u>Prudential Securities</u> v. <u>McDermott</u>, No. 98C4286 (N.D. Ill, July 14, 1998); <u>Prudential Securities</u> v. <u>Ramachand-raiyer</u>, No. 98C1467 (N.D. Ill, March 11, 1998); <u>Merrill Lynch</u> v. <u>Iorri</u>, No. 94C7402 (N.D. Ill., Dec. 13, 1994); <u>Merrill Lynch</u> v. <u>Patinkin</u>, No. 91C2324 (N.D. Ill., Apr. 19, 1991); <u>Merrill Lynch</u> v. <u>Romano</u>, No. 91C2432 (N.D. Ill. Apr. 25, 1991); <u>Merrill Lynch</u> v. <u>Otzko</u>, No. 91C3400 (N.D. Ill., June 14, 1991); <u>Merrill Lynch</u> v. <u>Summers</u>, No. 91C8231 (N.D. Ill., Dec. 23, 1991); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u> v. <u>Cunningham</u>, 736 F. Supp. 887 (N.D. Ill. 1990); <u>Merrill Lynch, Pierce, Fenner & Smith, Inc.</u> v. <u>Tobias</u>, No. 90C20210 (N.D. Ill., July 17, 1990); <u>Merrill Lynch</u> v. <u>Rosenbaum</u>, No. 90C5031 (N.D. Ill., Sept. 4, 1990). Collectively attached as Exhibit "11".

Furthermore, courts in the Seventh Circuit have also consistently granted securities firms injunctive relief under identical circumstances as presented here. Courts in the

12

neighboring state of Wisconsin have granted the exact relief in similar circumstances such as Judge Curran in Morgan Stanley DW Inc. v. Wutz, et al, No. 01-C-469 (E.D. Wisc. May 14, 2001), Judge C. William Foust's May 3, 2001 ruling in Merrill Lynch v. Bengry, No. 01-CV-1146 (Dane County Circuit Court, May 3, 2001), Judge Clevert's ruling in Dean Witter Reynolds Inc. v. David Retkowski, No. 00-C-813 (E.D. Wisc. June 8, 2000) (an action factually identical to the instant case), and Judge Grady in B.C. Ziegler and Company v. Jeffrey R. Kuklinski, No. 94CV41 (Washington County Circuit Court, January 21, 1994). See also, Merrill Lynch v. Spear, No. 82D03-9609-CP-2407, (Vanderburgh (IN) County Superior Court, Sept. 17, 1996).

Issuance of an injunction is proper because Morgan Stanley has demonstrated (i) a reasonable likelihood of success on the merits; (ii) that there is no adequate remedy at law; (iii) a substantial threat of immediate and irreparable harm; (iv) that greater injury will result from denial of the injunction than from it being granted; and (v) that an injunction will not disserve the public interest. Brunswick Corp. v. Jones, 784 F.2d 271 (7th Cir. 1986).

**A. Morgan Stanley Will Likely Succeed On The Merits Because Defendants Openly Breached Their Agreements With Morgan Stanley.**

Morgan Stanley's right to relief is clearly set forth in the express language of the Agreements, which contain the written promise not to (i) confiscate Morgan Stanley's customer records and information, (ii) solicit (for one year) the clients they were assigned, that were developed at Morgan Stanley or whose names they learned of while employed by Morgan Stanley, and (iii) solicit (for one year) Morgan Stanley's employees. Morgan Stanley's right to relief is also set forth in the Code of Conduct, acknowl-

13

edged by Defendants.

## 1.    Defendants' Wrongdoing and Contractual Breaches

On December 1, 2004, Defendants resigned from Morgan Stanley, previously

removed droves of documents and information and immediately began soliciting Morgan

Stanley clients to move their accounts to Defendants' new employer, Citigroup, beyond

that permitted by their Agreements. Upon information and belief, Defendants:

> a.    provided the names, addresses, telephone numbers and confiden-
> tial account information about Morgan Stanley customers to Citi-
> group and/or its designee beyond that permitted by their Agree-
> ments;

> b.    stole Morgan Stanley documentation from Morgan Stanley's
> Springfield, Illinois office beyond that permitted by their Agree-
> ments; and

> c.    solicited customers to move their accounts to Citigroup beyond that
> permitted by their Agreements.

