**E-FILED**
Monday, 06 December, 2004 01:48:01 PM
Clerk, U.S. District Court, ILCD

## AFFIDAVIT OF LARRY HARDY

STATE OF ILLINOIS        )
                         ) ss:
COUNTY OF SANGAMON )

LARRY HARDY, being duly sworn, deposes and states:

1.     I am a financial consultant in Morgan Stanley DW Inc.'s ("Morgan Stanley") Springfield, Illinois branch office. I have been an employee of Morgan Stanley since 1994.

2.     In March 2004, I learned that Christopher H. Noonan ("C. Noonan") had received a call from Citigroup Global Markets, Inc. f/k/a Salomon Smith Barney, Inc. ("Citigroup"). Two months later, in May 2004, C. Noonan indicated that he would be meeting with Citigroup in the near future to discuss a potential move to Citigroup.

3.     On Tuesday, November 2, 2004, at approximately 2:50 p.m. I saw several Morgan Stanley employees removing boxes and other materials from the Morgan Stanley Springfield, Illinois office.

4.     Among these individuals was Timothy R. Huseman ("Huseman"). I also saw Huseman's wife, Gretta Huseman ("Gretta"), pull up to the office in a SUV and carry large, empty Rubbermaid containers into the office. Once in the office, Gretta and Huseman began putting papers and other office materials into the containers. Gretta and Huseman then took the containers out to their car.

5.     I also witnessed Thomas A. Noonan ("T. Noonan") frantically filling containers with papers and files from his office. T. Noonan then took these containers out to his car.

6.    Mary Ann Schroeder ("Schroeder"), a Morgan Stanley sales assistant working with Huseman and C. Noonan, had a briefcase on her lap and was putting papers and materials into it as well.

7.    I have learned that Huseman, C. Noonan, Thomas Noonan ("T. Noonan"), Steve Patton ("Patton"), Schroeder and Tara House ("House") resigned from Morgan Stanley on December 1, 2004 to join Citigroup Global Markets, f/k/a Salomon Smith Barney ("Citigroup").

8.    I was assigned some of the accounts formerly serviced by the financial consultants that resigned, and I have been contacting the clients to introduce myself.

9.    Some clients have told me that they knew long before December 1, 2004, the above referenced brokers were resigning.

10.    Other clients told me that they (the clients) had signed paperwork authorizing the transfer of their accounts to Citigroup prior to the brokers' resignations. More specifically, a client called me to obtain the cost basis for two stocks she had previously purchased. She needed the cost basis because of a class action lawsuit that was pending. I offered to complete the paperwork for her, but she told me that Tom Noonan was already in possession of the papers. I then specifically asked her if she was moving her account to Smith Barney and she told me that she had signed the papers "some time ago".

11.    Additionally, there has been a parade of clients coming to our Morgan Stanley branch to meet with the Noonans and/or Patton over the past month. Such activity is very unusual, which lead me to believe that they were having client meetings in order to prepare for the transfer of accounts to Citigroup.

2

12.    I have also been told that clients received letters from T. Noonan, C. Noonan and/or Patton informing clients of their departure from Morgan Stanley and new employment at SmithBarney as early as December 2, 2004, only one day after resigning from Morgan Stanley.

13.    I have also been told by clients that they have been contacted by T. Noonan, C. Noonan, Patrick Noonan ("P. Noonan") and/or Patton. More specifically, Chris Noonan contacted one of our joint clients. The client told me, in a conversation this week, that C. Noonan contacted the client, told him Morgan Stanley's office was going to have to close, that all of the people at the Morgan Stanley Springfield, Illinois branch office are incompetent, and that the account must be moved to Citigroup. This client was developed while we were all employed by Morgan Stanley.

14.    For the past month, it has been very obvious that C. Noonan, T. Noonan, Patton and Huseman have been "cleaning out" their offices. Huseman was the most obvious, as he would periodically leave the office with his brief case over-stuffed with documents and information. All of their offices have been getting more and more "empty" as time has passed over the preceding month. It does not appear that any of the boxes of documents that were taken by these individuals in early November 2004 were returned to the Morgan Stanley office.

15.    The above conversations with clients occurred between December 1, 2004 and December 3, 2004.

16.    The above statements are true and accurate and made under the penalty of perjury.

Further, Affiant sayeth not.

3

LARRY HARDY

Sworn to before me this
_3_ day of December 2004

Notary Public

OFFICIAL SEAL
GARY C. HUFFMAN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 7-12-2005

S:\Staff\Martin, Denise\MILES\MORGAN STANLEY\Lowery\Larry.Hardy.affidavit.doc

4

**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

**FILED**

APR 2 2 2003

JOHN M. WATERS, Clerk
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

No. 03-2072

| | |
|---|---|
| CITIGROUP GLOBAL MARKETS, INC., | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|     v. | ) |
| | ) |
| CHARLES L. HENDERSON, III, & | ) |
| MICHAEL S. BARCLAY, | ) |
| | ) |
|     Defendants. | ) |

## ORDER

Before this court for consideration is Plaintiff's Verified Complaint (#1) and Motion for

Temporary Restraining Order and Preliminary Injunction (#3), along with the attached

Memorandum in Support. In addition, Defendants each filed a Memorandum in Opposition (#4

and #5), and they submitted a Joint Appendix (#6). After careful consideration of the documents

filed by the parties as well as the arguments made by counsel at the motions hearing, this court

finds as follows, pursuant to Rule 65 of the Federal Rules of Civil Procedure:

1.    While employed by Plaintiff, Defendants executed contracts containing

    confidentiality and non-solicitation provisions concerning client information, but

    have nonetheless been soliciting clients since leaving Plaintiff's firm;

2.    It is more likely than not that Plaintiff will prevail on the merits of this action;

3.    Plaintiff will suffer irreparable harm in the event that a temporary restraining

    order is not issued, and monetary damages may not be sufficient to entirely

    compensate Plaintiff;



4.     Greater injury will be inflicted upon Plaintiff by the denial of a temporary

restraining order than would be inflicted upon Defendants by the granting of such

relief; and

5.     Injunctive relief serves the public interest in the sanctity of contractual

agreements.

IT IS THEREFORE ORDERED:

(1)     A temporary restraining order is effective immediately.  Plaintiff shall post bond

in the amount of $50,000 no later than April 28, 2003;

(2)     Defendants, Charles L. Henderson, Michael S. Barclay, and/or their current

employer, or anyone working with or for Defendants or their current employer, are

temporarily enjoined and restrained, directly or indirectly, and whether alone or in

concert with others, from:

(a)     soliciting any business from any of the clients of Plaintiff whom any

Defendant serviced or whose name became known to that Defendant while

in the employ of Plaintiff (excluding Defendants' respective immediate

families);

(b)     using, disclosing, or transmitting for any purpose, including the initiation

of any contact with or the solicitation of Plaintiff's clients, the information

contained in the records of Plaintiff, including, but not limited to, the

names, addresses, and financial information of said clients; and

(c)     destroying any of the records or information that Defendants removed

from Plaintiff;

-2-



(3)     Each Defendant is further ordered to deliver any and all original Plaintiff records and software, copies or other reproductions thereof, and any other documents containing information derived from those records, in whatever form, including electronic or computerized versions, to Plaintiff's Bourbonnais, Illinois office within twenty-four (24) hours of notice to Defendants or their counsel of the terms of this order;

(4)     The parties are directed to proceed with arbitration of this claim in accordance with Rule 10335 of the NASD Code of Arbitration Procedure;

(5)     This order shall remain in full force and effect until further notice of this court or order of a NASD panel of arbitrators;

(6)     This order is entered without prejudice to the claims and defenses that have been filed relating to the merits of the underlying case; and

(7)     The parties, by their counsel, shall appear before this court on May 2, 2003, at 2:30 p.m., to show cause why this order should not be converted to a preliminary injunction.

ENTERED this ___22nd___ day of ___April_____, 2003. *At 9⁰⁰ A.M.*

*Michael P. McCuskey*
MICHAEL P. McCUSKEY
U.S. DISTRICT JUDGE

-3-

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DEAN WITTER REYNOLDS, INC.,           )
a Delaware corporation,                )
                                       )
Plaintiff,                             )
                                       )        Case No. 00 C 4075
vi.                                    )
                                       )
MARK W. GREENBAUM,                     )
                                       )
Defendant.                             )
                                       )

## TEMPORARY RESTRAINING ORDER

This matter having come before the Court, upon consideration of the verified complaint for injunctive relief, plaintiff's motion for a temporary restraining order and brief, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court grants the Motion for Temporary Restraining Order.

1.      Plaintiff, Dean Witter Reynolds, Inc. ("Dean Witter"), will suffer irreparable harm and loss if defendant is permitted to (a) convert the property of Dean Witter to defendant's own personal use and benefit, and that of defendant'' new employer, and (b) solicit Dean Witter accounts, clients and customers;

2.      Plaintiff has no adequate remedy at law;

3.      Greater injury will be inflicted upon plaintiff by the denial of temporary injunctive relief than would be inflicted upon defendant by the granting of such relief;

4.      The public interest favors the granting of temporary injunctive relief, and temporary injunctive relief will preserve the status quo;

5.   Notice to defendant is likely to result in plaintiff suffering further injury; and

6.   Immediate and irreparable injury will result to the plaintiff before the defendant can be heard in opposition to this motion for temporary relief.

It is ordered that defendant temporarily be enjoined and restrained directly or indirectly, and whether alone or in concern with others, until arbitration hearing and thereafter, from:

A.   using, disclosing, or transmitting any or all property of Dean Witter including, but not limited to, proprietary software, customer records, holding pages, account statements or other information obtained during his employment with Dean Witter whether in the form of hard copy or in the form of information stored on a computer hard drive or disk, including the names, addresses, and financial information of any Dean Witter customers;

B.   ~~contacting,~~ soliciting, ~~or transacting business with or other~~wise ~~communicating in any manner or by any medium wi~~th any customer of Dean Witter; and

C.   accepting any business from any customers defendant serviced while employed at Dean Witter or whose name(s) became known to defendant while defendant was employed at Dean Witter.

It is further ordered that the defendant respond on or before Friday, January 3̶6̶, 2001, to the expedited discovery requests submitted by Dean Witter and that defendant submit to deposition on ~~January 29, 2001.~~ *on before Feb. 2, 2001.*

*D. Defendant is to return all property of Dean Witter as described in ¶ A and*

post a bond in the amount of $10,000

It is ordered that plaintiff ~~need not post security inasmuch as defendant will not~~ by the close of business on Jan. 26, 2001. ~~be damaged by the temporary enforcement of his Employment Agreement and~~

preservation of the status quo.

Date: 1/24/01
3:20 p.m.

United States District Court
Northern District of Illinois

3

L80507-1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DEAN WITTER REYNOLDS, INC.,                    )
a Delaware corporation,                        )
                                               )
    Plaintiff,                                 )
                                               )    Case No. 00 C 7595
    v.                                         )
                                               )
JOHN S. SPILLANE,                              )
                                               )
    Defendant.                                 )
                                               )

## TEMPORARY RESTRAINING ORDER

This matter having come before the Court, upon consideration of the verified complaint for injunctive relief, plaintiff's motion for a temporary restraining order and brief, plaintiff's motion for expedited discovery and defendant's cross-motion to stay this matter pending arbitration, and all parties being present through counsel and argument having been made and heard, the Court, pursuant to Rule 65 of the Federal Rules of Civil Procedure, grants the Motion for Temporary Restraining Order.

1.  Plaintiff, Dean Witter Reynolds, Inc. ("Dean Witter"), will suffer irreparable harm and loss if defendant is permitted to (a) convert the property of Dean Witter to defendant's own personal use and benefit, or that of defendant's new employer, and (b) solicit Dean Witter accounts, clients and customers;

2.  Plaintiff has no adequate remedy at law;

3.  Greater injury will be inflicted upon plaintiff by the denial of temporary injunctive relief than would be inflicted upon defendant by the granting of such relief;

L78747-2

4.    The public's interest was considered in granting this temporary restraining order.

It is ordered that defendant temporarily be enjoined and restrained directly or indirectly, and whether alone or in concert with others, from:

A.    using, disclosing, or transmitting any or all property of Dean Witter including, but not limited to, proprietary software, customer records, holding pages, account statements or other information obtained during his employment with Dean Witter whether in the form of hard copy or in the form of information stored on a computer hard drive or disk, including the names, addresses, and financial information of any Dean Witter customers; and

B.    soliciting any Dean Witter customer whose account defendant serviced while employed at Dean Witter; and

C.    accepting any business from any customers whom 1) defendant solicited to transfer their business to Prudential Securities; and 2) had been serviced by defendant while employed at Dean Witter; and

D.    transacting or servicing any business for any customers whom

1) defendant solicited to transfer their business to Prudential Securities; and 2) had been serviced by defendant while employed at Dean Witter.

This order does not require Dean Witter to post security.

It is further ordered that plaintiff's motion for expedited discovery is granted in part. Pursuant thereto, defendant is to respond on or before Tuesday, December 12, 2000, to the expedited written discovery requests submitted by Dean Witter. Plaintiff's motion to depose defendant on an expedited basis is denied.

