**E-FILED**
Tuesday, 07 December, 2004 09:30:39 AM
Clerk, U.S. District Court, ILCD

# AFFIDAVIT OF PATRICK A. NOONAN

STATE OF ILLINOIS :
: ss
COUNTY OF SANGAMON :

1. My name is Patrick A. Noonan. I have personal knowledge of each of the matters stated in this affidavit, which is given in opposition to the motion for temporary restraining order filed by my former employer, Morgan Stanley DW Inc. ("Morgan Stanley").

2. I have worked in the securities industry since the 1950's when I took a position as a stock broker with my family's investment firm, Dixon Bretsher Noonan Inc. ("DBN"), which was established in 1911. My father joined DBN in 1936. I worked for DBN until its assets were purchased by Blunt, Ellis and Loewi/Kemper Securities Group. Beginning in late 1992, the firm began doing business as Kemper Securities, Inc. ("Kemper").

3. On October 7, 1994, I, along with several other brokers including my nephew Stephen Patton and sons Thomas and Christopher Noonan were recruited away from Kemper by Morgan Stanley's predecessor Dean Witter Reynolds, Inc. ("Dean Witter"). Dean Witter hired us to help open a new branch in Springfield, Illinois. I also was hired to manage this office.

On October 7, 1994, I signed a document entitled "Dean Witter Account Executive Employment Agreement." I cannot presently locate the Agreement, but such Agreement is identical to the document attached to the affidavit of Christopher H. Noonan.

4. At that time, I joined Dean Witter, I had approximately 500 clients. Approximately 90% of these clients were developed by me during the time I worked for DBN. Collectively, the clients serviced by my family's investment team made up approximately $125,000,000 in assets under management.

5. In connection with my recruitment in 1994, Morgan Stanley instructed me to mail an announcement to each of the clients I previously served at Kemper. For this purpose, and with Morgan Stanley's knowledge and consent, we used a personal list of our clients' names and addresses, the vast majority of which were developed by me over the years before I joined Kemper.

6. After I joined Morgan Stanley in October of 1994, Kemper filed suit in Sangamon County Circuit Court to obtain a Temporary Restraining Order preventing me from contacting the clients I had serviced while employed by Kemper. Morgan Stanley provided me with counsel who defended against Kemper's claims and obtained a stipulated Order for a Preliminary Injunction that not only did not bar me from contacting my former clients to announce my new position but specifically required Kemper to provide me with a duplicate copy of any customer file who decided to transfer his or their account to Morgan Stanley.

7. In 2001, Timothy Huseman joined our investment team, which also included my nephew Stephen Patton and two sons Christopher and Thomas Noonan, and we assigned Tim a significant number of existing accounts developed by our team.

8. On November 1, 2004, I resigned my position at Morgan Stanley, and on December 1, 2004, and I joined the newly formed Springfield, Illinois branch office of Citigroup Global Markets, Inc., d.b.a. Smith Barney ("Smith Barney"). When I resigned from Morgan Stanley, our team was generating commissions of approximately $2,000,000 per year. In addition, at least 80% of our team's assets under management are directly attributable to clients we came to know before becoming affiliated with Morgan Stanley. The balance of our clients were from referrals from existing clients. I received little assistance from Morgan Stanley in

attracting clients and few, if any, of our new clients had a prior relationship with Morgan Stanley.

9. Upon my resignation from Morgan Stanley, I did not remove any original documents or copies of documents pertaining to Morgan Stanley account holders.

10. I have not solicited any clients to transfer their accounts from Morgan Stanley to my new employer, or to otherwise discontinue their patronage and business relationship with Morgan Stanley. Consistent with the same instructions I received from Morgan Stanley when I left Kemper in 1994, I mailed announcements to my clients, the vast majority of which I serviced before joining Morgan Stanley. The announcements merely provided the recipient with an address and phone number where I could be contacted. I have also telephoned these clients to ensure each one has my new contact information. No Smith Barney materials were included with the announcements. Likewise, no Morgan Stanley proprietary or confidential data was used to prepare the mailing.

11. As a professional financial advisor, I am personally familiar with each of my clients' financial affairs and I am frequently called upon to answer questions or provide advice to those clients. Accordingly, it is imperative that my clients be able to contact me if they see the need to do so. As it is my understanding Morgan Stanley resists disclosing a departing employee's new employer to clients, receipt of an announcement is the only way in which my clients will be able to contact me if they need to do so.

12. I did not directly or indirectly solicit or recruit any employee of Morgan Stanley to leave the employ of Morgan Stanley.

FURTHER AFFIANT SAYETH NAUGHT.

*[signature: Patrick Noonan]*
PATRICK A. NOONAN

Sworn to before me and subscribed in my presence on this 6th day of December, 2004.

_____
Notary Public

OFFICIAL SEAL
ALMON A. MANSON, JR.
NOTARY PUBLIC STATE OF ILLINOIS
MY COMMISSION EXPIRES 8-15-2007