**E-FILED**
Tuesday, 07 December, 2004  09:35:46 AM
Clerk, U.S. District Court, ILCD

IN THE CIRCUIT COURT FOR THE SEVENTH JUDICIAL CIRCUIT
SANGAMON COUNTY, ILLINOIS

| | |
|---|---|
| KEMPER SECURITIES, INC., | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) No.: 94-CH-170 |
| DEAN WITTER REYNOLDS INC., | ) |
| PATRICK A NOONAN, LARRY A. | ) |
| HARDY, CHRISTOPHER H. NOONAN, | ) |
| THOMAS A. NOONAN, STEPHEN L. | ) |
| PATTON and GARY SEITZ, | ) |
| | ) |
| Defendants. | ) |

## VERIFIED ANSWER TO COMPLAINT IN CHANCERY FOR INJUNCTIVE AND OTHER RELIEF

Defendants, Dean Witter Reynolds Inc., Patrick A. Noonan, Larry A. Hardy, Christopher H. Noonan, Thomas A. Noonan, Stephen L. Patton and Gary Seitz, by their attorneys, for their Verified Answer to the Verified Complaint In Chancery for Injunctive And Other Relief answer the allegations as follows:

### PARTIES

1.    Admit the allegations of Paragraph 1.

2.    Admit the allegations of Paragraph 2.

3.    Admit the allegations of Paragraph 3.

4.    Deny that P. Noonan "resigned" on October 7, 1994, but admit the remaining allegations of Paragraph 4.

5.    Deny that "they resigned en masse," but admit the remaining allegations of Paragraph 5.

6.    Deny the allegations of Paragraph 6.

#### OVERVIEW

7.  Deny the allegations of Paragraph 7.

8.  Deny the allegations of Paragraph 8.

9.  Deny the allegations of Paragraph 9.

10. Deny the allegations of Paragraph 10.

11. Deny the characterization in Paragraph 11 of "raiding" Kemper offices throughout the United States and deny the remaining allegations of Paragraph 11.

#### KEMPER'S SPRINGFIELD BRANCH OFFICE

12. Admit that in January of 1990, Blunt Ellis & Loewi and Dixon Bretscher Noonan Inc. (DBN) entered into an Asset Purchase Agreement and at that time, P. Noonan was the President and owner of DBN.

13. Deny the allegations of Paragraph 13.

14. Deny that Kemper "purchased" DBN.  Are without information sufficient to form a belief as to the truth of the allegation that Kemper invested substantial resources and funds in its Springfield branch office to develop and maintain new and existing clients." Admit that certain expenses were incurred by Kemper, including some of those expenses listed in Paragraph 14. Deny the remaining allegations of Paragraph 14.

15. Deny that there was a "raid" on October 7, 1994, but admit that Kemper employed five registered representatives and P. Noonan, the Branch Manager, at its Springfield branch office. Admit the remaining allegations of Paragraph 15.

2

16.  Admit that as registered representatives for Kemper, the Defendant Brokers' duties including effecting securities transactions for existing clients, but deny that those duties included "developing new client relationships for Kemper." Admit the remaining allegations of Paragraph 16.

17.  Deny the allegations of Paragraph 17 and specifically deny that Defendant Brokers were conducting business with "Kemper's clients."

18.  Admit that records are developed and maintained in hard copy form or on a computer database, but deny the remaining allegations of Paragraph 18 and specifically deny reference to clients as "Kemper's."

19.  Deny the allegations of Paragraph 19 and specifically deny reference to "Kemper's clients."

20.  Admit that Kemper has rules and that each Kemper employee is issued a password for purposes of accessing Kemper's computer database, but deny the remaining allegations of Paragraph 20.

21.  Admit that pages from Kemper's Compliance and Sales Practice Manual are attached as Exhibit 1 to the Affidavit of Brand F. Meyer, and specifically allege that those documents speak for themselves.

22.  Admit that copies of the Defendant Brokers' acknowledgements are attached as Exhibit 2 to the Affidavit of Brand F. Meyer and specifically allege that the referenced documents speak for themselves.

3

23. Deny that P. Noonan had a duty to "protect the confidentiality of Kemper's confidential and proprietary information" if said allegation refers to the information of Defendant Brokers' clients, but admit the remaining allegations of Paragraph 23.

24. Admit the allegations of Paragraph 24.

25. Deny the allegations of Paragraph 25.

26. Deny the allegations of Paragraph 26.

27. Deny the allegations of Paragraph 27.

28. Deny the allegations of Paragraph 28.

29. Admit that copies of client information were made while the Defendant Brokers were employed by Kemper, but deny the remaining allegations of Paragraph 29.

