IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MERRILL LYNCH, PIERCE, FENNER ) No. 99 C 5968
& SMITH, INC., )
             )
        Plaintiff,       )
             ) Chicago, Illinois
    v.       ) September 16, 1999
             ) 3:52 p.m.
PAUL J. OBLON, CARLOS A. GONZALEZ, )
CHRIS MARZEC, MAURICE MATHY, )
JASON STALLMANN, JEFF THORNE, )
SCOTT M. ZAGURSKY, and TODD )
ZAGURSKY, )
             )
        Defendants.      ) Motion

APPEARANCES:

For the plaintiff:   Lord, Bissell & Brook,
                     by: RONALD M. LEPINSKAS and
                         JOSEPH M. TALARICO,
                     115 South LaSalle Street,
                     Chicago, Illinois 60603

For the defendants:  Neal, Gerber & Eisenberg,
                     by: H. NICHOLAS BERBERIAN,
                         ROBERT J. MANDEL, and
                         L. ROGER BOORD,
                     Two North LaSalle Street,
                     Chicago, Illinois 60602

JAMES P. DOLAN
OFFICIAL REPORTER – U.S. DISTRICT COURT
219 SOUTH DEARBORN STREET

2

```
 1              THE CLERK:  99 C 5968, Merrill Lynch v. Oblon,
 2     et al.
 3              MR. LEPINSKAS:  Good afternoon, your Honor.  Ron
 4     Lepinskas on behalf of plaintiff, Merrill Lynch.
 5              MR. BERBERIAN:  Good afternoon, your Honor.  Nick
 6     Berberian on behalf of the defendants.
 7              THE COURT:  Good afternoon to both of you.
 8              I've had an opportunity to review the
 9     complaint and the memorandum in support of the motion for
10     temporary restraining order, and briefly I've had a chance
11     to review the defendants' response.
12              Before we get into a discussion of the
13     arguments that you desire to make in connection with your
14     respective positions, have you talked with one another about
15     settling the case at all, or settling this issue?
16              MR. LEPINSKAS:  Your Honor, if I may, up until
17     yesterday, when our district manager first found out about
18     this situation, --
19              THE COURT:  Yes?
20              MR. LEPINSKAS:  -- he attempted to talk with -- as
21     you can see from the affidavit --
22              THE COURT:  Right.
23              MR. LEPINSKAS:  -- Mr. Graham tried to talk with
24     these people, --
25              THE COURT:  I reviewed that, as well.
```

3

1   MR. LEPINSKAS: -- right -- and under advice of
2   counsel, supposedly, one of the defendants said that they
3   weren't willing to talk about these matters, so --
4   THE COURT: Right. But now that they've got
5   counsel, can counsel see if you can work something out?
6   MR. BERBERIAN: Oh, we're more than delighted to
7   try to do so, your Honor.
8   That conversation yesterday was
9   confrontational. They were threatened with all kinds of
10  legal action. It was not the kind of a conversation
11  conducive to leading to any kind of resolution.
12  THE COURT: Oh. Well, --
13  MR. LEPINSKAS: Your Honor, I'd be happy to do so
14  as long as we reach closure on this matter today, if
15  possible.
16  THE COURT: Why don't we sit down right now and
17  see if we can work something out.
18  MR. LEPINSKAS: I'd be happy to do so, your Honor.
19  THE COURT: I've got a jury out. I'm bringing the
20  jury back in to see what their desires are, whether they
21  want to continue to deliberate or not, at 4:30. I can
22  devote between now and 4:30 to you folks.
23  MR. LEPINSKAS: Okay.
24  THE COURT: If it's necessary that we conduct a
25  further hearing after I send the jury home in this case, we

```
 1   can do that, as well.  I'm hearing this case for Judge
 2   Aspen, who is the assigned judge to this case.  I think we
 3   can probably work something out.
 4           MR. LEPINSKAS:  I'd be happy --
 5           THE COURT:  There's a lot of history in this type
 6   of activity, and I've often thought that there really ought
 7   to be some guidelines for everyone, and maybe we can sit
 8   down and informally work out those guidelines.
 9           MR. BERBERIAN:  Your Honor, the guidelines our
10   clients tried to follow are the very guidelines that you set
11   forth in the Pinzker case.
12           THE COURT:  I understand.  All of these cases are
13   fact-specific.
14           MR. LEPINSKAS:  Right, and, obviously, we think
15   it's different, but if you want to go in chambers, I'd be
16   happy to join you with counsel.
17           THE COURT:  I was actually going to sit down out
18   here in the courtroom because we've got so many people, but,
19   yes, why don't we come on back into chambers.  I'll have my
20   clerk come on back as well.
21           You can come get me at 4:30 when we bring the
22   jury out.
23           (Conference off the record.)
24           THE CLERK:  99 C 5968, Merrill Lynch v. Oblon,
25   et al.
```