Defendants have wrongfully converted Morgan Stanley records. These docu-

ments contain sensitive and confidential information regarding Morgan Stanley custom-

ers. Obviously Defendants have removed these files to gain an unfair competitive ad-

vantage over Morgan Stanley.

## 2.    Case Law Supporting Morgan Stanley's Assertions

In Merrill Lynch v. Bradley, 756 F.2d 1048, 1054 (4th Cir. 1985), the United

States Court of Appeals for the Fourth Circuit held in a substantially similar case that

immediate injunctive relief is necessary to avoid irreparable harm and to maintain the

status quo:

> When an account executive breaches his employment con-
> tract by soliciting his former employer's customers, a non-
> solicitation clause requires immediate application to have
> any effect. An injunction even a few days after solicitation

14

> has begun is unsatisfactory because the damage is done.
> The customers cannot be "unsolicited."

The Fifth Circuit echoed the sentiments of the Fourth Circuit, emphasizing that, absent injunctive relief, an employer's trade secrets "could be lost before a full trial on the merits could be held." FMC v. Varco, 677 F.2d 500, 504 (5th Cir. 1982).

### 3. Morgan Stanley Maintains a Clear Right to Relief.

Morgan Stanley's right to relief is clear and well documented as set forth in the language of the Agreements, Joint Production Acknowledgments and Code of Conduct. Importantly, the Agreements, Joint Production Acknowledgments and Code of Conduct are substantially similar to the agreements enforced by the Northern District Courts of Illinois in Greenbaum, Spillane, and Semersky, and in virtually every other Circuit Court in the country.

These restrictions as to customer and employee solicitation are clearly enforceable under Illinois law. PCX Corp. v. Ross, 168 Ill.App.3d 1047, 522 N.E.2d 1333, 1339 (1st Dist. 1988) (citations omitted). See also, Abel v. Fox, 274 Ill. App.3d 811, 654 N.E.2d 591 (4th Dist. 1995) (Post-employment restrictive covenant is enforceable if it is reasonable in geographic and temporal scope and is necessary to protect legitimate business interest of employer); Gillespie v. Carbondale and Marion Eye Centers, 351 Ill. App.3d 625, 622 N.E.2d 1267.

In addition to the Greenbaum, Spillane, and Semersky cases (discussed above) where Illinois district courts enforced non-compete provisions identical to the provision at issue in this case, courts in Illinois and throughout the country have routinely enjoined individuals similarly situated to Defendants from soliciting account transfers from cus-

15

tomers in violation of employment agreements. In Outsource International v. Barton, 192 F.3d 662 (7th Cir. 1999), the Court affirmed the entry of a temporary restraining order arising out of violations of confidentiality and non-compete clauses in an employment agreement. The Court noted with approval that "[a] restrictive covenant may be enforced if the employee learned trade secrets or other confidential information while in plaintiff's employ and subsequently attempted to use it for his or her own benefit." Springfield Rare Coin Galleries, Inc. v. Mileham, 250 Ill. App. 3d 922 (Ill. App. Ct. 1993). This is precisely what has happened here.

Similarly, in IDS Financial Services v. Smithson, 843 F. Supp. 415, 419 (N.D. Ill. 1994), Judge Norgle granted a temporary restraining order where a financial planner (similar to Defendants) left one employer and immediately began to solicit clients at his new position. Non-compete agreements with the same geographic and temporal limitations have been enforced with restraining orders. See cases including Wells v. Merrill Lynch, Pierce Fenner and Smith, 919 F. Supp. 1047 (E.D. Ky. 1994) and Merrill Lynch, Pierce Fenner and Smith v. Grall, 836 F. Supp. 428 (W.D. Mich. 1993). Importantly here, Morgan Stanley does not seek to bar Defendants from earning a living as stockbrokers, even though doing so will directly compete with Morgan Stanley in the same community. Morgan Stanley seeks only to enjoin Defendants from soliciting Morgan Stanley customers they were assigned, that were developed or whose names became known to them at Morgan Stanley, a condition to which they specifically agreed to in their Agreements/ Acknowledgments/ Code of Conduct.