2

Defendant is also permitted to serve expedited and limited discovery requests upon plaintiff with respect to any information that is critical to the preliminary injunction action. Responses to any such discovery requests will be due seven days after the requests are served.

Plaintiff's request for fees associated with the costs of bringing its motion for a temporary restraining order is denied.

Subject to this Order's prohibitions on defendant soliciting, servicing or transacting business, Prudential Securities, Inc., but not defendant, may accept and service account transfers from any customers who were serviced by defendant during his employment at Dean Witter.

During the term of this temporary restraining order, or any valid extension thereof, defendant may communicate with but not solicit, directly or indirectly, any Dean Witter customer whose account Spillane serviced while employed at Dean Witter. Any such communication, however, regarding the defendant's departure from Dean Witter shall be subject to the following limitations:

1) if written, shall be maintained by defendant and made available to the plaintiff prior to the sending of the communication; and

2) if oral and recorded, a written transcription of such recording shall be produced by defendant and made available to the plaintiff; but if the communication is oral and not recorded, defendant shall prepare a written script for use in such communications and shall provide plaintiff with a copy of the written script prior to any such oral communications.

Plaintiff is permitted to contact current or former Dean Witter clients and advise them that defendant is subject to this temporary restraining order.

3

Further, plaintiff is permitted to contact individuals who have on or after November 22, 2000, transferred their accounts from Dean Witter's Oakbrook Office to Prudential Securities Oakbrook Terrace Office to ascertain whether such transfer was the result of defendant's solicitation.

Defendant's motion to stay this matter pending arbitration is denied.

This temporary restraining order shall remain in effect, unless extended by order of Court, through December 15, 2000.

This matter is continued for status until December 14, 2000 at 1:00 p.m.

Date:  12/6/00

Honorable Judge Hibbler
United States District Court
Northern District of Illinois

4

L78747-2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

DEAN WITTER REYNOLDS, INC., )
a Delaware corporation, )
                                        )
Plaintiff,                       )       Case No. **99 C 6302**
                                        )
v.                                   )
                                        )
DAVID SEMERSKY,               )
                                        )
Defendant.                    )
                                        )

## **TEMPORARY RESTRAINING ORDER**

This matter having come before the Court, upon consideration of the Verified
Complaint for injunctive relief, plaintiff's motion for a temporary restraining order and
brief, and pursuant to Rule 65 of the Federal Rules of Civil Procedure, the Court
grants the Motion for Temporary Restraining Order.

1.     Plaintiff, Dean Witter Reynolds, Inc. ("Dean Witter"), has shown at this
          stage a substantial likelihood of success on the merits;

2.     Plaintiff has no adequate remedy at law and irreparable injury may follow
          if the Defendant David Semersky is not enjoined;

3.     The public interest favors the granting of temporary injunctive relief, and
          temporary injunctive relief will preserve the status quo;

It is ordered that defendant David Semersky be enjoined and restrained directly
or indirectly, and whether alone or in concern with others, until arbitration hearing
and thereafter, from:

A.     Contacting or soliciting, in any manner whatsoever or by any medium
          any current customers or clients of Dean Witter as of September 24,

1999. Dean Witter may be entitled to expand the order should further inquiry suggest the appropriateness of including in its scope former customers of Dean Witter;

B.    Using, disclosing, or transmitting any or all property of Dean Witter including, but not limited to, proprietary software, customer records, holding pages, account statements or other client identifying information whether in the form of hard copy or in the form of information stored on a computer hard drive or disk, including the names, addresses, and financial information of any Dean Witter customers; and

C.    It is further ordered that the defendant shall provide to Dean Witter on or before September 29, 1999 responses to certain expedited discovery including requests to produce documents and interrogatories.

Date: September 24, 1999

United States District Court
Northern District of Illinois

LS7571-1

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER & )
SMITH INC., )
)
)
Plaintiff, )
)
v. ) NO: 00 C 2351
)
ROBERT E. CURRY and ) Judge Rebecca R. Pallmeyer
KENNETH J. ROGERS ) Magistrate Judge Arlander Keys
)
Defendants. )

## ORDER

This cause coming to be heard on Emergency Motion of Plaintiff for temporary

restraining order pursuant to notice, and the Court being advised upon Memoranda of Law and

argument from counsel for both parties.

IT IS HEREBY ORDERED THAT:

1. Defendants are enjoined and restrained, directly or indirectly, and whether alone

or in concert with others, including any officer, agent, representative, and/or employee of

Defendants' new employer, Morgan Stanley Dean Witter ("Morgan Stanley"), until further Order

of this Court, from:

(a) initiating any further contact, except for customers who have signed an account

transfer form as of the date and time of this Order, whether through

announcements, telephone calls or other means, with any client of Merrill Lynch

whom Defendants served or whose name became known to Defendants while in

the employ of Merrill Lynch for the purpose of doing business with Defendants'

present employer, Morgan Stanley (excluding members of Defendants' immediate

family), unless responding to contact which clients initiate; and



...mitting for any purpose, including s[ ]itation of said

...on contained in the records which Defendants removed from

...Lynch, if any, including, but not limited to, the names, addresses, and

...cial information of clients referenced in subparagraph (a).

Defendants, and anyone acting in active concert or participation with Defendants

...to receives actual notice of this Order, including any agent, employee, officer or representative

of Defendants' new employer, Morgan Stanley, are further ordered to return to counsel for

Defendants any and all materials which Defendants removed from Merrill Lynch, if any,

pertaining to Merrill Lynch customers whether in original, copied, computerized, handwritten or

any other form, and purge any such materials and any information taken directly from those

materials, from his possession, custody, or control, within 48 hours of service upon Defendants

of this Order. Counsel for Defendants shall immediately provide a copy or an inventory of such

materials to counsel for plaintiff, on or before Friday April 21, 2000.

3.    This Order shall remain in full force and effect until such time as this Court or the

arbitrator(s) specifically order otherwise.

4.    The parties are directed to proceed with an arbitration hearing to be held in 3 to 5

days.

5.    This order is without prejudice to the parties' positions on the merits.

6.    This matter is set for status on May 5, 2000 at 9:00 a.m. without further notice to

the parties.

April 19, 2000                    ENTERED:
· 10:28 a.m.

Rebuca [signature]

The Honorable Judge Rebecca R. Pallmeyer

-2-

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

MERRILL, LYNCH, PIERCE, FENNER & )
SMITH INC., )
                                    )
      Plaintiff,                 )
                                      )   98 C 8185
     v.                         )
                                      )
WILLIAM A. MANISCALCO         )
                                      )
      Defendant.               )

DOCKETED

JAN 0 4 1999

## ORDER

      This matter comes before the court on motion of plaintiff Merrill Lynch for a temporary restraining order to enjoin defendant William A. Maniscalco, a former employee of Merrill Lynch, from soliciting any business from Merrill Lynch's clients known to or served by the defendant while he was a Merrill Lynch employee, from utilizing in any way information contained in Merrill Lynch's records, and to return any information in any way related to Merrill Lynch customers which he allegedly confiscated when he left Merrill Lynch''s employ. For the reasons set forth below, the relief sought is denied.

      As a threshold matter, the parties have both alluded to the requirement of mandatory arbitration, a matter about which there is no dispute. Amended in 1996, Rule 10335 of the National Association of Securities Dealers Code of Arbitration Procedure (NASD Code) now provides that an aggrieved individual or entity may seek preliminary relief before one of two forums - the courts or the arbitrator.[1]

      Defendant Maniscalco asserts strenuously that Merrill Lynch's application for the TRO should be denied in light of the provision in Rule 10335 that provides for injunctive relief immediately. Conversely, Merrill Lynch, while acknowledging such a provision, contends, equally strenuously, that it is indeed the movant's option to seek such relief from either of the two forums.

      The facts which follow are derived from the verified complaint and the affidavits submitted by both parties. William A. Maniscalco, a former broker employed by Merrill Lynch, resigned on December 18, 1998, without notice to Merrill lynch, and commenced employment with Mesirow Financial, a competitor of Merrill Lynch. Merrill Lynch provided an affidavit in

---

      [1]The defendant reports that he has filed with the NASD a statement of claim and request for immediate relief, and the Rule provides for an immediate hearing within one to three days.

support of its application for a TRO from Richard Shalla, Jr., Resident Vice President of one of Merrill Lynch's offices. He attests to certain agreements and documents signed by defendant relating to defendant's employment with Merrill Lynch, including a non-competition agreement. He further attests to the substantial investment in defendant by way of training and defendant's subsequent access to more than 560 Merrill Lynch accounts. Affiant Shalla references his beliefs that defendant has, since leaving plaintiff's employ, solicited many of Merrill Lynch's clients he serviced while at Merrill Lynch to transfer their accounts. Shalla mentions that defendant engaged in this activity for significant financial inducements paid to defendant by Mesirow Financial. Affiant Shalla does not, however, in his affidavit divulge the source of or basis for the aforementioned information. Shalla also opines that defendant has confiscated personal files, proprietary information and/or information to aid in diverting clients from Merrill Lynch (also without stating the basis for such an opinion).

Defendant, on the other hand, in his affidavit, while not disputing that he has solicited clients, does deny that he removed any original documents containing customer information from Merrill Lynch or that he removed personal client files. He also asserts, among other things, that he developed his own customers with little assistance from Merrill Lynch, he obtained clients from sources such as family members, school friends, civic groups of which he is a member, "cold calling", seminars and referrals from friends and family.[2]

The movant for a temporary restraining order must show 1) a substantial likelihood of success on the merits; 2) a threat of irreparable harm to it if the injunction is not issued; 3) the threatened injury outweighs any damage the order might cause to the defendant; 4) the injunction will disserve the public interest, and 5) a need for immediate relief to prevent irreparable injury, loss or damage that will likely occur if relief is not granted.

In light of the availability of immediate access to an NASD arbitrator, notwithstanding that this court interprets the rule to allow for either of the two forums, it seems appropriate under the circumstances of this case and in the exercise of this court's discretion, to defer to the arbitrator, one who no doubt has special expertise in the industry.

In light of the employment agreement and the fact that defendant does not dispute factually one of the allegations, i.e. solicitation of Merrill Lynch clients, Merrill Lynch has met the rather easy to meet element of likelihood of success on the merits.

With respect to the weighing of the harm to the respective partes, it is somewhat difficult to conclude that any harm might occur to Merrill Lynch which, if it ultimately prevails, could not

---

[2]The court notes that the affidavit of defendant Maniscalco has not been signed. Counsel for Maniscalco represented at oral argument that the signed copy is forthcoming. Notwithstanding the lack of a signature, counsel for Merrill Lynch has not challenged the affidavit on that basis.

2

be rectified by virtue of money damages. Conversely, this court does envision much more harm to defendant Maniscalco should a TRO issue.

Wherefore, for the foregoing reasons, Merrill Lynch's motion for a temporary restraining order is denied.

ENTER: *Blanche M. Manning*

**BLANCHE M. MANNING**
**U.S. DISTRICT COURT JUDGE**

DATE: DEC 22 1998

3

1

```
  1              IN THE UNITED STATES DISTRICT COURT
               FOR THE NORTHERN DISTRICT OF ILLINOIS
  2                        EASTERN DIVISION

  3

     PRUDENTIAL SECURITIES, INC.,    )
  4                                  )
                    Plaintiff,       )
  5                                  )
          -vs-                       )  No. 98 C 1467
  6                                  )
     BHAGESREE RAMACHANDRAIYER,      )  Chicago, Illinois
  7                                  )  March 11, 1998
                    Defendant.       )  3:00 p.m.
  8

  9              REPORT OF PROCEEDINGS - Motion
          BEFORE MAGISTRATE JUDGE MORTON DENLOW
 10
```

DOCKETED
MAR 26 1998

```
 11  For the Plaintiff:          MR. STEVEN M. MALINA,
                                 Deputy Regional Counsel
 12                              Prudential Securities
                                 One North Franklin Street
 13                              Suite 550
                                 Chicago, Illinois  60606
 14
                                 MR. BRENT BURNS
 15                              (Coffield, Ungaretti & Harris)
                                 3500 Three First National Plaza
 16                              Chicago, Illinois  60602

 17  For the Defendant:          MR. L. ANDREW BREHM
                                 MR. JOHN ROCHE
 18                              (Schuyler, Roche & Zwerner)
                                 One Prudential Plaza
 19                              130 East Randolph Street
                                 Suite 3800
 20                              Chicago, Illinois 60601

 21

 22  Court Reporter:
                     GERALDINE D. MONAHAN, CSR, RPR
 23                     Official Court Reporter
                      United States District Court
 24            219 South Dearborn Street, Room 1928
                      Chicago, Illinois 60604
 25                  Telephone (312) 435-6890
```

Geraldine D. Monahan, Official Court Reporter

27

1    by her, but she has to make some provision to see to it that at

2    least until business on Monday, nobody else is using it.

3          Is take acceptable?

4          MR. BREHM:  That makes sense.

5          THE COURT:  And will you provide a copy to Mr. Malina

6    by the close of business on Friday?