30. Deny the allegations of Paragraph 30.

31. Deny that Defendant Brokers had destroyed documents in order to hinder Kemper in its efforts to rebuild its Springfield branch office and deny that P. Noonan and Defendant Brokers packed boxes full of "Kemper documents" as of Monday, October 3, 1994 and removed them from Kemper's Springfield branch office. Admit that two garbage cans were filled with irrelevant, out-dated documents, including personal documents of Defendant Brokers, which documents were destroyed without any effort to hinder Kemper in its efforts.

32. Deny the allegations of Paragraph 32 and specifically deny reference to "Kemper's confidential client information," "Kemper's clients," "Kemper's confidential customer documents," and further deny that Dean Witter bulk-mailed the alleged "solicitation

4

letters" before P. Noonan and the Defendant Brokers had retired or resigned.

33.   Admit the allegations of Paragraph 33.

34.   Admit the allegations of Paragraph 34, but allege that Meyer knew or should have known that Defendant Brokers "were considering leaving Kemper or moving to a competitor."

35.   Admit that on or about September 27, 1994, P. Noonan sent to Kemper a Strategic Planning Memorandum, which document speaks for itself, but specifically denies that said Memorandum was sent "to cover up his own and the Defendant Brokers' participation in the impending raid," that it was done "to achieve these goals," and that a statement was made in the Memorandum "despite his knowledge and participation in the preparations for the raid."

36.   Admit the allegations of Paragraph 36.

37.   Deny that P. Noonan informed Meyer "that the Defendant Brokers were now employed by Dean Witter" or that Mary Ann Schroeder and Michelle Rogers had "joined Dean Witter," but admit the remaining allegations of Paragraph 37.

38.   Admit the allegations of Paragraph 38.

39.   Admit the allegations of Paragraph 39.

40.   Admit the allegations of Paragraph 40.

41.   Deny that Meyer "again questioned" P. Noonan's failure to keep Kemper management of the potential defections and that "once again," Meyer asked P. Noonan about his intentions and that P. Noonan then stated he would "resign" at 4:00 p.m., but admit the remaining allegations of Paragraph 41.

5

42.  Admit the allegations of Paragraph 42.

43.  Admit the allegations of Paragraph 43.

44.  Admit the allegations of Paragraph 44, but allege that said instruction was irrelevant to the issues presented by the Verified Complaint.

45.  Admit the allegations of Paragraph 45.

46.  Are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 46.

47.  Admit the allegations of Paragraph 47.

48.  Deny that P. Noonan removed "customer records" from his office and admit the remaining allegations of Paragraph 48.

49.  Deny the allegations of Paragraph 49, except that Defendant Brokers acknowledge removing copies of documents necessary to continue to serve their customers and which they believed to be duplicative of information left at Kemper or accessible to Kemper and further deny that "the mutual fund statements were left in such disarray that Kemper is unable to ascertain at this time whether any are missing."

FIRST CAUSE OF ACTION (MISAPPROPRIATION OF TRADE SECRETS)

50.  Defendants reallege and incorporate by reference their responses to Paragraph 1 through 49 as if fully set forth herein.

51.  Deny the allegations of Paragraph 51.

52.  Deny the allegations of Paragraph 52.

53.  Deny the allegations of Paragraph 53.

54.  Deny the allegations of Paragraph 54.

55.  Deny the allegations of Paragraph 55.

6

56.   Deny the allegations of Paragraph 56.

57.   Deny the allegations of Paragraph 57.

WHEREFORE, as alleged above and as further supported by the Affirmative Defenses to the First Cause of Action set forth below, Defendants pray that Plaintiff take nothing by its First Cause of Action and that same be dismissed, with prejudice, Defendants to recover their costs of suit and such other and further relief as the court deems just and proper.

### SECOND CAUSE OF ACTION (BREACH OF FIDUCIARY DUTY

### AND DUTY OF LOYALTY)

58.   Defendants reallege their responses to Paragraphs 1 through 57 as if fully set forth herein.

59.   Deny the allegations of Paragraph 59.

60.   Deny the allegations of Paragraph 60.

61.   Deny the allegations of Paragraph 61.

62.   Deny the allegations of Paragraph 62.

63.   Deny the allegations of Paragraph 63.

64.   Deny the allegations of Paragraph 64.

65.   Deny the allegations of Paragraph 65.

66.   Deny the allegations of Paragraph 66.

WHEREFORE, as alleged above and as further supported by the Affirmative Defenses to the Second Cause of Action set forth below, Defendants pray that Plaintiff take nothing by its Second Cause of Action and that same be dismissed, with prejudice, Defendants to recover their costs of suit and such other and further relief as the court deems just and proper.