5

1   MR. BERBERIAN: Good afternoon, your Honor. Nick
2   Berberian on behalf of defendants.
3   MR. LEPINSKAS: Good afternoon, your Honor. Ron
4   Lepinskas on behalf of plaintiff, Merrill Lynch. At my side
5   is Tom Lydon from Merrill Lynch.
6   THE COURT: Yes. Good afternoon again to all of
7   you.
8   Since we first called the case this afternoon
9   and I suggested we have a settlement conference, we have
10  engaged in that settlement conference, and have been engaged
11  in that settlement conference -- you lawyers have been -- I
12  had to turn my attention to other matters.
13  We worked on the parameters of a possible
14  settlement, but it appears that that cannot be accomplished.
15  I do understand, though, that what was accomplished is that
16  a hearing on the defendants' request for arbitration with
17  the NASD has been commenced -- or has been arranged, and
18  will take place on Thursday or Friday of next week.
19  Is that everyone else's understanding, as
20  well, the 16th or 17 of September?
21  MR. BERBERIAN: On behalf of the defendants, that
22  is correct, your Honor.
23  MR. LEPINSKAS: Well, on behalf of the plaintiffs,
24  I don't know that I can commit the particular lawyer who
25  will be arguing to Thursday or Friday, but that is our

6

1  intention at this point.
2  THE COURT: Okay.
3  MR. LEPINSKAS: I mean that date may give by a day
4  or two.
5  THE COURT: Okay. Well, my understanding is that
6  Mr. Barberian contacted the people there, and whoever he
7  talked with, that was the available time, and it will take
8  place shortly, so that process has been at least commenced.
9  I've reviewed your respective materials, and
10 your motions to file a brief in support of 15 pages, both
11 sides, will be granted, and I understand that there is some
12 further comment that counsel desire to present. In view of
13 the hour, it being 5:14 by the clock on the wall, I would
14 ask that you keep them as brief as possible, but I certainly
15 want to hear everything you desire to say.
16 MR. LEPINSKAS: Your Honor, further comment from
17 the plaintiff will come from Mr. Lydon.
18 If you want to approach the podium --
19 THE COURT: All right, Mr. Lydon, I understand you
20 got a phone call and you came over to the courthouse to
21 assist me in evaluating this case.
22 MR. LYDON: Right, Judge, I did.
23 THE COURT: What is your position with Merrill
24 Lynch?
25 MR. LYDON: I'm the district administrative

7

```
 1   manager with the Chicago District of Merrill Lynch, your
 2   Honor.
 3              THE COURT:  All right, and is Mr. Graham a
 4   superior of yours?
 5              MR. LYDON:  Right.  Mr. Graham is the district
 6   director.  I report to him.
 7              THE COURT:  He was the affiant in these
 8   proceedings, --
 9              MR. LYDON:  Correct.
10              THE COURT:  -- and provided me with an affidavit,
11   which I've reviewed.
12              MR. LYDON:  Right.
13              THE COURT:  Go ahead.
14              MR. LYDON:  Your Honor, I'm not an attorney, --
15              THE COURT:  That's okay.
16              MR. LYDON:  -- and I don't purport to be, but if I
17   can just very briefly state our position, it's our position,
18   Judge, that our clientele is our most important asset.
19   These clients were developed utilizing Merrill Lynch
20   resources, research, our good name, our reputation, and it
21   is our position, your Honor, that, although we can't say
22   that we own anything, and the clients -- it's a free country
23   -- they can go where they want, it is our position that the
24   clients were -- are Merrill Lynch clients.
25              Again, Judge, I'm not going to interpret our
```