16

## 4. Morgan Stanley's Customer List is Entitled to Trade Secret Status.

Even in the absence of an express contract, injunctive relief is appropriate to pro-

tect Morgan Stanley's trade secret customer list. The Restatement of the Law of Torts,

§757(b), defines trade secrets to specifically include customer lists:

> A trade secret may consist of any... compilation of informa-
> tion which is used in one's business, and which gives him
> an opportunity to obtain an advantage over competitors who
> do not know or use it. It may be... a list of customers. (Em-
> phasis added.)

Consistent with the Restatement, courts have repeatedly afforded securities

firm's customer lists trade secret status. See, e.g., Merrill Lynch, Pierce, Fenner &

Smith, Inc. v. Kramer, 816 F.Supp. 1242 (N.D. Ohio 1992); Ruscitto v. Merrill Lynch,

Pierce, Fenner & Smith, Inc., 777 F.Supp. 1349, 1354 (N.D. Tex.), aff'd 948 F.2d 1286

(5th Cir. 1991), cert. denied, 112 S.Ct. 1994 (1992); Merrill Lynch, Pierce, Fenner &

Smith, Inc. v. Feeney, No. 90-5085 (N.Y. Sup. Ct., Oct. 18, 1990) (New York Supreme

Court granted Merrill Lynch injunctive relief, holding that Merrill Lynch's customer list is a

trade secret); Orbach v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 1994 WL 900431

(E.D. Mich., Jan. 11, 1994); Merrill Lynch v. Hagerty, 808 F.Supp. 1555 (S.D. Fla.

1992), aff'd 2 F.3d 405 (11th Cir. 1993) (court granted injunctive relief to protect "good-

will and trade secrets" of Merrill Lynch).

Defendants' efforts to convert Morgan Stanley's confidential and proprietary in-

formation, including customer lists and other "trade secrets," contravene the Illinois

Trade Secrets Act ("ITSA"). In Illinois, a "trade secret" includes:

      [a]    list of actual or potential customers or suppliers, that:

      (1)    is sufficiently secret to derive economic value, actual

17

> or potential, from not being generally known to other
> persons who can obtain economic value from its dis-
> closure or use; and
>
> (2)    is the subject of efforts that are reasonable under the
>         circumstances to maintain its secrecy or confidential-
>         ity.

Emphasis added. 765 ILCS 1065/2 (West 1997) (formerly Ill. Rev. Stat. 1991 ch. 140, par. 352).

Pursuant to ITSA, courts in Illinois have held that customer lists are protectable trade secrets, even absent a restrictive covenant. See, e.g., Stampede Tool Warehouse, Inc. v. May, 272 Ill. App.3d 580, 651 N.E.2d 209 (1995); Elmer Miller, Inc. v. Landis, 253 Ill. App.3d 129, 625 N.E.2d 338 (1993).

Here, Morgan Stanley's customer list has been developed at the substantial time and expense of Morgan Stanley. This information is not disclosed to the public and is only disclosed to employees after an employment agreement containing a non-disclosure and non-solicitation agreement is signed. If Defendants' refused to sign the employment Agreements, they would not have been afforded access to this information. Defendants' knowledge of Morgan Stanley's client list was gained solely through the course of their employment and is governed by their executed Agreements.

Generally, Federal Courts have granted and upheld injunctive relief pending arbitration in cases involving a contractual consent to such injunctive relief. See, Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dutton, 844 F.2d at 727-728 ("first, plaintiff is entitled by the employment contract to entry of orders protecting the status quo...the entry of the temporary restraining order was appropriate"); RGI v. Tucker, 858 F.2d 227, 230 (5th Cir. 1988) (Fifth Circuit held that "where the party's contract provides for injunctive

18

relief pending arbitration...the court need not involve itself in balancing the various factors...it was appropriate for the district court to issue the preliminary injunction to ensure that the arbitration clause of the contract will be carried out as written").

In short, injunctive relief is appropriate both to enforce the terms of Defendants' Agreements/Acknowledgments/Code of Conduct, including the express consent to a temporary restraining order and preliminary injunctive relief and to protect against the misappropriation of Morgan Stanley's trade secret information.

The case law and statute provide clear precedent that Morgan Stanley's records, information and client lists qualify as trade secrets. Morgan Stanley has taken extensive security measures to preserve and protect the confidentiality of its customer records. The names, identities, trading histories, and other pertinent characteristics of Morgan Stanley's customers are not readily available or ascertainable by the general public or a competitor, but rather could be learned and acquired only by the unlawful conduct of Defendants in unlawfully copying, converting, stealing and utilizing the information to solicit Morgan Stanley employees.