7          MR. BREHM:  We'll use our best efforts to do so.  I

8    don't know how much --

9          THE COURT:  Let him know by the close of business

10   Friday where you stand in the process if for some reason you are

11   not able to provide him with a complete copy so that he at least

12   knows what efforts are being made.

13         MR. MALINA:  Obviously, we will need that for the

14   arbitration hearing.

15         THE COURT:  I assume that.

16         What else?

17         MR. MALINA:  The only other thing I would ask, your

18   Honor, if for some reason, whether the NASD or NYSE, I don't

19   anticipate this being the case, but if for some reason the

20   hearing cannot be scheduled Monday but rather is scheduled on

21   Tuesday, can we come before you again, if we can't reach an

22   agreement, that she continue to abide by this agreement?

23         THE COURT:  I would obviously -- if it's not the fault

24   of anybody and everybody is operating in good faith and nobody

25   is delaying, it just turns out that the arbitrator for some

28

1   reason decides he would rather read something before initiating

2   a hearing, you know, I'll leave it to your good judgment.  But I

3   will be available.  I would encourage you to try to work it out.

4            MR. MALINA:  We'll endeavor to do that, your Honor.

5            THE COURT:  How do we memorialize this?

6            MR. MALINA:  Well, unfortunately I didn't bring an

7   order prepared for this, obviously.  Perhaps Mr. Brehm and I can

8   etch something out.

9            MR. BREHM:  If we could call upon the good offices of

10  the court staff and the reporter, if that's --

11           THE COURT:  As far as I'm concerned, if the agreement

12  that was recited in the transcript is acceptable to both

13  parties, that will stand as the agreement until Monday.  You

14  order an expedited transcript, and you'll both have it

15       (Discussion off the record.)

16           THE COURT:  I can enter a minute order.  The

17  plaintiff's motion for temporary restraining order is entered

18  and continued pursuant to the agreement expressed in open

19  court.  And if you want, I can set you for status Tuesday

20  morning at 10:00.  If you are in your proceeding, just call my

21  minute clerk and say:  We're not proceeding.  Everything is

22  hunky-dory, fine.

23           If some glitch has comes up and somebody needs a TRO

24  or preliminary injunction because either the NASD or NYSE is

25  saying:  No, you can't have a hearing for three weeks, and you

1  don't want to wait three weeks, come see me Tuesday morning.

2          MR. MALINA:  Okay.

3          THE COURT:  So I'll say your motion for temporary

4  restraining order and preliminary injunction is entered and

5  continued until Tuesday at 10:00, pursuant to the agreement

6  expressed in open court.

7          MR. MALINA:  Very good.  Thank you, your Honor.

8          THE COURT:  Thank you.

9          MR. BREHM:  Thank you.

10              C E R T I F I C A T E

11  I certify that the foregoing is a correct transcript from the

12  record of proceedings in the above-entitled case on March 11,

13  1998 at 3:00 p.m.

14

15

16  _____        _____
17  Official Court Reporter                      Date
    United States District Court
    Northern District of Illinois
18  Eastern Division

19

20

21

22

23

24

25

Geraldine D. Monahan, Official Court Reporter

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

PRUDENTIAL SECURITIES INCORPORATED, )
                                                )
                        Plaintiff,   )
                                                )
    v.                                  )       No. _98C4386_
                                                )
JAMES D. McDERMOTT,                )
                                                )
                        Defendant.   )

DOCKETED
JUL 16 1998

**ORDER**

This matter came to be heard on July *14*, 1998 on Plaintiff's Motion for a Temporary
Restraining Order. The Court has considered the Complaint, the Motion for Temporary
Restraining Order, the Memorandum in Support of Plaintiff's Motion, Affidavit In Support of
Plaintiff's Complaint, ~~and other written submissions of the parties~~ and heard the arguments of
counsel.

**THE COURT HEREBY FINDS AS FOLLOWS:**

    1.     This is an action to enforce the Financial Advisor in Training Agreement ("FAIT
Agreement") executed by defendant James D. McDermott ("McDermott") at the commencement
of his employment, and other related claims.

    2.     Prudential Securities has sought a temporary restraining order seeking the
enforcement of McDermott's duties and obligations.

    3.     McDermott received actual oral and written notice of Prudential Securities'
Motion for Temporary Restraining Order.

    4.     It is more likely than not that Prudential Securities will succeed on the merits at
trial.

5.    Prudential Securities will suffer irreparable harm and loss in the event that a temporary restraining order is not granted.

6.    Prudential Securities has no adequate remedy at law.

7.    ⟨ ⟩eater injury will be inflicted upon Prudential Securities by the denial of the temporary restraining order than would be inflicted on the defendant by the granting of such relief.

8.    The public interest will not be harmed by the granting of the temporary restraining order.

**IT IS HEREBY ORDERED THAT:**

*to the offices of Neil, Gerber & Eisenberg*

A.    McDermott and any persons acting on behalf of or in concert with him are ordered to return ~~immediately to Prudential Securities~~ all original and photocopied documents, computer disks and computerized data which were removed from Prudential Securities' office, database or computers, as well as all copies, derivatives and compilations thereof and any computer equipment owned by Prudential Securities, to the offices of ~~Ungaretti & Harris, to the attention of Steven M. Malina at 3500 Three First National Plaza, Chicago,~~ Illinois 60602 by 5:00 p.m. on July *14*, 1998; *subject to other mutual agreement of the parties;*    *Neil Gerber & Eisenberg*

B.    McDermott and any persons acting on behalf of or in concert with McDermott are enjoined from discussing, using, disclosing or transmitting, directly or indirectly, any information contained in the hard copy or computerized records of Prudential Securities *except (i) in connection with processing Account transfers and (ii) such information is provided to Defendant by customers.*

C.    McDermott and any persons acting on behalf of or in concert with McDermott are enjoined from (1) soliciting business from any Prudential Securities customers located within a 100-mile radius of the Orland Park, Illinois office whom defendant served or whose names became known to him while in Prudential Securities' employ, ~~and (2) accepting business from any Prudential Securities customers located within a 100-mile radius of the Orland Park, Illinois office whom defendant served or whose names became known to him while in Prudential Securities' employ whom McDermott previously solicited;~~

D.    This order will expire at 5:00 p.m. on *July 24*, 1998, unless extended by *or as directed by an arbitrator, whichever is earlier* further order of this Court. ~~Defendant shall appear before this Court on _____, 1998 at _____ o'clock ____.m. and show cause why a preliminary injunction should not be entered according to the terms and conditions set forth above. If defendant intends to submit papers in opposition to the entry of a preliminary injunction, he shall file and serve copies of those papers by _____, 1998, and Plaintiff shall file and serve copies of any reply to said opposition by _____, 1998.~~

*Plaintiff shall post a $25,000 bond by the close of business on July 15, 1998.*

This Order is entered to maintain the status quo and is without prejudice to the merits, the claims defenses which have been or may be asserted in this litigation.

Dated: July _14_, 1998            SO ORDERED:

_____
                                 Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH INC.,                        :
                                     :
              Plaintiff,             :
                                     :
       v.                            :        No. 94 C 7402
                                     :        Judge Zagel
ROBERT C. IORII,                     :
                                     :
              Defendant.             :

## ORDER

AND NOW, this 13th day of December, 1994, upon
consideration of the Verified Complaint and Motion of Plaintiff
and having determined that:

1.    The rights of Plaintiff with respect to its
property, proprietary and confidential information, competitive
interests, and contract with Defendant are being and will
continue to be violated by Defendant unless Defendant is
restrained therefrom;

2.    Plaintiff will suffer irreparable harm and loss if
Defendant is permitted to (a) convert the property of Merrill
Lynch to Defendant's own personal use and benefit, and that of
Defendant's new employer, and (b) solicit Merrill Lynch accounts,
clients, and customers;

3.    Plaintiff has no adequate remedy at law; and

4.    Greater injury will be inflicted upon Plaintiff by
the denial of temporary injunctive relief than would be inflicted
upon Defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

1.    A Temporary Restraining-Order issue immediately and that security in the amount of $ <u>40,000</u> be posted no later than the <u>14th</u> day of December, 1994;

2.    Defendant is enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative, and/or employee of Defendant's current employer, Smith Barney, Inc., until hearing and thereafter until further Order of this Court, from:

a)    soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, including, without limitation, all individuals and entities referenced in Exhibit "C" to Plaintiff's Verified Complaint; and, further, from accepting any business or account transfers from any of said customers whom Defendant has solicited at any time in the past for the purpose of doing business with Defendant's present employer (excluding Defendant's immediate family and clients residing more than 100 miles from the Barrington, Illinois office of Merrill Lynch);

b)    using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Merrill Lynch, including, but not limited to, the names, addresses, and

financial information of clients referenced in Exhibit "C"
to Plaintiff's Complaint; and that all original records and
copies and/or other reproductions thereof, in whatever form,
be returned to Plaintiff immediately;

3.    This Order shall remain in full force and effect
until such time as this Court specifically orders otherwise; *January 12, 1995*

4.    Plaintiff is granted leave to commence discovery
immediately in aid of preliminary injunction proceedings before
the Court;

5.    Pending a preliminary injunction hearing before
this Court, and pursuant to the requirements of sections 3 and 4
of the Federal Arbitration Act, 9 U.S.C. §§ 3-4, the parties are
directed to commence and proceed with arbitration in accordance
with the Constitution and Rules of the New York Stock Exchange
without waiver of the parties' right thereunder.

6.    Defendant shall show cause before this Court on
the _10th_ day of ~~December~~ *January*, ~~1994~~ *1995* at _10:00_ o'clock _A_.m., or as
soon thereafter as counsel may be heard, why a Preliminary
Injunction should not be ordered according to the terms and
conditions set forth above.

BY THE COURT:

_____
U.S.D.J.

3

Not Reported in F.Supp.
(Cite as: 1991 WL 83163 (N.D.Ill.))

**MERRILL LYNCH, PIERCE, FENNER & SMITH, INC., Plaintiff,**
v.
**Stuart PATINKIN, Defendant.**

No. 91 C 2324.

United States District Court, N.D. Illinois,
Eastern Division.

May 9, 1991.

MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

*1 This matter is before the court on plaintiff's Motion to extend the Temporary Restraining Order issued April 19, 1991, pending an award and final decision of the arbitration panel of the New York Stock Exchange, defendant's Motion to Vacate the Temporary Restraining Order, and defendant's motion to increase bond set under the temporary restraining order. Plaintiff's motion to extend the Temporary Restraining Order is granted. The Temporary Restraining Order is extended until July 1, 1991. At that time the court will review the status of the arbitration proceedings, and may extend the TRO if there is good cause to do so. Defendant's Motion to Increase Bond Set on the order to $50,000 is granted. Defendant's motion to vacate the temporary restraining order is denied. Any further proceedings in this case are stayed pending an award and final decision of the arbitration panel in accordance with the Constitution and Rules of the New York Stock Exchange.

### Background

Plaintiff's verified complaint alleges that Stuart Patinkin entered Plaintiff's employ on March 15, 1982, pursuant to an Account Executive Trainee Agreement ("the Agreement"). The Agreement provides that Merrill Lynch retains exclusive ownership of its client records and account information, which are to be kept confidential. The Agreement also provides that the defendant will not solicit any of Merrill Lynch's clients

for a period of one year after the termination of his employment from Merrill Lynch. [FN1]

On April 12, 1991, defendant resigned from his job at Merrill Lynch, without notice, to work at Prudential Securities, a securities firm which is competitive with Merrill Lynch. Indeed, plaintiff claims that the day after Patinkin left Merrill Lynch, his former Merrill Lynch customers received letters from Prudential Securities soliciting their business. [FN2]

Plaintiff alleges that Patinkin took account records out of the Merrill Lynch office, and that the defendant used and transmitted information from these records in order to solicit Merrill Lynch's customers. On April 19, 1991, plaintiff filed this action for conversion, breach of fiduciary duty, and unfair competition. On that same day, plaintiff also requested immediate injunctive relief, in the form of a Temporary Restraining Order ("TRO"), prohibiting the defendant from further breaching the terms of the Agreement. In response to plaintiff's motion, the defendant presented a written motion to compel arbitration, and oral argument on both the motion to compel arbitration, and in opposition to the TRO. Defendant Stuart Patinkin was given the opportunity to testify at oral argument, but declined. Hence, the TRO was issued after notice was given to the Defendant, and after the court heard and considered the motions, oral evidence and other submissions by both parties. [FN3]

In issuing the TRO the court found that the Agreement "contain[ed] various restrictions on Defendant's ability to use Plaintiff's records and otherwise compete with Plaintiff upon a change in the Defendant's employment." (TRO, para. 2). Further, the court also found that the plaintiff had no adequate remedy at law for the alleged breach of the Agreement (TRO, para. 5), and that the plaintiff would suffer irreparable harm and loss if a TRO was not granted (TRO. para. 4). Finally, the court found that greater injury would be inflicted upon the plaintiff by the denial of the TRO than would be inflicted upon the defendant by granting the TRO. (TRO, para. 6).

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

Westlaw.

Westlaw.

Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *1 (N.D.Ill.))