THIRD CAUSE OF ACTION (AIDING AND ABETTING

BREACH OF FIDUCIARY DUTY AND CONSPIRACY)

67. Defendants reallege their response to Paragraphs 1 through 66 as if fully stated herein.

68. Deny the allegations of Paragraph 68.

69. Deny the allegations of Paragraph 69.

70. Deny the allegations of Paragraph 70.

71. Deny the allegations of Paragraph 71.

72. Deny the allegations of Paragraph 72.

73. Deny the allegations of Paragraph 73.

74. Deny the allegations of Paragraph 74.

WHEREFORE, as alleged above and as further supported by the Affirmative Defenses to the Third Cause of Action set forth below, Defendants pray that Plaintiff take nothing by its Third Cause of Action and that same be dismissed, with prejudice, Defendants to recover their costs of suit and such other and further relief as the court deems just and proper.

FOURTH CAUSE OF ACTION (UNFAIR COMPETITION)

74. Defendants reallege their responses to Paragraphs 1 through 73 as if fully set forth herein.

75. Deny the allegations of Paragraph 75.

76. Deny the allegations of Paragraph 76.

77. Deny the allegations of Paragraph 77.

78. Deny the allegations of Paragraph 78.

79. Deny the allegations of Paragraph 79.

WHEREFORE, as alleged above and as further supported by the Affirmative Defenses to the Fourth Cause of Action set forth below, Defendants pray that Plaintiff take nothing by its Fourth Cause of Action and that same be dismissed, with prejudice, Defendants to recover their costs of suit and such other and further relief as the court deems just and proper.

## FIFTH CAUSE OF ACTION (TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS)

80. Defendants reallege their responses to Paragraphs 1 through 79 as if fully set forth herein.

81. Deny the allegations of Paragraph 81.

82. Admit that Kemper had business relationships with each of the employees of its Springfield branch office, including P. Noonan and the Defendant Brokers, but deny the remaining allegations in Paragraph 82.

83. Deny that Dean Witter knew of the relationships "between Kemper and its clients" but admit that Dean Witter knew of relationships between Kemper and its "employees" if the "employees" referred to include the Defendant Brokers.

84. Deny the allegations of Paragraph 84.

85. Deny the allegations of Paragraph 85.

86. Deny the allegations of Paragraph 86.

WHEREFORE, as alleged above and as further supported by the Affirmative Defenses to the Fifth Cause of Action set forth below, Defendants pray that Plaintiff take nothing by its Fifth Cause of Action and that same be dismissed, with prejudice, Defendants to

9

recover their costs of suit and such other and further relief as the court deems just and proper.

## AFFIRMATIVE DEFENSES AS TO ALL COUNTS

A.    Counts 1 through 5 fail to state claims upon which relief can be granted.

B.    Plaintiff's request for injunctive relief is barred because it does not approach this Court with clean hands, because among other things to be proven at trial, Plaintiff has previously taken the position that customers of Plaintiff are customers of the broker, and has likewise engaged in efforts to encourage other brokers in the industry to leave their employ, to then join Kemper, and to continue to serve the same clients, utilizing the same or similar information as Defendant Brokers are alleged to have inappropriately obtained from Plaintiff for use in serving their clients.

C.    The customers of Defendant Brokers referred to in the Verified Complaint have the right to choose the broker with which they wish to conduct business even after Defendant Brokers leave the employ of Plaintiff.

D.    The relief sought by Plaintiff is specifically designed to reduce competition in the marketplace by unduly restricting or preventing Defendant Brokers from competing with Plaintiff.

E.    The parties hereto have agreed to resolve this case by arbitration.

10

<u>RESPONSE TO REQUEST FOR INJUNCTIVE RELIEF</u>

87.  Defendants reallege their responses to Paragraphs 1 through 86 as if fully set forth herein.

88.  Deny the allegations of Paragraph 88.

89.  Deny the allegations of Paragraph 89.

90.  Deny the allegations of Paragraph 90.

91.  Are without knowledge or information sufficient to form a belief as to the truth of the allegations of Paragraph 91.

92.  Deny the allegations of Paragraph 92.

WHEREFORE, Defendants pray that the Court refuse to grant Plaintiff any of the injunctive relief which it seeks in this matter and that the Verified Complaint In Chancery for Injunctive and Other Relief be dismissed, with prejudice, and that Defendants recover their costs and such other and further relief as the Court deems just and proper.