8

1  contract, but we feel that there are restrictions on the
2  contact of our clients. We would like an opportunity to
3  show -- to speak to our clients -- our clients -- and
4  explain to them. Once again, they obviously are our clients
5  for a reason, the value of Merrill Lynch.
6           In particular, Judge, we have something
7  called the Merrill Lynch Unlimited Advantage Program, which
8  is a new program. Merrill Lynch is changing the industry.
9  It's an entirely new pricing structure, which is very, very
10 advantageous to our clients.
11          What we are asking for, your Honor, is simply
12 an opportunity to speak to our clients, to explain to them
13 the advantages. They may have already been spoken to by the
14 departing PCs, but we feel very strongly, your Honor, that
15 these are developed with Merrill Lynch resources. I will
16 not -- I'm not going to say anything bad about Smith Barney.
17 Smith Barney is a good firm. I'm not here to do that, your
18 Honor. I'm just here to appeal to your good judgment, that
19 these are -- we consider these our clients -- quote -- and
20 we would just like the opportunity to reach them, and we
21 would like our employees, our former employees, just to live
22 up to the terms of the agreement that they signed.
23          THE COURT: All right, well, I appreciate that.
24          Does anyone desire to ask any questions of
25 Mr. Lydon? Even though he is not under oath, I accept his

9

1  word as his word.
2       MR. BERBERIAN: We do not, your Honor.
3       THE COURT: Okay.
4       All right, anything further you desire to
5  say, Mr. Lydon?
6       MR. LYDON: Your Honor, we feel very strongly
7  about this. I jumped out of my office and came over here.
8       THE COURT: I understand. I used to office in the
9  Sears Tower, myself, so --
10      MR. LYDON: And it just -- you know, we do have
11 the clients' best interests at heart here, and I would hope
12 that our former employees do, as well. I don't know if they
13 do or not, Judge.
14      THE COURT: All right, well, thank you, and I
15 appreciate your coming over.
16      All right, is there anything further that
17 counsel desire to say in support of or in opposition to the
18 motion?
19      MR. LEPINSKAS: Your Honor, you've heard my pitch
20 again and again that this is an orchestrated raid, and that
21 all of these are solicitations; all of these contacts.
22 There is no other straight-face purpose that they could come
23 up with to say why they're doing what they're doing.
24      I understand your Honor has his good reasons
25 for what he's doing, and I respectfully disagree.

10

1  THE COURT: All right. We had a lot of discussion
2  in the settlement conference off the record regarding the
3  facts and respective positions, but my understanding of the
4  facts at this point are that the defendants have sent to the
5  customers whose names and addresses they remember a notice
6  that was identical in nature and different only as to the
7  name of the broker, as was utilized in the Pinzker case that
8  was brought before me in December of last year.
9      Based on that fact, the announcement of the
10 broker that the broker has gone to Salomon Smith Barney,
11 providing the phone number and other information -- I don't
12 have a copy of the notice that was shown to me at the
13 settlement conference in front of me -- but if that's the
14 nature of the notice that's provided, it is my ruling that
15 that type of contact is not for the purpose of inviting,
16 encouraging, or requesting any account to transfer from
17 Merrill Lynch, or to open a new account at Salomon Smith
18 Barney, or to otherwise have the customer of Merrill Lynch
19 discontinue its patronage from Merrill Lynch, or its
20 business relationship with Merrill Lynch.
21     That notice is for the purpose of informing
22 the customer that the broker with whom the customer had been
23 working at Merrill Lynch has moved to Salomon Smith Barney,
24 and since it's for the purpose of informing, and since
25 informing is not one of the restricted purposes in the