## B.    Morgan Stanley Has No Adequate Remedy at Law.

Absent immediate injunctive relief, Morgan Stanley will suffer irreparable harm on at least two separate and distinct levels. First, unless injunctive relief is granted, it will be impossible to measure Morgan Stanley's damages with any reasonable degree of certainty. In Merrill Lynch v. Stidham, 658 F.2d 1098 (5th Cir. 1981), for example, the Fifth Circuit held under identical circumstances that the misappropriation of Merrill Lynch's trade secrets caused irreparable harm to Merrill Lynch, ruling as follows:

> The injury here is such that damages could not adequately compensate. Were Defendants permitted by the law to ex-

19

ploit the clientele of his former employers, every investment
that reasonably flowed from the exploitation should be in-
cluded in the damages award. How such a figure could be
arrived at escapes us. Id. at 1102 (emphasis added).

Similarly, in Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir. 1985), the Fourth

Circuit reached the identical result, expressly holding that Merrill Lynch "faced irrepara-

ble non-compensable harm in the loss of its customers." Id. See also, Merrill Lynch v.

Brambilia, No. 92-347-2-MAC(DF), p.10 (M.D. GA., Sept. 11, 1992):

> The court cannot adequately compute the total injury suf-
> fered by Merrill Lynch as a result of the loss of its client list...
> It is impossible for this court, or any other adjudicative body,
> to determine the life-time value of a particular client or ac-
> count at a given moment in time. Who can say what the
> value of a particular account will be over the course of 5, 10,
> 20, even 30 years...This is precisely the type of situation
> that is ripe for injunctive relief. (Emphasis added.)

Similarly, in Basicomputer Corporation v. Scott, 973 F.2d 507 (6th Cir. 1992), the

Sixth Circuit emphasized that an employee's violation of a restrictive covenant or misap-

propriation of confidential customer information causes irreparable harm to the em-

ployer:

> The loss of customer goodwill often amounts to irreparable
> injury because the damages flowing from such losses are
> difficult to compute. [citation omitted]. Similarly, the loss of
> fair competition that results from the breach of a noncom-
> petition covenant is likely to irreparably harm an employer.
>
> [T]he record contains ample evidence to support the court's
> findings that the Defendant had access to confidential cus-
> tomer information at Basic, that he removed much of this in-
> formation when he left Basic for Sears, and that he promptly
> began contacting Basic's customers after arriving at Sears.
> In addition, the Defendants had access to Basic's pricing in-
> formation and could use that information to underbid Basic.
> These facts are sufficient to support a finding that Basic
> would suffer competitive injury and loss of customer good-
> will from the Defendant's alleged breach of his covenants.

LAW OFFICES HERTZ, SCHRAM & SARETSKY, P.C.

20

> Since competitive injuries and loss of goodwill are difficult to
> quantify, the court did not err in finding that Basic would suf-
> fer irreparable harm in the absence of an injunction. Id. at
> 510-512. (Emphasis added.)

**Prior to Defendants' recent resignation, they serviced roughly 1,847 Morgan Stanley accounts, representing almost $235,925,709 in assets under Morgan Stanley management, and which generated approximately $1,911,952 in commission revenues for Morgan Stanley in the past twelve months alone.** It is impossible to determine the number of Morgan Stanley clients Defendants solicited in violation of their Agreements and legal obligations. It is also impossible to determine with any degree of certainty the commissions each of these clients will generate not only this year but 5, 10 or 30 years into the future. See, e.g., Hagerty, 808 F.Supp. at 1558-60 (describing expert testimony demonstrating the incalculability and speculative nature of damages in this context). Accordingly, Defendants' breach of their Agreements and unlawful misappropriation of Morgan Stanley's trade secrets has burdened and will continue to burden Morgan Stanley with financial loss which is incapable of measurement, requiring the immediate issuance of an injunction to protect Morgan Stanley from irreparable harm.