*2 The TRO both enjoined and restrained the defendant from soliciting or accepting business from any client of plaintiff's whom defendant served, or whose name became known to the defendant while in plaintiff's employ. [FN4] Defendant was also enjoined and restrained from accepting any business from any clients whom Defendant solicited for purposes of doing business with Prudential Bache. Finally, defendant was enjoined and restrained from using, disclosing or transmitting information contained in plaintiff's records, including the names and addresses and financial information of plaintiff's clients. Patinkin was ordered to deliver any original records or copies to plaintiff, or it's attorney.

The court also granted the defendant's motion to compel arbitration, and ordered the parties to submit to arbitration in this matter, as provided for by the Constitution and Rules of the New York Stock Exchange. [FN5] Finally, the court noted that the TRO was entered to maintain the status quo and without prejudice to the merits of the claims of defenses which had been or may be asserted in this litigation. Under the court's order, the TRO was in effect until April 29, 1991.

On April 23, 1991, the defendant filed a motion for an increase in the amount of bond posted by the plaintiff, which was stayed by the court pending resolution of this motion. The defendant also filed a motion to compel expedited arbitration. On the same day, the court heard oral argument on these issues.

The court denied the motion for expedited arbitration, finding that the contractual provisions of the Agreement did not provide for expedited arbitration. [FN6] Because the terms of the Agreement merely required the parties to arbitrate in accordance with the Constitution and rules of the New York Stock Exchange, the court could not force the plaintiff to submit to expedited arbitration. See e.g., Merrill Lynch v. Cunningham, 736 F.Supp. 887 (N.D.Ill.1990); and Merrill Lynch v. Tobias, 90 C 20210, U.S. District Court, Western Division (July 17, 1990).

On April 29, 1991, the plaintiff brought this motion to extend the TRO pending an award and final decision of the arbitration panel in accordance with the Constitution and Rules of the NYSE. [FN7]    A few minutes before motion call, the defendant submitted several documents and motions to the court, raising numerous arguments against the extension of the TRO.    Defendant submitted a report on the status of the proceedings and accompanying affidavits, objections to plaintiff's motion to extend the TRO, and an answer to the plaintiff's complaint. The court continued the hearing until 5:00 p.m..    The plaintiff, at that time, submitted its response to the defendant's objections.    The court extended the TRO one day, and referred the matter to the emergency judge, as this judge was absent from court on April 30, 1991.  The emergency judge did not hear the merits of the motions, and the parties agreed to extend the TRO for one day.  This court held a hearing on May 1, 1991.

Discussion

*3 This court has already determined that the dispute in this case is arbitrable, and has ordered the parties to submit their dispute to arbitration. Since that time, Patinkin has complied with the TRO by returning all documents to plaintiff's attorney. [FN8] Although Patinkin, Prudential Bache Securities, and Merrill Lynch have initiated arbitration of their disputes before the New York Stock Exchange, the parties apparently have not agreed to find a mutually convenient date to proceed with arbitration proceedings in Chicago.

Now that arbitration proceedings have been initiated and the documents have been returned to the plaintiff, the defendant asserts that any harm or loss that Merrill Lynch has 'allegedly' suffered prior to the entry of the TRO has ceased due to Patinkin's compliance with the TRO.    Defendant reasons that the balance of the equities has now tipped overwhelmingly in favor of Patinkin who will be unable to earn a living while this injunction in force.    Defendant also argues that because the plaintiff refuses to go to



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *3 (N.D.Ill.))

expedited arbitration, equity and fairness require the court to vacate the temporary restraining order.

Under Federal Rule of Civil Procedure 65, unless there is agreement for extension between the parties, the court cannot extend a TRO without good cause. The Rule provides that a TRO:

... shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for extension shall be entered of record....

This court's reading of the rule is that under Federal Rule of Civil Procedure 65, a court cannot extend a TRO without a showing of good cause. Evidence of good cause is especially important when the TRO has been issued without notice to the other side. [FN9] In the instant case, the defendant did of course, have notice and an opportunity to be heard before the TRO was issued. Therefore, the only question presented here is whether there is good cause to extend the TRO.

The court recognizes that the defendant has returned the documents he removed from Merrill Lynch as required under the TRO. Because the documents have been returned, the only possible remaining harm to plaintiff is that the defendant may solicit its clients. The court finds that this possible harm justifies the extension of the TRO. As the Fourth Circuit Court of Appeals noted in Merrill Lynch v. Bradley, 756 F.2d 1048 (4th Cir.1985), a case that was factually similar to this one, the continuing possibility that the defendant will solicit plaintiff's clients justifies the TRO's extension. Without injunctive relief the defendant's conduct might irreversibly damage the status quo:

When an account executive breaches his employment contract by soliciting his former employer's customers, a non-solicitation clause requires immediate application to have any

effect. An injunction even a few days after solicitation has begun is unsatisfactory because the damage is done. The parties cannot be 'unsolicited.' It may be impossible for the arbitral award to return the parties substantially to the status quo ante because the prevailing parties' damages may be too speculative.

*4 Id. at 1054.

The Bradley court therefore concluded that:

[W]here a dispute is subject to mandatory arbitration under the Federal Arbitration Act, a district court has the discretion to grant a preliminary injunction to preserve the status quo pending arbitration of the parties' dispute if the enjoined conduct would render that process a 'hallow formality.' The arbitration process would be a hallow formality where 'the arbitral award when rendered could not return the parties substantially to the status quo ante.' ... [this] decision will further, not frustrate, the policies underlying the Federal Arbitration Act.

Id. at 1053-1054.

Two other courts in this circuit have considered the issue of extending a temporary restraining order, in cases which were factually similar to this one. In Merrill Lynch v. Cunningham, 736 F.Supp. 887 (N.D.Ill.1990) and Merrill Lynch v. Tobias, 90 C 20210, U.S. District Court, Western Division (July 17, 1990), both courts found that the extension of the TRO was justified because of plaintiff's likely, and threatened loss of clients, and the irreparable harm that plaintiff would suffer if the TRO was not extended. See also, Merrill Lynch v. Mathes, No. CY-90-3060-AAM, U.S. District Court, Eastern District of Washington (August 2, 1990) (Injunctive relief extended pending arbitration of parties dispute).

The defendant has attacked the extension of the TRO on a number of grounds. First, the defendant argues that the Agreement is not valid. At the hearing on the motion to extend the TRO, the defendant testified that he was

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works



Westlaw.

Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *4 (N.D.Ill.))

Page  4

told by his supervisor that he was bound to the terms of the Agreement for only a two year period. Since the Agreement was signed in 1982, Patinkin argues that he is no longer bound to the its terms. The court finds that this argument is not credible, and is not supported by the clear terms of the parties' Agreement, which the defendant admitted he read, and understood before signing. [FN10] No language in the Agreement suggests that it is enforceable for only a limited period of time. The court rejects this position.

Defendant also argues that the TRO should be vacated because the Agreement, which defendant alleges is a restrictive covenant, is unenforceable. Defendant testified that some seventy to eighty percent of the clients he served at Merrill Lynch were long time friends, neighbors, and relatives, which he solicited without any real input from Merrill Lynch. Defendant asserts that under Illinois law, since he developed his client base, and provided the information about his clients to Merrill Lynch, the information is not confidential. Defendant reasons that since the information is not confidential, Merrill Lynch does not have a legitimate protectable interest in enforcing the restrictive covenant.

As the court told the parties several times at oral argument, these arguments have little bearing on the court's ruling on the motion for the extension of the TRO. In general, this court will not consider the merits of this case or the overall validity of the Agreement, as that is better left to the arbitration board. [FN11]

*5 Even if relevant to this motion, the court finds that the defendant's argument concerning his client base and the restrictive covenant has no weight. [FN12] Defendant's argument regarding the unenforceability of the Agreement as a restrictive covenant is based on Illinois law. Paragraph 4 of the Agreement explains, that the "Agreement shall be construed, and the validity, performance and enforcement thereof shall be governed by the laws of New York." Therefore, Illinois law does not apply. [FN13] Also, the court believes that this argument is

weak on its face, since the relevant language of the contract makes no distinction between clients Patinkin brought to the firm, and those supplied by Merrill Lynch. [FN14]

Finally, the defendant pointed out that at least one court in this circuit has declined to extend a TRO pending arbitration of the dispute. In Merrill Lynch v. Rosenbaum 90 C 5031 (N.D.Ill.1990), once the defendant returned plaintiff's account information, and plaintiff's claim had been submitted to the New York Stock Exchange, Judge Conlon vacated the TRO because she found that the balance of the equities favored the defendant. Here, this court issued the TRO out of concern for plaintiff's interest in its client base as well as its business records, and therefore declines to follow the Rosenbaum decision.

In addition, the court is not persuaded by defendant's argument that he will suffer undue hardship by the loss of Merrill Lynch clients if the TRO stays in effect until this matter is resolved by the arbitration board. The court finds that although this argument has some merit, the defendant has the ability to contact new clients, to solicit business from them, and to receive customers from Prudential. The court also notes that the TRO does not restrict solicitation of business from family members. Further, while defendant testified as to the hardship he would face if the TRO remained in effect, he also testified that he was given a bonus when he joined Prudential.

Furthermore, defendant's argument that the hardship suffered by his Merrill Lynch clients requires the dissolution of the TRO must be also rejected. Those customers are free to do business with other brokers at Merrill Lynch, or they can transfer their accounts to other brokerage firms. There is no great public harm from the clients' temporary loss of Mr. Patinkin's services. His clients, like those of many others before him, can find other brokers to manage their accounts until this matter is resolved by the arbitration board. The court finds that the balance of the equities does not favor vacating the TRO.



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *5 (N.D.Ill.))

As was noted above, the intent of the court when it entered the TRO on April 19, 1991, was to maintain the status quo without prejudice to the merits of the parties claims or defenses that were or may be asserted in this litigation, until an arbitration panel could hear, and make findings on the issues presented in this lawsuit. It was the court's intention that the TRO would stay in effect until the case was presented to the arbitration panel, which could use its expertise and knowledge in this field to resolve the dispute presented.

*6 After reading the submitted documents, the defendant's Answer to the verified complaint, and hearing testimony and oral argument on this motion, the court finds that there is still good cause for the issuance of the TRO. The court bases its finding on its belief that the plaintiff will suffer irreparable harm if the TRO is not extended. In doing so, this court joins several other courts which have found that Merrill Lynch suffers irreparable harm from the solicitation and loss of its clients, and that this is a harm for which there is no adequate legal remedy.

The court also finds that greater injury will be inflicted on the plaintiff by the denial of the extension of the TRO than will be inflicted upon the defendant by granting the extension. The court notes that the injuries which the parties face involve more than economic losses. If the economic status of the parties was the only factor to be considered here defendant might very well prevail on this motion. The court believes that the denial of the extension of the TRO under the circumstances presented in this case would leave Merrill Lynch vulnerable to the same conduct from other employees. Hence, the potential harm plaintiff faces, on several levels, is enormous. [FN15]

Therefore, the court extends the TRO until July 1, 1991, or until the arbitration panel is able to address whether the TRO should remain in effect. The parties are instructed to cooperate with each other in order proceed to arbitration, under the Rules and Constitution of the NYSE, as expeditiously as possible.

## Conclusion

The Plaintiff's motion to extend the temporary restraining order is granted. The TRO will remain in effect until July 1, 1991. The Defendant's motion to vacate the temporary restraining order is denied. Defendant's motion to increase bond to $50,000 is granted. Since the plaintiff refuses to agree to an expedited arbitration hearing, [FN16] and defendant will suffer some harm during the pendency of the TRO, an increase in the bond is warranted. A status hearing is set for 9:30 a.m. on Friday, June 28, 1991.

FN1. The agreement provides that:

1. All records of Merrill Lynch, including the names and addresses of its clients, are and shall remain the property of Merrill Lynch at all times during my employment with Merrill Lynch and after termination of my employment for any reason with Merrill Lynch. None of said records nor any part of them is to be removed by me from the premises of Merrill Lynch either in original form or in duplicated or copied form, and the names and addresses and other facts in such records are not to be transmitted verbally or in writing by me except in the ordinary course of conducting business for Merrill Lynch. All of said records or any part of them are the sole proprietary information of Merrill Lynch and shall be treated by me as confidential information of Merrill Lynch.

2. In the event of termination of my services with Merrill Lynch for any reason, I will not solicit, for a period of one year from the date of termination of my employment in any community or city served by the office of Merrill Lynch, or any subsidiary thereof, at which I was employed at any time, any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch. In the event that any of the provisions contained in this paragraph and/or paragraph (1) above are violated, I understand that I will be liable to Merrill Lynch for any damages caused thereby.

FN2. The court notes that on May 1, 1991, the defendant testified at the hearing on the extension of the TRO and did not deny any of these factual allegations.

FN3. Defendant now argues that the TRO was



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *6 (N.D.Ill.))

Page 6

issued without notice. This argument is meritless. Shortly before motion call for the TRO the defendant filed a motion to compel which was in excess of twenty pages. At oral argument, defendant raised numerous arguments against the issuance of the TRO.