DEAN WITTER REYNOLDS, INC.,
PATRICK A. NOONAN, LARRY A. HARDY,
CHRISTOPHER H. NOONAN, THOMAS A.
NOONAN, STEPHEN L. PATTON and
GARY SEITZ, Defendants

By: _____
One of Their Attorneys

Charles J. Risch
Lawrence, Kamin, Saunders & Uhlenhop
208 South La Salle Street
Suite 1750
Chicago, IL  60604
(312) 372-1947

11

Sorling, Northrup, Hanna, Cullen
    and Cochran, Ltd.
Stephen R. Kaufmann and
William R. Enlow, of Counsel
Suite 800 Illinois Building
P. O. Box 5131
Springfield, IL   62705
Telephone:  (217) 544-1144

### PROOF OF SERVICE

    The undersigned hereby certifies that a copy of the foregoing
document was served by placing same in a sealed envelope addressed
to:

    Daniel P. Roy
    Nancy L. Hendrickson
    Coffield Ungaretti & Harris
    3500 Three First National Plaza
    Chicago, IL   60602

    Don Craven
    1005 N. Seventh Street
    Springfield, IL   62703

and hand-delivering on the 12th day of October, 1994.

Subscribed   and   sworn   to   before   me   this _____ day   of
_____ , 19__.

Notary Public

#D0051836.003 101194SRKbab

OFFICIAL SEAL
CATHY J. CATHCART
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-4-97

12

CERTIFICATION

Under penalties as provided by law pursuant to § 1-109 of the Illinois Code of Civil Procedure, the undersigned certify that the statements set forth in the Verified Answer to Complaint in Chancery for Injunctive and Other Relief are true and correct, except as to matters therein stated to be on information and belief, and as to such matters the undersigned certify as aforesaid that he verily believes the same to be true.

Dean Witter Reynolds Inc.

By _____

Its _____

_____
Christopher H. Noonan

_____
Stephen L. Patton

_____
Patrick A. Noonan

_____
Larry A. Hardy

_____
Thomas A. Noonan

_____
Gary Seitz

#D0051835.001 101194SRKbab

## AFFIDAVIT OF STEPHEN L. PATTON

Stephen L. Patton, upon his oath, deposes and states:

1.    I am over the age of twenty-one, have personal knowledge of the matters stated herein, and am otherwise competent to testify.

2.    I am presently employed as Senior Vice-President, Investments, for Dean Witter Reynolds, Inc. ("Dean Witter"), whose office is located at 500 East Monroe, Springfield, Illinois.  On Friday, October 7, I resigned my employment with Kemper Securities, Inc. ("Kemper").

3.    I am a 1974 graduate of Arizona State University, with a Bachelor of Science in Business.  I hold a Series 7 License and am a Registered Options Principal.

4.    I began working for Dixon Bretscher Noonan Inc. in 1976.  I continued in the employ of that firm after it was acquired by Kemper Securities Group - Blunt, Ellis and Loewi in February, 1990, and continued in the employ of that firm after it began doing business as Kemper Securities, Inc. in late 1992.  I worked for the firm until my resignation on October 7, 1994.

5.    Currently, I have approximately 750 clients.  Prior to February, 1990, I had approximately 450 clients.  I developed all of my accounts, before and after February, 1990, through my civic affairs activities, social relationships, referrals from existing and past clients, and my daily radio stock market reports.

6.    Since my resignation from Kemper, many of my clients have executed the necessary transfer forms to allow me to

continue to provide brokerage services.  I anticipate that most, if not all, of my clients will choose to continue to receive my services.

7.    I took no original client or Kemper documents from Kemper upon my resignation.  The information I took was necessary to continue to serve the customer and I believe is duplicative of information which remains at Kemper.

8.    At a Kemper Silver Circle Business meeting I attended in June, 1993, James R. Boris, chairman and chief executive officer of Kemper Securities, Inc. stated in response to a question from the floor that "customers belong to the brokers."

_____
Stephen L. Patton

---

Subscribed and sworn to before me this 12th day of October, 1994.

_____
Notary Public

OFFICIAL SEAL
CATHY J. CATHCART
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-4-97

#D0051735.005 101194SRKcjc

2

## AFFIDAVIT OF THOMAS NOONAN

Thomas Noonan, upon his oath, deposes and states:

1.    I am over the age of twenty-one, have personal
knowledge of the matters stated herein, and am otherwise
competent to testify.

2.    I am presently employed as an Account Executive for
Dean Witter Reynolds, Inc. ("Dean Witter"), whose office is
located at 500 East Monroe, Springfield, Illinois.  On Friday,
October 7, I resigned from my employment with Kemper Securities,
Inc. ("Kemper").