                                                                11

1   Merrill Lynch financial consultant employment agreement, I
2   believe that that type of a contact is not a violation of
3   that employment agreement by the defendants.
4          Likewise, to answer Mr. Lydon's comments,
5   Merrill Lynch has every right to contact these customers of
6   Merrill Lynch, to solicit these customers of Merrill Lynch,
7   to tell the customers of Merrill Lynch about the new
8   arrangement that Mr. Lydon commented on, to tell the
9   customers of Merrill Lynch that their accounts will now be
10  serviced by whomever it is at Merrill Lynch that will be
11  servicing these accounts, to provide those Merrill Lynch
12  customers with inducements to remain at Merrill Lynch, and
13  the defendants cannot invite, encourage, or request any of
14  those Merrill Lynch customers to move their accounts,
15  transfer their accounts, or open a new account, or
16  discontinue their patronage of Merrill Lynch.  So the
17  advantage still remains with Merrill Lynch with regard to
18  these customers.
19         The employment agreement does not prohibit
20  contacts that are informative contacts, contacts that merely
21  inform the customer.  And since the Merrill Lynch employment
22  contract deals with contacts or communications, one must
23  look to the contact and the communication and the purpose of
24  the contact or communication, and if the purpose is
25  something other than inviting, encouraging, or requesting

12

1  any account to transfer or open a new account or otherwise
2  discontinue its patronage at Merrill Lynch, it is not a
3  violation of paragraph 2 of the Merrill Lynch employment
4  agreement.
5      There has been no showing at this point that
6  the defendants have in their possession -- no showing --
7  there have been allegations -- but there's been no showing
8  that they have in their possession any confidential
9  information or records of Merrill Lynch that they are using
10 in any manner to further their business at Smith Barney, and
11 there's no indication or no proof, other than just
12 allegations, that these defendants have divulged, or have
13 agreed to divulge, any information to any third party that
14 is confidential information at Merrill Lynch.
15     And so at this point, even though these
16 defendants have acknowledged in the employment agreement the
17 extreme value to Merrill Lynch of confidential information,
18 there is no showing at this point that would cause me to
19 believe that, on the merits of the case, Merrill Lynch would
20 prevail.
21     I believe that the public has a right to know
22 when a broker leaves one company and goes to another
23 company, and I believe that at this point there has been no
24 showing that the defendants have done anything other than to
25 inform their customers, Merrill Lynch's customers, of their

13

1   change of employment.
2   There is nothing that violates the employment
3   agreement if the former Merrill Lynch employee accepts
4   business that was neither invited, encouraged, or requested,
5   as long as there was not a solicitation, as long as there
6   was not an invitation or an encouragement or a request to
7   transfer, or open a new account, or otherwise discontinue
8   patronage at Merrill Lynch.
9   And the public has a right to change brokers
10  at any point in time. Mr. Lydon said it. As he said,
11  people can go wherever they want.
12  And I realize that this is important, that
13  this is the lifeblood of Merrill Lynch, but at this point
14  there isn't sufficient evidence from the affidavit of Mr.
15  Graham or any of the other information provided to me that
16  those defendants have violated their agreement or any of the
17  laws that restrict their activities at this point.
18  Anything else?
19  MR. LEPINSKAS: Your Honor, if I may be heard,
20  first I'd like to thank you for your time, patience, and
21  energy today. It's no fun, I know, at the end of a long
22  week.
23  Mr. Lydon here would like to add -- with the
24  Court's indulgence -- Mr. Lydon would like to add a further
25  comment.

14

1   MR. LYDON: Your Honor, I just --
2   THE COURT: If you can stand up. As I get older,
3   I have difficulty hearing.
4   MR. LYDON: Your Honor, I just want to say that
5   with respect to confidentiality, and, again, I'm not a
6   lawyer, but where would they get the information, the names
7   and addresses of their clients, if not from Merrill Lynch's
8   records, which we consider confidential, number one.
9   Number two, I appreciate the spirit that the
10  client has a right to be informed. The public does have a
11  right to be informed in terms of a change from one firm to
12  another. I got here late, your Honor, and maybe I'm not
13  completely understanding exactly what the total ruling is,
14  but if this -- if they are allowed to make phone calls,
15  which I don't know if they are or not, but it would be --
16  being in the business for almost 20 years -- it would be
17  hard for me to believe that someone could make a phone call
18  simply to inform. I would say that a phone call to our
19  clients would be, in fact, the basis for a solicitation. If
20  I wanted to be informed of moving from one firm to another,
21  and I had a wedding announcement or some little card, that
22  would be fine. Maybe I'm not -- I didn't hear your whole
23  ruling, your Honor, so --
24  THE COURT: All right, well, let me try to
25  explain it.