Second, in addition to the fact that Morgan Stanley's damages are impossible to determine with any degree of certainty, irreparable harm also lies in the fact that Morgan Stanley clients expect their financial information, market transactions, and investment assets to be known only to themselves, Morgan Stanley, and Morgan Stanley employees. According to In Re: Rosenbaum Grain Corp., 103 F.2d 656 (7th Cir. 1939), Morgan Stanley acts as an agent and fiduciary to its customers. If Defendants are permitted to

21

continue their conduct, each client's sensitive financial information will lose its confidentiality. In Merrill Lynch v. Hess, No. 88-0160 (U.S.D.C., M.D. PA., Feb. 19, 1988), the court granted similar, though more restrictive, injunctive relief as requested by Morgan Stanley here in order to prevent a breach of the confidentiality of Merrill Lynch's customer records:

> Not only might Hess's actions affect employees of Merrill Lynch, but also, <u>and more importantly, Merrill Lynch clients are affected by the loss of confidentiality of his records. Thus, clients lost trust and confidence in Merrill Lynch, which trust and confidence is one of the trademarks of Merrill Lynch. In our view, this type of damage is incalculable</u>.

Here, the general public (or a stranger) could not obtain the information which Defendants misappropriated from Morgan Stanley at the time of their departure. While a Springfield, Illinois telephone book is certainly available, a list of the specific people who maintain accounts and engage in securities transactions at Morgan Stanley cannot be secured except through the use of Morgan Stanley documents, information and trade secrets. Moreover, the information within Defendants' possession may include the income, net worth, trading histories, financial acumen, and risk tolerance of innumerable Morgan Stanley clients.

Importantly, Morgan Stanley assisted Defendants to develop their client contacts, fostered the relationships, helped Defendants maintain close relationships with their Morgan Stanley customers, and even reassigned client relationships to Defendants. The personal contact entrusted to Defendants, and their breach of that trust, is exactly what the court should protect. As a result, a temporary restraining order is necessary to protect Morgan Stanley's customer interests. Morgan Stanley seeks only to enjoin De-

22

fendants from soliciting Morgan Stanley customers, a condition to which they specifically agreed. See e.g., Merrill Lynch v. Bradley, 756 F.2d 1048, 1052 (4th Cir. 1985); Merrill Lynch v. Grall, 836 F. Supp. at 434.[5]

In sum, Morgan Stanley faces significant irreparable harm on numerous levels, all of which necessitate the issuance of immediate injunctive relief.

## C. The Benefits Of Granting Injunctive Relief Outweigh Denial And Injunctive Relief Serves the Public Interest.

The benefits of injunctive relief to Morgan Stanley far outweigh any detriment to Defendants. On the one hand, an injunction would protect Morgan Stanley's goodwill, business reputation, trade secrets, methods of business operation, and contract rights. Most importantly, however, an injunction would protect Morgan Stanley's highly sought after client lists and the confidentiality of Morgan Stanley's clients' records.

By contrast, Defendants have deliberately breached their contractual/legal commitments and have misappropriated Morgan Stanley's trade secrets. In fact, in Merrill Lynch v. Cooper, No. 91-163L (U.S.D.C., D.R.I. 1991), the United States District Court for the District of Rhode Island described a similar theft of Merrill Lynch's trade secrets and breaches of Merrill Lynch's contractual rights by a former Merrill Lynch employee as "egregious" and "piracy." Just as in Cooper, Defendants' deliberate breach of their Morgan Stanley agreements is "egregious" and nothing short of "piracy."

---

[5] See also Teradyne Inc. v. Mostek Corp., 797 F.2d 43 (1st Cir. 1986); Blumenthal v. Merrill Lynch, 910 F.2d 1049, 1053 (2nd Cir. 1990); Roso-Lino Beverage Distrib. v. Coca-Cola Bottling Co., 749 F.2d 124 (2nd Cir. 1984); Connecticut Resources Recovery Auth. v. Occidental Pet. Corp., 705 F.2d 31, 35 (2nd Cir. 1983); Ortho Pharm Corp. v. Amgen, Inc., 887 F.2d 460 (3rd Cir. 1989); Merrill Lynch v. Bradley, 756 F.2d 1048, 1050 (4th Cir. 1985); RGI, Inc. v. Tucker & Assoc., 858 F.2d 227 (5th Cir. 1988); Performance Unlimited v. Questar Pub, 52 F.3d 1373 (6th Cir. 1995); Merrill Lynch v. Salvano, 999 F.2d 211 (7th Cir. 1993); Sauer-Getriebe KG v. White Hydraulics, 715 F.2d 348 (7th Cir. 1983); cert. denied, 364 U.S. 1070 (1984); Peabody Coalsales v. Tampa Electric, 36 F.3d 46, 48 (8th Cir. 1994); PMS Distrib. Co. v. Huber, 863 F.2d 639 (9th Cir. 1988); Merrill Lynch v. Dutton, 844 F.2d 726 (10th Cir. 1988); Merrill Lynch v. Hagerty, 808 F.Supp. 1555 (S.D. Fla. 1992) aff'd., 2 F.3d 405 (11th Cir. 1993).