FN4. At the hearing on the motion to extend the TRO, both counsel agreed that defendant was not restrained from accepting business with those Merrill Lynch customers he did not solicit. Hence, Patinkin is free to accept business from any clients he did not solicit. The TRO is accordingly modified to reflect this understanding.

FN5. The court specifically rejected defendant's argument that the Illinois Arbitration Act superseded the Federal Arbitration Act. Because the Federal Arbitration Act is applicable to this action, the court found that it is not bound by the Illinois Uniform Arbitration Act, which is superseded by the Federal Act. (See TRO, ¶¶ 8 and 9, Conclusions of Law, and 9 U.S.C. § 2. See also, Zechman v. Merrill Lynch, 742 F.Supp. 1359, notes 4 and 6 (N.D.Ill.1990).

The court further found that the Federal Arbitration Act did not preclude the issuance of a temporary restraining order in this case, pending arbitration. See Merrill Lynch v. Tobias, 90 C 20210, U.S. District Court N.D. Illinois, Western Division (July 17, 1990) (Roszkowski, J.) and Merrill Lynch v. Cunningham, 736 F.Supp. 887 (N.D.Ill.1990) (Hart, J.), and see also, Sauer-Getribe KG v. White Hydraulics, Inc., 715 F.2d 348 (7th Cir.1983) (finding that it was error for a district court not to grant injunctive relief pending arbitration of a matter where the plaintiff established the factors for obtaining a preliminary injunction), and Merrill Lynch v. Bradley, 756 F.2d 1048, 1052 (4th Cir.1985).

FN6. 9 U.S.C. §§ 3-4 of the Federal Arbitration Act specifically states that arbitration can be compelled only "in accordance with the terms of the agreement to arbitrate.

FN7. Merrill Lynch has, in accordance with these rules, notified the Director of Arbitration of the NYSE to open a file in this matter, submitted a fully executed Uniform Submission Agreement, paid the filing fee, demanded the constitution of a panel of three members in accordance with the Rules of the NYSE, requested a cite for arbitration in Chicago, filed a formal claim with the Director of Arbitration of the NYSE, served a request for the production of documents from the defendant as provided for under Rule 619 of the NYSE, and notified opposing counsel of its willingness to contact the NYSE to arrange a hearing date for arbitration.

FN8. The parties agree that Patinkin's attorney will be allowed to keep copies of the document, and to show and discuss the documents with his client for purposes of defending Mr. Patinkin in this litigation, and the pending arbitration.

FN9. See also, Merrill Lynch v. Tobias, a case which was extremely similar to this one factually. Judge Roszkowski found that "Rule 65 presumably contemplates TROs issued without notice to the adverse party. The rule is silent as to whether a TRO issued with notice to the adverse party expires after 10 days." (Tobias, at p. 5). Judge Roszkowski found that Illinois law was instructive on this procedural point, and that it suggests that when a TRO is issued with notice to the adverse party, it will not necessarily expire after ten days: In this regard, Illinois case law indicates that TROs with notice to the adverse party do not necessarily expire after 10 days. In City of Chicago v. Westphalen, 93 Ill.App.3d 1110 (1st Dist.1981), the court held that when notice is provided in conjunction with a TRO, the TRO can be issued for a period of greater than 10 days. See also, Lawter International, Inc. v. Carroll, 107 Ill.App.3d 938 (1st Dist.1982); Kable Printing Co. v. Mount Morris Bookbinders Union Local 65-B, 349 N.E.2d 36 (1976). This holding makes sense. The trade-off for an ex parte issuance of a TRO is that the TRO has a limited life. Levas and Levas v. Village of Antioch, Ill., 684 F.2d 446, 448 (7th Cir.1982). This type of protection is not required when a TRO is issued with notice and both parties have an opportunity to present evidence before the court.
Id. at 6.

FN10. Although the court believes that this is an issue which should go before the arbitration board, for purposes of the motion to extend the TRO, this argument is rejected. The court makes this tentative finding, which is not binding on the arbitration board for the limited purpose of deciding the motion to extend the TRO.



Not Reported in F.Supp.
(Cite as: 1991 WL 83163, *6 (N.D.Ill.))

Page 7

FN11. Indeed, the court specifically declined to turn the motion for an extension of the TRO into a hearing on a preliminary injunction, because issuing a preliminary injunction would require inquiry into plaintiff's likelihood of success on the merits to a greater extent than that required for the issuance of a TRO. The court agrees that "such a judicial inquiry would inject into the merits of issues more appropriately left to the arbitration panel." Tobias, at p. 7.

Similarly, the court also believes that defendant's general argument that the employment agreement is too broad to be enforceable, is also better left to the arbitration board, which is already responsible for finally determining whether the Agreement is enforceable.

FN12. Again, the court notes that these are tentative rulings for purposes of deciding the motion to extend the TRO.

FN13. Similarly, defendant's testimony regarding confidentiality at Merrill Lynch, and how easily he and others gained access to customer names and files is not an issue that this court will deal with at this time. In the initial motion for a TRO, the plaintiff submitted an affidavit explaining how client files are only available to those Merrill Lynch employees who have access to the firm's computer password. Based on this evidence, the court found that the customer lists were intended to be confidential, meaning that they are only intended to be used by Merrill Lynch employees. In light of this reasoning, defendant's arguments regarding his own access to names of Merrill Lynch customers before they became clients of Merrill Lynch is unpersuasive. The point here is that once an individual becomes a client of Merrill Lynch, the firm makes an effort to keep information about that client confidential.

FN14. Paragraphs 2 states in pertinent part that:
In the event of termination of my services with Merrill Lynch for any reason, will not solicit, for a period of one year from the date of termination ... any of the clients of Merrill Lynch whom I served or whose names became known to me while in the employ of Merrill Lynch.

FN15. Although the defendant testified that other former brokers at Merrill Lynch kept, retained and ultimately used client information for their own personal benefit, the court cannot rely on these

conclusory, hearsay allegations, which lacked sufficient foundation for reliability.

FN16. The defendant determined that the Arbitration Board could hear this matter on an expedited basis on May 8, 1991. The court is now unsure as to when an arbitration hearing will be held.

END OF DOCUMENT



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER &    )
SMITH, INC., a Delaware corporation,    )
    )
            Plaintiff,    )
    )
vs.    )    Case No. 91 C 2432
    )
VINCENT ROMANO,    )    Judge James Parsons
    )
            Defendant.    )    Magistrate Judge Edward Bobrick

## TEMPORARY RESTRAINING ORDER

This matter is before the Court on Motion of Plaintiff MERRILL LYNCH,
PIERCE, FENNER & SMITH, INC. for a temporary restraining order restraining
Defendant VINCENT ROMANO from utilizing confidential information of the
Plaintiff.

Based on the verified documents and the statements of counsel in open
court, the Court finds as follows:

1.    The Defendant resigned from the employment of the Plaintiff on or
about March 15, 1991 and immediately entered into the employment of a
competitor, Hamilton, Investments, Inc.

2.    It appears that Defendant has taken certain documents and information
pertaining to Plaintiff's clients from Plaintiff's premises.

3.    Plaintiff will suffer irreparable harm and loss if Defendant is
permitted to (a) convert the property of Merrill Lynch to Defendant's own
personal use and benefit, and that of Defendant's new employer, Hamilton
Investments, and (b) solicit Merrill Lynch accounts, clients and customers.

APR-20-91 FRI 14:41    SHELL&CARTWELL    FAX    P.0300    P.03

4.    Plaintiff has no adequate remedy at law.

5.    Greater injury will be inflicted upon Plaintiff by the denial of a temporary restraining order than would be inflicted upon Defendant by the granting of such relief.

IT IS THEREFORE ORDERED:

A.    Plaintiff shall tender to the Court security in the amount of TWENTY-FIVE THOUSAND and NO/100 ($25,000.00) DOLLARS.

B.    Defendant is hereby enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any agent, representative or employee of Defendant's current employer, until hearing and thereafter until further Order of this Court from:

1)    soliciting any business from any client of Merrill Lynch whom Defendant served or whose name became known to Defendant while in the employ of Merrill Lynch, and from accepting any business from any of said customers whom Defendant has solicited in the past for the purpose of doing business with Defendant's present employer, including, without limitation, all individuals and entities holding or having an interest in the accounts identified by account number in Exhibit "A" to this order;

2)    using disclosing, or transmitting information contained in any records of Merrill Lynch, including the names, addresses, and financial information of clients described in Exhibit "A".

C.    Defendant is ordered to provide in open court at 12:00 p.m. on April 26, 1991 the following:

- 2 -

1) all documents taken from the Plaintiff on or before March 15, 1991 and all copies of all documents taken from the Plaintiff on or prior to March 15, 1991.

2) an affidavit stating (a) the existence and location of all documents, electronic data storage elements, computer records or other means and methods of information recording or storage which contain customer information, including but not limited to the names, addresses and any other information about Plaintiff's customers, removed from the possession of the Plaintiff before or after March 15, 1991, regardless of whether the information was removed from the possession of the Plaintiff by removal of tangible records and documents or by removal of electronic data storage materials; and (b) that all such materials, record, documents and electronic data storage materials described in paragraph C.2.(a) hereof have been ~~completely and irrevocably~~ sequestered to be retained pending further order of this court ~~destroyed or deleted~~.

D. On the 30th day of May, 1991 at 10:00 a.m., a hearing will be held on the issue of whether or not a preliminary injunction shall be granted.

ENTER:

_____
United States District Judge

Dated: April 25, 1991

Time: 3:25 p.m.

09/23/99   THU 16:39 FAX 810 335 3346          HERTZ SCHRAM SARETSKY                              ☑047

RECEIVED

JUN 0 4 1991

Judge Harry D. Leinenweber
U. S. District Court

RECEIVED

JUN 0 3 1991

Judge Harry D. Leinenweber
U. S. District Court

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

          Plaintiff

    v.

JAMES E. OTZKO,

          Defendant

:
:
:
:
:
:
:
:
:
:

91 C 3400

No.    JUDGE LEINENWEBER

MAGISTRATE JUDGE BUCKLO

## ORDER

AND NOW, this ___ day of June, 1991, upon consideration
of the Verified Complaint and Motion of Plaintiff and having
determined that:

    1.    Plaintiff will suffer irreparable harm and loss if
Defendant is permitted to (a) convert the confidential business
property of Merrill Lynch to Defendant's own personal use and
benefit, and that of Defendant's new employer, and (b) solicit
Merrill Lynch accounts, clients and customers;

    2.    Plaintiff has no adequate remedy at law; and

    3.    Greater injury will be inflicted upon Plaintiff by
the denial of temporary injunctive relief than would be inflicted
upon Defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

    1.    A Temporary Restraining Order issue immediately
and that security in the amount of $ 50,000 be posted no later
than the 4 day of June, 1991;

2.    Defendant is enjoined and restrained, directly or
indirectly, and whether alone or in concert with others,
including any officer, agent, representative and/or employee of
Defendant's current employer, PaineWebber, Inc., until hearing
and thereafter until further Order of this Court from:

a)    soliciting any business from any client
of Merrill Lynch whom Defendant served or whose name
became known to Defendant while in the employ of
Merrill Lynch, and from accepting any business from any
of said customers whom Defendant has solicited in the
past for the purpose of doing business with Defendant's
present employer including, without limitation, all
individuals and entities referenced in Exhibit "B" to
Plaintiff's Verified Complaint (excluding immediate
family) and who reside within one hundred miles of the
Merrill Lynch office in which he was employed;

b)    using, disclosing, or transmitting
information contained in the records of Merrill Lynch,
including but not limited to, the names, addresses, and
financial information of clients referenced in Exhibit
"B"; and that original records and copies thereof be
returned to Plaintiff immediately;

3.    Plaintiff is granted leave to commence discovery
immediately;

4.    This Order shall remain in full force and effect
until such time as this Court specifically orders otherwise;

2

09/23/99  THU 18:39 FAX 810 335 3346        HERTZ SCHRAM SARETSKY              @049

5.    Defendant shall show cause before this Court on
the ___14___ day of ___June___ 1991 at ___1:30___ o'clock _P_.m., or
as soon thereafter as counsel may be heard, why a Preliminary
Injunction Should Not Be Ordered according to the terms and
conditions set forth above.

BY THE COURT:

                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER
& SMITH, INC.,

    Plaintiff

  v.

BRIAN H. SUMMERS,

    Defendant

**JUDGE KOCORAS**

# 91C8231

MAGISTRATE JUDGE PALLMEYER

TRUE COPY ATT...
.. STUART CUNNINGHAM. ?

U.S. ...
...