3.    I am a 1984 graduate of Depauw University, Greencastle,
Indiana.  I majored in Psychology, but took a number of business
courses.

4.    In 1984 I worked as a Runner on the Chicago Board of
Trade for the Clayton Brokerage Company; from 1984 to 1985, I
worked as a Broker's Assistant with the Chicago Board Options
Exchange for the Chicago Corporation; from 1985 through 1988, I
worked as a Sales Representative for John Nuveen & Co., Inc., and
from 1988 through 1989, I worked as a Retail Stockbroker for
Kidder Peabody & Co., Inc.  I began working for Kemper Securities
Group - Blunt, Ellis and Loewi in February, 1990, when it
acquired Dixon Bretscher Noonan Inc.  That firm became known as
Kemper Securities, Inc. in late 1992.  I am the son of Patrick A.
Noonan.  Patrick Noonan is my supervisor.

5.    I have 200 to 300 clients which I developed myself
through cold calls, social referrals and the like.  Since my
resignation from Kemper on October 7, many of my clients have

executed the necessary transfer forms to allow me to continue to provide brokerage services. I anticipate that most, if not all, of my clients will choose to continue to receive my services.

6.    I took no original client or Kemper documents from Kemper upon my resignation. The information I took was necessary to continue to serve the customer and I believe is duplicative of information left at Kemper.

_____
Thomas Noonan


Subscribed and sworn to before me this  12  day of October, 1994.

_____
Notary Public

```
OFFICIAL SEAL
CATHY J. CATHCART
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 11-4-97
```

#D005L733.004 101194SRKcjc


2

## AFFIDAVIT OF PATRICK A. NOONAN

Patrick A. Noonan, upon his oath, deposes and states:

1.   I am over the age of twenty-one, have personal knowledge of the matters stated herein, and am otherwise competent to testify.

2.   On Friday, October 7, I retired from my employment with Kemper Securities, Inc. ("Kemper"), after five brokers previously employed by Kemper resigned and went to work for Dean Witter Reynolds, Inc. ("Dean Witter") as the Senior Vice-President and Branch Manager.  Dean Witter's office is located at 500 East Monroe, Springfield, Illinois.

3.   I graduated in 1951 with a Bachelor of Arts in Economics, History and Political Science from Yale University.  I am licensed as a Registered Broker, a General Securities Partner, a Finance Principal and a Registered Options Broker.

4.   The firm of Dixon Bretscher Noonan Inc. was established in 1911 and joined by my father in 1936 and existed at all times through February, 1990.  I began working for Dixon Bretscher Noonan Inc. in 1954 and worked for that firm at all times until February, 1990.  In February, 1990, Kemper Securities Group - Blunt, Ellis and Loewi purchased Dixon Bretscher Noonan Inc. Beginning in late 1992, the firm began doing business as Kemper Securities, Inc. and I worked for that firm until my retirement on October 7, 1994.

5.   Currently, I have approximately 500 clients. Approximately ninety percent of my accounts were developed during the existence of the Dixon Bretscher Noonan Inc. firm.  I

developed all of my accounts, even after February, 1990, through my civic affairs activities, social relationships, referrals from existing and past clients, and the like.

6.    I took no original client or Kemper documents from Kemper upon my retirement.  The information I took was necessary to continue to serve the customer and I believe is duplicative of information left at Kemper.

7.    Since my retirement from Kemper, many of my clients have executed the necessary transfer forms to allow me to continue to provide brokerage services.  I anticipate that most, if not all, of my clients will choose to continue to receive my services.

8.    At a Kemper Silver Circle Business meeting I attended in June, 1993, James R. Boris, chairman and chief executive officer of Kemper Securities, Inc. stated in response to a question from the floor that "customers belong to the brokers".

9.    Attached is a copy of the Bill of Sale from Dixon Bretscher Noonan, Inc. to Blunt Ellis & Loewi.  There was no sale of Dixon Bretscher Noonan's book of business or client records to Blunt Ellis & Loewi.

_Patrick A. Noonan_
Patrick A. Noonan

2

Subscribed and sworn to before me this 12ᵗʰ day of October,
1994.

_____
                    Notary Public

```
┌─────────────────────────────────────┐
│          OFFICIAL SEAL              │
│        CATHY J. CATHCART            │
│  NOTARY PUBLIC, STATE OF ILLINOIS   │
│   MY COMMISSION EXPIRES 11-4-97     │
└─────────────────────────────────────┘
```

#D0051731.006 101294SRKcjc

3