15

1  Under the law there is no restriction on the
2  defendants from making a phone call that's informative. If
3  that phone call turns into a solicitation that invites or
4  encourages or solicits in violation of the agreement, then
5  the defendant, the former broker of Merrill Lynch, has
6  violated the agreement.
7  I had proposed, as part of the settlement,
8  that the defendants be required to keep a list of everyone
9  they contact by phone or any other way, and that they keep
10  -- or provide information as to the nature of the
11  conversation so that Merrill Lynch could follow up and find
12  out from the customer if in fact there had been a violation
13  by the defendants of the agreement. That's not required by
14  the agreement that the defendants keep this list.
15  Since we've gone to a hearing, and I'm
16  denying the motion for temporary restraining order, and
17  there hasn't been any discovery served yet, the information
18  may not be as readily available.
19  I agree with you when you think, "Okay, how
20  could it not be?" Well, it could not be by merely having
21  the defendant say, "I've now moved to Smith Barney, and I
22  just wanted to let you know that, and that's why I called.
23  Have a good weekend."
24  MR. BERBERIAN: And, your Honor, perhaps you may
25  want to ask Mr. Lydon if they're going to advise these

16

1  customers where these individuals are when they call in.
2      THE COURT: All right, well, you see, under the
3  law that I've got in front of me, there is no obligation on
4  the part of Merrill Lynch to tell a customer of one of these
5  -- or who was serviced by one of these defendants that that
6  defendant has gone to Smith Barney.
7      I believe it's good business practice. I
8  believe it's an obligation that Merrill Lynch has as part of
9  its business to provide information to its customers, and
10 included in that information is the information that the
11 person, the former broker of Merrill Lynch that the customer
12 has been dealing with in the past, has now gone to Smith
13 Barney. But I can't compel that, and I can't order it, so
14 I'm not going to ask Mr. Lydon if he's going to do that.
15 That would have been part of the deal if a settlement had
16 been reached. And I think it's just good business practice,
17 because, frankly, I would think that the customer some day
18 is going to find out, and if the customer believes that
19 Merrill Lynch kind of hid that information from the
20 customer, then the customer may trust Merrill Lynch a little
21 less. But I'm not in that business. I'm a judge.
22     Is there anything else we need to address at
23 this point?
24     MR. BERBERIAN: Thank you, your Honor.
25     MR. LEPINSKAS: Just one other matter, your Honor.

17

1    THE COURT: Yes?
2    MR. LEPINSKAS: It has come to our attention that
3    Mr. Carlos Gonzalez -- the "Naperville Seven" has gone to
4    the "Naperville Eight" -- has also left the office, and we'd
5    like to orally amend the complaint to add Carlos Gonzalez to
6    the proceedings --
7    THE COURT: Oh, okay, well, --
8    MR. LEPINSKAS: -- if that's okay with opposing
9    counsel.
10   MR. BERBERIAN: Your Honor, not only is it all
11   right, but we filed our opposition naming Mr. Gonzalez.
12   THE COURT: Okay.
13   MR. BERBERIAN: We couldn't figure out why he
14   wasn't included.
15   MR. LEPINSKAS: We didn't know about him.
16   THE COURT: Yes, the only defendant not listed in
17   the complaint is Mr. Gonzalez, but the opposition does list
18   him as the second defendant in the pleadings, so the
19   complaint can be orally amended to include as a defendant
20   Carlos A. Gonzalez.
21   MR. LEPINSKAS: Thank you, your Honor.
22   THE COURT: All right, anything else?
23   MR. BERBERIAN: Thank you, your Honor.
24   THE COURT: This is Judge Aspen's case, so any
25   further orders and any further matters involving this

18

1   litigation should be brought before him or before the
2   magistrate judge if the matter is referred to the magistrate
3   judge by Judge Aspen. But I hope you can resolve this in
4   your arbitration.
5           MR. BERBERIAN: Thank you very much, your Honor.
6           MR. LEPINSKAS: Thank you. Have a good weekend.
7           THE COURT: Thank you. You too.
8       (Adjournment at 5:35 p.m.)
9
10
11                          CERTIFICATE
12  I certify that the foregoing is a correct transcript of the
13  record of proceedings in this matter on September 10, 1999.
14
15  _____James P. Dolen_____                    9/12/99
16  Official Court Reporter                      Date
17