LAW OFFICES  HERTZ, SCHRAM & SARETSKY, P.C.

## II.    THE ARBITRATION RULES REQUIRE MORGAN STANLEY TO SEEK A TRO BEFORE A COURT OF COMPETENT JURISDICTION.

Even when a dispute is ultimately resolved in arbitration before the National Association of Securities Dealers, Morgan Stanley is entitled to injunctive relief pending the outcome in arbitration.  This is an express holding not only of the Seventh Circuit Court of Appeals in Sauer-Getriebe KG v. White Hydraulics, 715 F.2d 348 (7th Cir. 1983), but also of the First, Second, Third, Fourth, Fifth, Sixth, Ninth, Tenth and Eleventh Circuit Courts of Appeal.

**As part of their Agreements, Defendants expressly agreed to the issuance of injunctive relief in court to prohibit future breaches.**  Injunctive relief should be granted, and the parties should resolve the merits of his dispute in arbitration.

Defendants, by virtue of their membership in and registration with the NASD and Morgan Stanley, are obligated to arbitrate any disputes arising out of their employment or termination of employment with Morgan Stanley in accordance with the NASD Code of Arbitration Procedure.  However, Morgan Stanley needs immediate protection from the Court, which is specifically authorized under section 10335 of the NASD Code to issue such relief.  In particular, section 10335 provides that a party must seek injunctive relief in court pending a hearing on the merits before a panel of NASD arbitrators as follows:

> [P]arties may seek a temporary injunctive order, as defined in paragraph (a)(2) of this Rule, from a court of competent jurisdiction...

Pursuant to section 10335 of the NASD Code, Morgan Stanley is filing its claim for injunctive relief with the NASD and has simultaneously applied to this Court for temporary

24

injunctive relief pending further proceedings in arbitration.

The facts in Greenbaum, Spillane and Semersky are strikingly similar. In each case, former employees left the employ of plaintiffs in those cases, copied confidential customer records, including customers' names and addresses, immediately took inducements and commenced employment with competitors, and used confiscated customer information to solicit accounts for his new employers. In Bradley, the Fourth Circuit expressly held as follows:

> The arbitration process would be a hollow formality where the arbitral award when rendered could not return the parties to the status quo ante.... When an account executive breaches his employment contract by soliciting his former employer's customers, a non-solicitation clause requires immediate application to have any effect. An injunction even a few days after solicitation has begun is unsatisfactory, because the damage is done. The customers cannot be "unsolicited." It may be impossible for the arbitration award to return the parties to the status quo ante because the prevailing parties' damages may be too speculative.

756 F.2d at 1053-1054. (Emphasis added.) The foregoing cases represent controlling judicial precedent and explicit contractual authority in support of the fact that Morgan Stanley is entitled to injunctive restraints pending arbitration to prevent arbitration from being rendered a "hollow formality" and to preserve the "meaningfulness of the arbitration." Id.

## CONCLUSION

For the reasons stated above, Morgan Stanley has shown a likelihood of success on the merits, that it will suffer irreparable harm, that it is without an adequate remedy at law, that the equities lie in its favor and that public interest is served by an injunction. Accordingly, Morgan Stanley respectfully requests temporary injunctive relief pending

25

the outcome of arbitration held in accordance with section 10335 of the National Asso-

ciation of Securities Dealers Code of Arbitration Procedure.

Respectfully submitted,

Hertz, Schram & Saretsky, P.C.
Attorneys for Plaintiff

By: _____
Gary M. Saretsky
Miles D. Hart
Eric A. Michaels
1760 S. Telegraph Rd., Ste. 300
Bloomfield Hills, MI 48302-0183
(248) 335-5000

Dated: December 4, 2004

S:\Staff\Martin, Denise\MILES\MORGAN STANLEY\Patten\TRO MemoSpprt.doc