## ORDER

AND NOW, this 23rd day of December 1991, upon consideration of the Verified Complaint and Motion of Plaintiff and having determined that:

  1.  Plaintiff will suffer irreparable harm and loss if Defendant is permitted to (a) convert the property of Merrill Lynch to Defendant's own personal use and benefit, and that of Defendant's new employer, and (b) solicit Merrill Lynch accounts, clients and customers;

  2.  Plaintiff has no adequate remedy at law; and

  3.  Greater injury will be inflicted upon Plaintiff by the denial of temporary injunctive relief than would be inflicted upon Defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

  1.  A Temporary Restraining Order issue immediately and that security in the amount of $ 25.000  be posted no later than the 26th day of December, 1991;

  2.  Defendant is enjoined and restrained, directly or

indirectly, and whether alone or in concert with others,
including any officer, agent, representative and/or employee of
Defendant's current employer, Prudential Securities, Inc., until
hearing and thereafter until further Order of this Court from:

      a)    soliciting any business from any client of Merrill
             Lynch whom Defendant served or whose name became
             known to Defendant while in the employ of Merrill
             Lynch, and from accepting any business from any of
             said customers whom Defendant has solicited in the
             past for the purpose of doing business with
             Defendant's present employer including, without
             limitation, all individuals and entities
             referenced in Exhibit "B" to Plaintiff's Verified
             Complaint (excluding immediate family and clients
             residing more than 100 miles from the Matteson,
             Illinois office of Merrill Lynch);

      b)    using, disclosing, or transmitting information
             contained in the records of Merrill Lynch,
             including but not limited to, the names,
             addresses, and financial information of clients
             referenced in Exhibit "B"; and that original
             records and copies thereof be returned to
             Plaintiff immediately;

    3.    Plaintiff is granted leave to commence discovery
immediately;

    4.    This Order shall remain in full force and effect
until January 7, 1992 at 4:20 p.m.

2

until such time as this Court specifically orders otherwise;

    5.   Defendant shall show cause before this Court on the _____ day of _____ 1991 at _____ o'clock _.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

BY THE COURT:

James B. Moran

U.S.D.J.

3

(rev 4/84)

UNITED STATES DISTRICT    URT, NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| Name of Assigned Judge or Magistrate | WILLIAM T. HART | Sitting Judge, Mag. If Other Than Assigned Judge; Mag. | |
|---|---|---|---|
| Case Number | 90 C 1034 | Date | FEB. 23, 1990 |
| Case Title | MERRILL LYNCH, PIERCE, FENNER & SMITH, etc. v. JAY A. CUNNINGHAM, et al | | |

MOTION:  [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3d-party plaintiff, and (b) state briefly the nature of the motion being presented]

Sent for ...crofilming
FEB 27 1990
Filed c MAR 07 1990

DOCKET ENTRY:    (The balance of this form is reserved for notations by court staff.)

(1) [X] Judgment is entered as follows:    (2) [ ]  [Other docket entry:]
Enter Temporary Restraining Order.  (DRAFT)

(3) [ ]  Filed motion of [use listing in "MOTION" box above].
(4) [ ]  Brief in support of motion due _____.
(5) [ ]  Answer brief to motion due _____, Reply to answer brief due _____
(6) [ ]  Hearing _____ on _____ set for _____ at _____
         Ruling
(7) [ ]  Status hearing [ ] held [ ] continued to [ ] set for [ ] reset for _____ at _____
(8) [ ]  Pretrial conference [ ] held [ ] continued to [ ] set for [ ] reset for _____ at _____
(9) [ ]  Trial [ ] set for [ ] reset for _____ at _____
(10) [ ]  [ ] Bench trial [ ] Jury trial [ ] Hearing held and continued to _____ at _____
(11) [ ]  This case is dismissed [ ] without [ ] with prejudice and without costs [ ] by agreement [ ] pursuant to
         [ ] FRCP 4(j)(failure to serve) [ ] General Rule 21 (want of prosecution) [ ] FRCP 41(a)(1) [ ] FRCP 41(a)(2)
(12) [X]  (For further detail see [X] order on the reverse of [ ] order attached to the original minute order form.)

| | |
|---|---|
| No notices required. | |
| Notices mailed by judge's staff. | |
| X Notified counsel by telephone. | |
| Docketing to mail notices. | |
| Mail AO 450 form. | |
| Copy to judge magistrate. | |
| courtroom deputy's initials | |

RECEIVED FOR ...
90 FEB 26  A 8:09

FEB 27 1990

| number of notices | |
|---|---|
| date docketed | |
| docketing dpty. initials | |
| date mld. notices | |
| mailing dpty. initials | |

Document #  18

Date/time received in central Clerk's Office

This matte  .  efore the court on motion o. ┆  ¦ntiff Merrill Lynch,
Pierce, Fenner & Smith, Inc. for a temporary retraining ·urder restraining
defendants Jay A. Cunningham, Steven P. Fromm, and Annette Sills, from utilizing
confidential information of the plaintiff.

Based on the verified documents and the statements of counsel in open
court, the court finds as follows:

1. The defendants resigned from the employment of the plaintiff on or
about February 16, 1990 and immediately entered into the employment of a
competitor.

2. If further appears that the defendants have executed undertakings not
to remove or copy certain confidential information from the plaintiff upon
terminating employment and also agreed not to solicit within a certain area for a
period of one year any clients of plaintiff who were served or whose names became
known to such defendants while in the employ of plaintiff.

3. It appears that defendants have taken certain documents and
information pertaining to plaintiff's clients from plaintiff's premises.

4. Plaintiff will suffer irreparable harm and loss if defendants are
permitted to (a) convert the property of Merrill Lynch to defendants' own personal
use and benefit, and that of defendants' new employer, A.G. Edwards & Sons, Inc.,
and (b) solicit Merrill Lynch accounts, clients and customers.

5. Plaintiff has no adequate remedy at law.

6. Greater injury will be inflicted upon plaintiff by the denial of a
temporary restraining order than would be inflicted upon defendants by the
granting of such relief.

IT IS THEREFORE ORDERED that:

1. A Temporary Restraining Order issue upon security being entered by
plaintiff in the amount of $25,000.00.

2. Upon entry of said security, defendants are enjoined and restrained,
directly or indirectly, and whether alone or in concert with others, including any
agent, representative or employee of defendants' current employer, until hearing
and thereafter until further order of this court from:

a) soliciting any business from any client of Merrill Lynch whom
defendants served or whose name became known to defendants while in the employ of
Merrill Lynch, and from accepting any business from any of said customers whom
defendants have solicited in the past for the purpose of doing business with
defendants' present employer, including, without limitation, all individuals and
entities referenced in Exhibit "D" to Plaintiff's Verified Complaint;

b) using, disclosing, or transmitting information contained in any
records of Merrill Lynch, including the names, addresses, and financial
information of clients described in Exhibit "D".

3. Defendants are ordered to provide in open court at 2:00 p.m. on
February 26, 1990 all documents taken from the plaintiff on or before February 16,
1990 and all copies of all documents taken from the plaintiff on or prior to
February 16, 1990.

4. This order shall remain in full force and effect for a period of
ten days and thereafter as this court may order.

5. On the 28th day of February, 1990 at 2:00 p.m., a hearing will be
held on the issue of whether or not a preliminary injunction shall be granted.

ENTER:

_____
UNITED STATES DISTRICT JUDGE

Dated:  FEBRUARY 23, 1990 at 4:45 p.m.

736 F.Supp. 887
(Cite as: 736 F.Supp. 887)

MERRILL LYNCH, PIERCE, FENNER &
SMITH, INC., Plaintiff,

v.

Jay A. CUNNINGHAM, Steven P. Fromm,
and Annette Sills, Defendants.

No. 90 C 1034.

United States District Court, N.D. Illinois,
Eastern Division.

April 27, 1990.

After brokerage firm filed complaint
alleging that former employees violated their
employment agreements by copying client
files and soliciting clients, district court
entered temporary restraining order
prohibiting former employees from making
further unsolicited client contacts. Employees
then moved to compel expedited arbitration
before stock exchange. The District Court,
Hart, J., held that: (1) district court could not
order that arbitration be on expedited basis,
and (2) court retained jurisdiction to maintain
and enforce restraining order pending
arbitration.

Ordered accordingly.

[1] EXCHANGES ⇒ 11(12)
160k11(12)
District court could not order stock exchange
to expedite arbitration between brokerage
firm and its former employees since there was
no contractual provision calling for arbitration
on expedited basis. 9 U.S.C.A. § 3.

[2] EXCHANGES ⇒ 11(12)
160k11(12)
Pending arbitration before stock exchange in
dispute between brokerage firm and its former
employees did not divest district court of
jurisdiction to maintain and enforce
restraining order prohibiting employees from
making further unsolicited contacts with
individuals on firm's client lists, particularly
in view of fact that employees did not
challenge propriety of court's order of
injunctive relief and had already solicited
some individuals on lists after lists were
clandestinely removed from firm's files and

copied. 9 U.S.C.A. § 3.

*888 Peter A. Cantwell and Stephen F.
Boulton, Cantwell & Cantwell, Chicago, Ill.,
for plaintiff.

Joels J. Bellows and Nicholas P. Iavarone,
Bellows & Bellows, Chicago, Ill., for
defendants.

MEMORANDUM OPINION AND ORDER

HART, District Judge.

Defendants in this case, three former
investment brokers for plaintiff ("Merrill
Lynch"), clandestinely removed approximately
1800 client files and photocopied them before
leaving the employ of Merrill Lynch on
February 16, 1990, to work for a competing
brokerage firm. Over the weekend after their
termination, defendants sent solicitation
letters to an undetermined number of these
clients on behalf of their new employer.
Merrill Lynch responded by filing a verified
complaint in which it claimed that defendants'
conduct violated the Account Executive
Training Agreements signed by each. [FN1]
After the parties were unable to work out a
stand-by agreement to preserve the status quo,
this court entered a temporary restraining
order prohibiting defendants from making any
other unsolicited contacts with individuals on
the customer lists. The matter was then
referred to a magistrate for a hearing and
recommendation regarding the
appropriateness of a preliminary injunction.
In the interim, defendants have filed a motion
to compel expedited arbitration before the
New York Stock Exchange ("NYSE"). The
issues presently before the court are whether
defendants have filed a proper demand for
arbitration, whether this court may order
"expedited arbitration," and whether this
court's restraining order should remain in
effect until after the arbitrators have had
sufficient time to consider the appropriateness
of preliminary relief.

FN1. The Executive Training Agreement signed by
each defendant contains clauses stating that (1) all
of Merrill Lynch's client records shall remain the

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works

property of Merrill Lynch at all times during and after the termination of the executive's employment, (2) the records are the sole proprietary information of Merrill Lynch and shall be treated as confidential, (3) the records shall not be removed from the premises of Merrill Lynch or duplicated or copied except with permission, (4) upon termination of his or her services, the executive will not solicit Merrill Lynch clients for a period of one year, and (5) the executive agrees that Merrill Lynch is entitled to injunctive relief and monetary damages if the solicitation clause is violated.

At the outset, it is important to state the issues that are not in dispute. In their initial motion to compel expedited arbitration, defendants emphasize that they "are not challenging the appropriateness of the issuance of the temporary restraining order already in place...." In fact, the parties have agreed to modifications to the order on two occasions. At the same time, Merrill Lynch does not take issue with defendants' contention that the issues raised in the complaint before this court are matters committed to arbitration before the NYSE. Merrill Lynch recognizes that NYSE Rule 347 [FN2] requires arbitration of *889 the issues once defendants have delivered a legally sufficient demand of arbitration. Defendants' March 21, 1990 Notice of Intent to Arbitrate is legally sufficient under the applicable New York law. [FN3]

FN2. NYSE Rule 347 provides that "[a]ny controversy between a registered representative and any ... member organization arising out of employment or termination of employment of such registered representative by and with such member organization shall be settled by arbitration, at the instance of any such party, in accordance with the procedure described elsewhere in these rules." Merrill Lynch is a member organization and each of the defendants is a registered representative.

FN3. Each of the Executive Training Agreements signed by defendants contains a choice of law clause requiring that the dispute be governed by New York law. There is no dispute between the parties about the scope of this provision. Accordingly, the demand for arbitration is governed by Article 75, § 7503(c) of the New York Code of

Civil Procedure. Under § 7503(c) a sufficient demand need only "specify the agreement pursuant to which the arbitration is sought and the name and the address of the party serving the notice.... Such notice and demand shall be served in the same manner as a summons or by registered or certified mail, return receipt requested."

[1] Defendants' motion requesting this court to order expedited arbitration before the NYSE, however, must be denied. Although the parties may agree to expedited arbitration as a matter of contract, the governing contractual provisions in this case do not so provide. Under these circumstances, the court cannot order the NYSE to proceed with this case in an expedited manner. Although defendants cite to a number of unpublished court orders which seem to so hold, these cases are not controlling. Section 3 of the Federal Arbitration Act specifically provides that a court may order arbitration to proceed in a manner provided for in the agreement between the parties.   9 U.S.C. § 3. Accordingly, this court is without authority to order the NYSE or plaintiff to expedite its proceedings.

[2] The final issue presented by defendants' motion is whether the pending arbitration divests the court of jurisdiction to maintain and enforce its restraining order pending arbitration. Defendants' position turns upon their interpretation of the provisions of the Federal Arbitration Act.    The pertinent language of § 3 requires the federal court to "stay the trial of the action until such arbitration has been held in accordance with the terms of the [arbitration] agreement...." This language of the Act, which is admittedly wanting, has been the source of a split among the federal circuits over the continuing jurisdiction of the federal courts. At least two members of the Supreme Court have recognized the significance of the controversy. Merrill Lynch, Pierce, Fenner & Smith, Inc. v. McCollum, 469 U.S. 1127, 1129-31, 105 S.Ct. 811, 812-14, 83 L.Ed.2d 804 (1985) (White, J., dissenting from the denial of certiorari, joined by Blackmun, J.).

In support of their position, defendants rely



736 F.Supp. 887
(Cite as: 736 F.Supp. 887, *889)

on the Eighth Circuit's decision in Merrill
Lynch, Pierce, Fenner & Smith, Inc. v. Hovey,
726 F.2d 1286 (8th Cir.1984), and prior lower
court cases interpreting the Act as precluding
such relief. In Hovey, the Eighth Circuit held
that the lower court's order of preliminary
injunctive relief pending arbitration was an
abuse of discretion because it abrogated
congressional intent in enacting the Federal
Arbitration Act. This interpretation of the
jurisdictional effect of § 3 of the Act has been
called into question, and the Eighth Circuit
now stands alone in this determination. A
growing line of subsequent federal circuit
cases hold that an order staying the
proceedings pending arbitration does not
divest the district court of subject matter
jurisdiction to enter interim injunctive relief,
and that such relief may, in appropriate cases,
fulfill the objectives of the Act.    Ortho
Pharmaceutical Corp. v. Amgen Inc., 882 F.2d
806, 811 (3rd Cir.1989); Teradyne v. Mostek,
797 F.2d 43, 47 (1st Cir.1986); Merrill Lynch,
Pierce, Fenner & Smith v. Bradley, 756 F.2d
1048, 1052 (4th Cir.1985); Roso-Lino Beverage
Distributors, Inc. v. Coca-Cola Bottling Co.,
749 F.2d 124, 125 (2d Cir.1984).  In addition to
these cases, the Seventh Circuit specifically
held that it was error for the district court not
to grant injunctive relief pending arbitration
of a matter where plaintiff established the
factors for obtaining a preliminary injunction.
Sauer-Getriebe KG v. White Hydraulics, Inc.,
715 F.2d 348 (7th Cir.1983), cert. denied, 464
U.S. 1070, 104 S.Ct. 976, 79 L.Ed.2d 214
(1984)).

*890 In its decision in Bradley, the Fourth
Circuit aptly underscored the policy rationale
supporting its decision and interpretation of
the Act:
[W]here a dispute is subject to mandatory
arbitration under the Federal Arbitration
Act, a district court has the discretion to
grant a preliminary injunction to preserve
the status quo pending arbitration of the
parties' dispute if the enjoined conduct
would render that process a 'hallow
formality.' The arbitration process would be
a hallow formality where 'the arbitral award
when rendered could not return the parties
substantially to the status quo ante.'  ...

[this] decision will further, not frustrate, the
policies underlying the Federal Arbitration
Act.
Bradley, 756 F.2d at 1053-54.

In terms that are directly applicable to the
present case, the Bradley court went on to
explain why maintaining injunctive relief
pending arbitration was appropriate:
In this case preliminary injunctive relief
pending arbitration furthers congressional
policy by ensuring that the dispute
resolution would be a meaningful process
because without such an injunction,
Bradley's conduct might irreversibly alter
the status quo.  When an account executive
breaches his employment contract by
soliciting his former employer's customers, a
nonsolicitation clause requires immediate
application to have any effect.    An
injunction even a few days after solicitation
has begun is unsatisfactory because the
damage is done.  The parties cannot be
'unsolicited.'  It may be impossible for the
arbitral award to return the parties
substantially to the status quo ante because
the prevailing parties' damages may be too
speculative.

In this case, the grounds for maintaining the
injunction are even more compelling than in
Bradley.    Defendants do not purport to
challenge the propriety of the court's order of
injunctive relief.  The injunctive order has
been modified by agreement of the parties to
fit their compelling needs.  Prior to entering
the order, this court received affidavits and
copies of deposition testimony confirming that
Merrill Lynch's customer files, which included
personal and confidential client information,
were clandestinely removed over a period of
time and copied.  There was also evidence that
at least some of these clients received
solicitation letters from one of the defendants
encouraging them to transfer their accounts to
defendants' new employer.

At the same time, the court is not persuaded
that defendants will suffer any undue
hardship if the restraining order is maintained
until the arbitrators are able to address the
question of preliminary relief.  Defendants

Copr. © West 1999 No Claim to Orig. U.S. Govt. Works



argue that the injunction prevents them from pursuing their livelihood. This contention is specious; defendants are free to contact new clients, and presumably have done so. Additionally, any of the clients who desire to transfer their accounts to follow the defendants to their new brokerage firm are free to do so.

IT IS THEREFORE ORDERED that:

(1) Defendants' motion to stay the trial in this case pending arbitration is granted.

(2) Defendants' motion requesting the court to order "expedited" arbitration is denied.

(3) This court's modified order of injunctive relief will remain in effect pending arbitration until the arbitration panel is able to address whether continuing injunctive relief is necessary. This should not be a protracted period of time.

(4) The reference to the magistrate is vacated.

(5) This case is set for a report on status on July 2, 1990 at 9:15 a.m.

END OF DOCUMENT



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER )
AND SMITH, a Delaware corporation, )
                                   )
              Plaintiff,           )
                                   )   Case No. 90 C 20210
       v. .                        )
                                   )
JOHN N. TOBIAS,                    )
                                   )
              Defendant.           )

## ORDER

Before the court is Plaintiff's motion to extend the temporary restraining order issued in this case on July 17, 1990 or, in the alternative, to convert the temporary restraining order into a preliminary injunction order. Also before the court is Defendant's motion to vacate the temporary restraining order. For the reasons set forth herein, Plaintiff's motion to extend the temporary restraining order is granted. Plaintiff's alternative motion to convert the temporary restraining order into a preliminary injunction is denied. Defendant's motion to vacate the temporary restraining order is denied. Any further proceedings in this case are stayed pending an award and final decision by the arbitration panel of the New York Stock Exchange. The temporary restraining order shall remain in effect pending arbitration until the arbitration panel is able to address whether continuing injunctive relief is necessary.

## BACKGROUND

On July 17, 1990, this court issued a temporary restraining order (hereinafter "TRO") in this cause of action.   The TRO was issued after notice was given to Defendant and after the court heard and considered the motions, oral evidence and other submissions of both parties. The court found that the Account Executive Trainee Agreement, that was the subject matter of the dispute, contained various restrictions on Defendant's ability to use Plaintiff's records and otherwise compete with Plaintiff upon a change of Defendant's employment.[1]    The court found that Plaintiff would suffer irreparable harm and loss in the event that a TRO was not issued.   The court further found that Plaintiff had no adequate remedy at law and that greater injury would be inflicted upon Plaintiff by the denial of the TRO than would be inflicted upon Defendant by the granting of the TRO. Finally, the court found that the parties had previously agreed to binding arbitration and, therefore, ordered the parties to submit the dispute to arbitration.

---

[1] Specifically, the Account Executive Trainee Agreement signed by Defendant contains clauses stating that (1) all of Merrill Lynch's client records shall remain the property of Merrill Lynch at all times during and after the termination of the executive's employment, (2) the records shall not be removed from the premises of Merrill Lynch or duplicated or copied, (3) upon termination of his or her services, the executive will not solicit Merrill Lynch clients for a period of one year, and (4) the executive agrees that any controversy arising out of the employment relationship or the termination of employment shall be settled by arbitration in accordance with the Constitution and Rules of the New York Stock Exchange, then in effect.

(                                                   (

3

The TRO itself enjoined and restrained Defendant from soliciting any client of Plaintiff's whom Defendant served or whose name became known to Defendant while in Plaintiff's employ. Defendant was further enjoined and restrained from accepting any business from any of these customers whom Defendant solicited for the purpose of doing business with Hamilton Investments, Inc. Finally, Defendant was enjoined and restrained from using, disclosing or transmitting information contained in the records of Plaintiff, including the names, addresses and financial information of clients. Defendant was ordered to deliver any of Plaintiff's original records or copies to Plaintiff's attorney. The court also ordered the parties to submit themselves to arbitration in this matter.

On July 23, 1990, the parties appeared before the court to report on the status of the cause of action. The court learned at that time that both parties had submitted a statement of claim and a filing fee to the Director of Arbitration for the New York Stock Exchange. However, no arbitration panel had been chosen, much less convened, as of that date. Plaintiff is now before this court seeking an extension on the TRO or, in the alternative, a conversion of the TRO into a preliminary injunction. Defendant, on the other hand, asks this court to vacate the TRO.

4

## DISCUSSION

The Account Executive Trainee Agreement provides that its validity, performance and enforcement shall be governed by the laws of New York. However, as Defendant admits in its memorandum in support of its motion to vacate the temporary restraining order, a Federal court is not bound by New York law because the United States Arbitration Act, 9 U.S.C. §§1-15 (1976) is applicable to this action and, therefore, Federal law determines whether the dispute is arbitrable.

This court has already held that the dispute in this action is arbitrable. The court has further ordered the parties to submit the dispute to arbitration. The only question before the court, then, is the status of the TRO during the pendency of the arbitration proceedings.

Rule 65(b) of the Federal Rules of Civil Procedure provides that a TRO:

> . . . shall expire by its terms within such time after entry, not to exceed 10 days, as the court fixes, unless within the time so fixed the order, for good cause shown, is extended for a like period or unless the party against whom the order is directed consents that it may be extended for a longer period. The reasons for the extension shall be entered of record .
> . .

Rule 65(b) presumably contemplates only TROs issued without notice to the adverse party. The rule is silent as to whether a TRO issued with notice to the adverse party expires after 10 days.

5

Illinois law is instructive in this area.  The  Illinois law
in relation  to temporary restraining  orders is codified  in 110
Ill. Rev. Stat. ¶11-101.  Illinois TRO law tracks the language of
Federal Rule  of  Civil  Procedure 65(b).    Illinois case  law,
however,  provides more insight  into whether  a TRO  issued with
notice to the adverse party expires after 10 days.

In this regard, Illinois case law indicates that TROs issued
with notice to the adverse party do not necessarily  expire after
10 days.  In <u>City of Chicago v. Westphalen</u>, 93 Ill. App.3d  1110,
49 Ill.  Dec. 419, 431 (1st Dist.  1981), appeal dismissed, <u>cert.
denied</u>, 455 U.S. 996, 102 S. Ct. 1625 (1982), the court held that
when notice is provided in conjunction with a TRO, the TRO can be
issued  for a period  greater than ten  days.    <u>See, also, Lawter
International, Inc. v. Carroll</u>, 107 Ill. App.3d 938, 63 Ill. Dec.
659  (1st  Dist.  1982);  <u>Kable  Printing  Co.  v.  Mount  Morris
Bookbinders  Union  Local  65-B</u>, 63  Ill.2d 514,  349 N.E.2d  36
(1976).  This holding makes sense.  The trade-off for an <u>ex parte</u>
issuance of a TRO is that the TRO has  a limited life.  <u>Levas and
Levas v. Village  of Antioch, Ill.</u>,  684 F.2d 446, 448  (7th Cir.
1982).   This type of protection is  not required when  a TRO is
issued with notice  and both parties  have had an  opportunity to
present evidence before the court.

The intent of this court when it entered the TRO on July 17,
1990,  was to  maintain the status  quo without  prejudice to the
merits of  the  claims  and defenses  that  were or  may  yet  be
litigation . . . until an arbitration panel  composed

09/23/99  THU 16:28 FAX 810 335 3348        HERTZ SCHRAM SARETSKY                          ☒016

6

cf experts in the field can hear the issues and make findings in
relation to the issues presented. The court intended the TRO to
remain in effect until the arbitration panel could hear the
issues and decide whether to extend the TRO or dissolve it as
they see fit. The court stayed any further proceedings in this
action until an award and final decision was issued by the
arbitration panel.

This is still the court's intent. The court, therefore,
extends, in its own discretion, the period of the TRO until
arbitration can be held in this matter and until the arbitration
panel can render an informed decision as to whether the TRO
should remain in effect. The court bases its finding on the
belief that Plaintiff will suffer irreparable injury if the time
of the TRO is not extended.[3]  The court further finds that
Plaintiff has no adequate remedy at law and that greater injury
will be inflicted upon Plaintiff by the denial of the extension
of the time for the TRO than would be inflicted upon Defendant by
the granting of the extension.

The court will not, however, grant Plaintiff's alternative
motion for a preliminary injunction. A preliminary injunction
would require the court to inquire into Plaintiff's likelihood of
success on the merits to a greater extent than that required for

_____

[3] As cited by Judge Hart in Merrill Lynch v. Cunningham, 736
F. Supp. 887 (N.D. 1990), once an executive breaches his
employment contract by soliciting his former employer's
customers, the damage has been done. The clients cannot be
"unsolicited." Accordingly, this is where the irreparable damage
factor of the TRO comes into play. 736 F. Supp. at 890, citing,

09/23/99   THU 16:28 FAX 810 335 3346          HERTZ SCHRAM SARETSKY
11/05/97        12:33     UNGARETTI & HARRIS → 3124833333546                                    ☑ 017

7

the issuance of a TRO.   Such a judicial inquiry would inject the
court into the  merits of issues  more appropriately left  to the
arbitration panel.  Moreover, while the granting of a preliminary
injunction  is within  this court's  discretion, the  issuance of
injunctive relief abrogates the intent of the Federal Arbitration
Act and, therefore, would be an abuse of this court's discretion.
See,  e.g.,  Merrill  Lynch v. Hovey,  726 F.2d  1286 1291-92 (8th
Cir. 1984);  Merrill Lynch v. Cunningham, 736  F. Supp. 887 (N.D.
1990).

     Defendant argues that the temporary restraining order should
be vacated.   In support of  his motion, Defendant  contends that
the TRO precludes  Defendant from earning  a living.   This court
agrees  with  the court  in  Cunningham, supra,  that  it  is not
persuaded  that Defendant will  suffer any undue  hardship if the
TRO is maintained until the arbitration panel is able  to address
the  question of preliminary  relief.   Defendant's argument that
his livelihood is being harmed is specious.  Defendant is free to
contact   new  clients  and   to  solicit   business  from  them.
Accordingly, Defendant's motion to vacate the TRO is denied.

     Finally,  Defendant  asks  this  court  to  order  expedited
arbitration before  the New York Stock Exchange.   This issue was
also before the court in Merrill Lynch v. Cunningham, supra.   As
in  that case,  this  court  finds  that although parties  to  a
contract  may  agree to  expedited  arbitration,  the contractual
provisions in this case do not provide for expedited arbitration.
The Account Executive Training  Agreement simply states that  any

8

controversy surrounding the termination of the executive's employment with Plaintiff shall be settled by arbitration "in accordance with the Constitution and Rules of the New York Stock Exchange."[3] Under these contractual terms, the court cannot order the New York Stock Exchange to proceed with this case in an expedited manner. Section 3 of the Federal Arbitration Act specifically provides that a court may order arbitration to proceed in a manner provided for in the agreement between the parties. 9 U.S.C. §3. Accordingly, while it is the intent and desire of this court that the arbitration proceedings take place in a expeditious manner, the court is without authority to order the New York Stock Exchange, a non-party in this suit, or Plaintiff to expedite the arbitration proceedings.

## CONCLUSION

For the reasons set forth herein, Plaintiff's motion to extend the temporary restraining order is granted. Plaintiff's alternative motion to convert the temporary restraining order into a preliminary injunction is denied. Defendant's motion to

---

[3] Paragraph 5 of the Account Executive Trainee Agreement states as follows:

I agree that any controversy between myself and Merrill Lynch arising out of my employment, or the termination of my employment, with Merrill Lynch for any reason whatsoever shall be settled by arbitration at the request of either party in accordance with the Constitution and Rules of the New York Stock Exchange, to

9

vacate the temporary restraining order is denied. Any further
proceedings in this  case are stayed  pending an award  and final
decision by the arbitration panel of the New York Stock Exchange.
The  temporary restraining order  shall remain  in effect pending
arbitration until  the  arbitration  panel  is  able  to  address
whether continuing injunctive relief  is necessary.  This  should
not be a  protracted period of  time.  Parties  are to report  to
this court for status on September 12, 1990 at 11:00 a.m.

E N T E R :

STANLEY J. ROSZKOWSKI, JUDGE
UNITED STATES DISTRICT COURT

DATED: July 26, 1990

09/23/99  THU 16:40 FAX 810 335 3346      HERTZ SCHRAM SARETSKY                    @050

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER )
& SMITH, INC. )
A DELAWARE CORPORATION )
MERCHANDISE MART PLAZA )
SUITE 444 )
CHICAGO, ILLINOIS  60654 )          Judge Suzanne B. Conlon
)
        Plaintiff )
)
        v. )
)          No. 90 C 5031
)
ANN P. ROSENBAUM )
1915 CALVIN COURT )
RIVERWOODS, ILLINOIS  60015 )
)
        Defendant )

ORDER

AND NOW, this 29th day of August, 1990, upon
consideration of the Verified Complaint and Motion of plaintiff and
having determined that:

1. Plaintiff will suffer irreparable harm and loss if
defendant is permitted to (a) convert the property of Merrill Lynch
to defendant's own personal use and benefit, and that of
defendant's new employer, Rodman & Renshaw, and (b) solicit Merrill
Lynch accounts, clients and customers;

2. Plaintiff has no adequate remedy at law; and

3. Greater injury will be inflicted upon plaintiff by
the denial of temporary injunctive relief than would be inflicted
upon defendant by the granting of such relief.

IT IS HEREBY ORDERED AND DECREED THAT:

1.    A Temporary Restraining Order issue upon the posting of security in the amount of $10,000.00, effective 1:30 p.m., August 29, 1990:

2.    Defendant is hereby enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any agent, representative or employee of defendant's current employer, until hearing and thereafter until further order of this court from:

(a)   soliciting any business from any client of Merrill Lynch whom defendant served or whose name became known to defendant while in the employ of Merrill Lynch, and from accepting any business from Merrill Lynch customers whom defendant has solicited on or after August 17, 1990 for the purpose of doing business with defendant's present employer, including, without limitation, all individuals and entities referenced in Exhibit "B" to plaintiff's Verified Complaint; excluding only accounts of the following family members:  Richard C. Rosenbaum, husband; Kurt Rosenbaum, father-in-law; Thomas L. Pharmakis, father; Thomas P. Wada, ex-husband; Forest Financial Services, Inc., husband's account:

(b)   using, disclosing or transmitting information contained in the records of Merrill Lynch, including the names, addresses and financial information of clients referenced in Exhibit "B"; and that original records and copies thereof be returned to plaintiff.

3.    This order shall remain in full force and effect until Tuesday, September 11, 1990, at 9:00 a.m., at which time the

09/23/99  THU 16:40 FAX 810 335 3346.          HERTZ SCHRAM SARETSKY                    ☑052

parties, by their counsel, shall appear in this court to report on the status of this case.

Dated this _5th_ day of ~~August~~ SEPTEMBER, 1990.

ENTER:

_Suzanne B. Conlon_
Suzanne B. Conlon
United States District Judge

Prepared by:
Scott C. Sullivan
Williams & McCarthy
P.O. Box 219
Rockford, IL  61105
(815) 987-8900

## UNITED STATES DISTRICT COURT FOR THE
## CENTRAL DISTRICT OF ILLINOIS

MORGAN STANLEY DW INC.,

Plaintiff,

No. 04-3263

v.

STEPHEN L. PATTON,
CHRISTOPHER H. NOONAN,
THOMAS A. NOONAN and
TIMOTHY R. HUSEMAN,

Defendants.

| | |
|---|---|
| Hertz, Schram & Saretsky, P.C.<br>Attorneys for Plaintiff<br>By:    Gary M. Saretsky<br>        Miles D. Hart<br>        Eric A. Michaels<br>1760 S. Telegraph Rd., Suite 300<br>Bloomfield Hills, MI 48302-0183<br>(248) 335-5000 | Carlilie Patchen & Murphy<br>Attorneys for Defendants<br>By:    Dennis Concilla<br>366 East Broad Street<br>Columbus, OH 43215<br>(614) 228-6135<br><br>Brown, Hay & Stephens, LLP<br>Attorneys for Defendants<br>By:    Scott C. Hemholz<br>205 S. Fifth St., Suite 700<br>Springfield, IL 62701<br>(217) 544-8491 |

LAW OFFICES  HERTZ, SCHRAM & SARETSKY, P.C.

## **TEMPORARY RESTRAINING ORDER**

Having reviewed plaintiff Morgan Stanley DW Inc.'s ("Morgan Stanley") Motion for

a Temporary Restraining Order and Preliminary Injunction and Memorandum in Support,

the submissions of record, and having determined that:

1.    Under Rule 10335 of the National Association of Securities Dealers Code

of Arbitration Procedure, Morgan Stanley has the express right to seek temporary

injunctive relief from a court of competent jurisdiction pending an arbitration hearing before a panel of duly-appointed arbitrators.

2.      Morgan Stanley has demonstrated that a substantial likelihood of success on the merits of its claims.

3.      The rights of Morgan Stanley with respect to its property, proprietary and confidential information, competitive interests and employment contract with Defendants Stephen L. Patton ("Patton"), Christopher H. Noonan ("C. Noonan"), Thomas A. Noonan ("T. Noonan") and Timothy R. Huseman ("Huseman") (collectively "Defendants") are being and will continue to be violated by Defendants unless they are restrained therefrom.

4.      Morgan Stanley will suffer irreparable harm and loss if Defendants are permitted to: (a) convert the property of Morgan Stanley to Defendants' own personal use and benefit, and that of their new employer, Citigroup Global Markets, Inc. ("Citigroup") and (b) solicit Morgan Stanley accounts and customers.

5.      Morgan Stanley has no adequate remedy at law.

6.      Greater injury will be inflicted upon Morgan Stanley by the denial of temporary injunctive relief than would be inflicted upon Defendants by the granting of such relief.

## IT IS HEREBY ORDERED AND DECREED THAT:

A.      A Temporary Restraining Order issue immediately and that security in the amount of $_____ be posted no later than the _____ day of _____, 2004.

2

B.     Defendants are enjoined and restrained, directly or indirectly, and whether alone or in concert with others, including any officer, agent, representative and/or employee of Defendants' current employer, Citigroup, until hearing and thereafter until further Order of this Court from:

i)     soliciting or otherwise initiating any further contact or communication with any client of Morgan Stanley whom Defendants served or whose names became known to them while in the employ of Morgan Stanley for the purpose of advising said clients of their new affiliation or for the purpose of inviting, encouraging or requesting the transfer of any accounts or business patronage from Morgan Stanley (excluding Defendants' family, relatives, and any client serviced by Defendants as a registered representative prior to joining Morgan Stanley);

ii)     soliciting or otherwise initiating any further contact or communication with any client of Morgan Stanley whose records or information Defendants used in violation of paragraph 1 of their Agreements or in violation of the Employee Code of Conduct which they all acknowledged.  This specifically includes any client whom Defendants may have contacted by mail, phone or otherwise through the use of any information obtained by Defendants while in the employ of Morgan Stanley (excluding Defendants' family, relatives, and any client serviced by Defendants as a registered representative prior to joining Morgan Stanley);

iii)     using, disclosing, or transmitting for any purpose, including solicitation of said clients, the information contained in the records of Morgan Stanley or concerning its clients, including, but not limited to, the names, addresses, and financial information of said clients; and

3

iv) destroying, erasing, or otherwise making unavailable for further proceedings in this matter, or in any arbitration proceeding between the parties, any records or documents (including data or information maintained in computer media) in Defendants' possession or control which were obtained from or contain information derived from any Morgan Stanley records, which pertain to Morgan Stanley clients whom Defendants served or whose names became known to Defendants while employed by Morgan Stanley, or which related to any of the events alleged in the Verified Complaint in this action;

C. Defendants, and anyone acting in concert or participation with Defendants, specifically including Defendants' counsel and any agent, employee, officer, or representative of Citigroup, are further ordered to return to Morgan Stanley's Michigan counsel any and all records, documents and/or other types of information pertaining to Morgan Stanley and/or its customers ("Confidential Information"), whether in original, copied, handwritten (including copies of any Smith Barney account transfer forms which were given to customers to execute prior to 4:00 p.m. on December 1, 2004), computerized (including computer software, disks, computer hard drive and/or any other type of computer or digital information storage device) or memorialized in any other form, within twenty-four (24) hours of notice to Defendants or their counsel of the terms of this Order;

D. Any and all Customer Information within the possession, custody or control of Defendants that is contained in any computerized form, including on computer software, disks, computer hard drive, and/or any other type of computer or digital information storage device, returned pursuant to paragraph C above shall be

4

permanently deleted by a Morgan Stanley representative. Such customer Information shall be permanently deleted, if possible without affecting any other information or software on the computer. Defendants, and anyone acting in concert with Defendants, are precluded from reconstituting or in any way restoring any Customer Information deleted pursuant to this paragraph and returned to Morgan Stanley pursuant to paragraph C above. Morgan Stanley shall retain a copy of any and all information deleted. Such inspection and deletion shall occur within 7 days of this Order;

E.    The Court's Order remains in full force and effect until such time as either an NASD arbitration panel renders a final decision on Morgan Stanley's request for permanent injunctive relief or this Court specifically orders otherwise;

F.    Pending a preliminary injunction hearing before this Court, and pursuant to the requirements of sections 3 and 4 of the Federal Arbitration Act, 9 U.S.C. §§3-4, the parties be directed to proceed expeditiously with an arbitration pursuant to Rule 10335(b) of the National Association of Securities Dealers Code of Arbitration Procedures.

G.    In the event the NASD arbitrators have not acted on Plaintiff's request, Defendants shall show cause before this Court on the _____ day of _____, 2004 at _____o'clock ___.m., or as soon thereafter as counsel may be heard, why a Preliminary Injunction should not be ordered according to the terms and conditions set forth above.

_____
U.S. District Court Judge

S:\Staff\Martin, Denise\MILES\MORGAN STANLEY\Patton\TRO(2).doc

5